UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>THOMPSON PUBLISHING HOLDING CO., INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 10-13070 ( )<br><br>**Joint Administration Requested** |

### DEBTORS' MOTION FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. §§ 105(a), 363(b), 363(c), 1107(a), AND 1108 AND FED. R. BANKR. P. 6003 AND 6004 AUTHORIZING THE DEBTORS TO HONOR PREPETITION OBLIGATIONS TO AND CONTINUE PREPETITION PRACTICES WITH (I) THE PRINTER AND (II) THE TELEMARKETING FIRMS

Thompson Publishing Holding Co., Inc. ("Thompson Publishing") and its subsidiaries and affiliates, the above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel, hereby submit this motion (the "Motion") for entry of an order, pursuant to sections 105(a), 363(b), 363(c), 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), (i) authorizing, but not directing, the Debtors, in their business judgment and sole discretion, to honor certain undisputed prepetition obligations to and continue during the postpetition period their prepetition practices with certain parties who (a) print the Debtors' publications, and (b) provide direct marketing services to the Debtors for the promotion of their publications, and (ii) authorizing all banks and other financial institutions to receive, process, honor and pay any and all checks presented for payment and electronic transfers with respect to payments authorized by this Motion, whether presented

---
[1] The Debtors are the following entities (followed by the last four digits of their tax identification numbers): Thompson Publishing Holding Co. Inc. (5470), AHC Media LLC (2136), Alex eSolutions, Inc. (5725), Thompson Publishing Group, Inc. (2093), The Performance Institute, Inc. (8059), TPG AES Holding Co., Inc. (1658) and Thompson Publishing Development, LLC (2093).

before or after the Petition Date, upon receipt by each bank and financial institution of notice of such authorization, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. In support of this Motion, the Debtors submit the Declaration of James J. Loughlin, Jr. in Support of Chapter 11 Petitions and First Day Motions (the "Loughlin Declaration")[2] and respectfully represent and set forth as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief requested herein are Sections 105(a), 363(b), 363(c), 1107(a), and 1108 of the Bankruptcy Code.

## BACKGROUND

3. On September 21, 2010 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code. No trustee, examiner or creditors' committee has been appointed in these cases. The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

4. The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Loughlin Declaration and incorporated herein by reference.

---

[2] Capitalized terms used herein and not otherwise defined shall have the meaning ascribed thereto in the Loughlin Declaration.

2

## NATURE OF THE PREPETITION OBLIGATIONS TO THE DEBTORS' PRINTER AND DIRECT MARKETERS

5. The Debtors rely heavily upon certain outside service providers in order to produce and deliver their products to their customers and to market their products to new customers. The ability to retain the services of these outside service providers is critical to the Debtors' ongoing business.

### A. The Printing of the Debtors' Publications

6. The Debtors do not print any of their own publications, but rather, rely on an unaffiliated outside printer. Ginny's Printing (the "Printer") is the Debtors' sole printing company. While the Debtors do not have a contract with the Printer, the Printer provides the Debtors with very competitive pricing that the Debtors do not believe they could obtain from another printer. Moreover, were the Printer to refuse to provide services to the Debtors on account of their outstanding prepetition claim, the transition to a new printer would be extremely disruptive to the Debtors' operations and could jeopardize their ability to deliver their publications to their customers.

7. The Debtors are a major customer of the Printer, representing a significant portion of its business. The Debtors fear that, unless their prepetition obligations to the Printer are paid in a timely manner, the Printer's operations may be materially disrupted.

### B. The Direct Marketing of the Debtors' Publications

8. In addition to outsourcing their printing needs, the Debtors outsource their direct marketing efforts. The Debtors use the services of DialAmerica, Inc., Advanced Business Teleservices, Inc., and Greene & Associates Inc. (collectively, the "Telemarketing Firms,") to provide telemarketing services with respect to the publications of TPG, SIS and AHC. Those employees of the Telemarketing Firms who provide services to the Debtors have the institutional

knowledge, honed over many years, necessary to sell the Debtors' very specialized and technical publications. The services provided by the Telemarketing Firms generate significant revenue for the Debtors. The Debtors do not have contracts with the Telemarketing Firms. Were one or more of the Telemarketing Firms to stop providing services to the Debtors postpetition, it would be extremely difficult for the Debtors to transition to a new telemarketing firm without significant disruption to their business and loss of revenue. The Debtors do not have the resources to service their own telemarketing needs in-house.

9. Over the past six months, the average aggregate monthly amount of the Vendor Obligations (as defined below) to each of Ginny's and the Telemarketing Firms were approximately $150,000 and $160,000, respectively. As of the Petition Date, the Debtors estimate the aggregate outstanding amount of Vendor Obligations are approximately $375,000.

10. Each of the Printer and the Telemarketing Firms is critical to the Debtors' business. Without their services, it would be very difficult for the Debtors to maintain the value of their businesses as a going concern. Moreover, it is more than likely that a buyer would insist on assuming the pre-petition liabilities to mitigate against business disruption. In order to ensure that the Debtors are able to continue to provide a high-quality product to their customers and subscribers and to minimize the disruption to the Debtors' businesses as a result of the commencement of these cases, the relief requested pursuant to this Motion is necessary and appropriate, is in the best interests of the Debtors, their estates and creditors, and should be granted in all respects.

11. As discussed in the Loughlin Declaration, the Debtors provide factual, "need to have," timely information to their customers and subscribers that simplifies and explains complex regulations.

12. Any failure by the Debtors to honor their obligations to the Printer and to the Telemarketing Firms (the "Vendor Obligations") may cause the Printer and the Telemarketing Firms to cease the provision of valuable services to the Debtors. Absent the necessary services provided by the Printer and the Telemarketing Firms, the Debtors' operations would likely grind to a halt, inflicting serious damage on the Debtors' business. The services provided by the Printer and the Telemarketing Firms are essential to the Debtors' continued operations.

13. Any failure by the Debtors to honor their obligations to the Printer and the Telemarketing Firms will likely have a materially adverse impact on the reliability and efficiency of the Debtors' business. If the Vendor Obligations remain unpaid, the Debtors face the real possibility that the Printer and the Telemarketing Firms may refuse to continue their respective services, leaving the Debtors without the ability to produce their publications on time and attract and retain customers.

14. To avoid any potential interruption or delay in the Debtors' business, which interruption or delay will likely have a material adverse impact on the Debtors' operations and efforts to maximize the value of their estates, it is imperative that the Debtors have the ability to satisfy the Vendor Obligations in order to maintain the continued and uninterrupted services of the Printer and the Telemarketing Firms.

15. In satisfying any Vendor Obligations, the Debtors submit that they will, in their discretion, attempt to condition any payment on the written acknowledgement from either the Printer or the Telemarketing Firms that they will continue to provide their services to the Debtors on terms that, at a minimum, they provided to the Debtors prior to the Petition Date, or such other trade practices and programs that are at least as favorable to the Debtors as those in effect prior to the Petition Date. The Debtors reserve the right to negotiate more favorable trade

terms with the Printer and/or the Telemarketing Firms as a condition to payment of any such Vendor Obligation. Further, the Debtors submit that they will only pay the claims of the Printer and the Telemarketing Firms that they believe, in their business judgment, are necessary or appropriate.

16. Over the past six months, the average aggregate monthly amount of the Vendor Obligations to each of the Printer and the Telemarketing Firms were approximately $150,000 and $160,000, respectively. As of the Petition Date, the Debtors estimate the aggregate outstanding amount of Vendor Obligations are approximately $300,000 and $75,000 respectively.

17. Accordingly, it is imperative that the Debtors have the ability to satisfy all Vendor Obligations to the extent discovered by the Debtors.

## RELIEF REQUESTED

18. Pursuant to this Motion, the Debtors respectfully request the entry of an order authorizing, but not directing, the Debtors, in their business judgment and sole discretion, to (a) perform and honor certain undisputed prepetition obligations to the Printer and the Telemarketing Firms up to $350,000 and $150,000 respectively, (b) perform and honor undisputed prepetition obligations to the Printer and the Telemarketing Firms for the Vendor Obligations, if any, and (c) continue during the postpetition period their prepetition practices with the Printer and the Telemarketing Firms.

19. Additionally, the Debtors seek an order authorizing all banks and other financial institutions to receive, process, honor and pay any and all checks presented for payment and electronic transfers with respect to payments authorized by this Motion, whether presented before or after the Petition Date, upon receipt by each bank and financial institution of notice of

such authorization, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

## BASIS FOR RELIEF

I. **The Relief Requested Is Supported By Section 105(a) of the Bankruptcy Code And The "Doctrine of Necessity"**

20. The Court may authorize payment of prepetition claims in appropriate circumstances based on section 105(a) of the Bankruptcy Code. Section 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Under section 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's business. Specifically, this Court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also referred to as the "doctrine of necessity").

21. The "doctrine of necessity" or the "necessity of payment" rule originated in railway cases and was first articulated by the United States Supreme Court in Miltenberger v. Logansport, C.&S.W.R. Co., 106 U.S. 286 (1882). The doctrine was expanded to non-railroad debtors in the mid-century. See Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945) (holding, in hotel reorganization case, that the court was not "helpless" to apply the rule to supply creditors of non-railroad debtors where alternative was cessation of operations).

22. The Third Circuit recognized the "necessity of payment" doctrine in In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981). The Third Circuit held that a court could authorize the payment of prepetition claims if such payment was essential to the continued operation of the debtor. Id. (stating courts may authorize payment of prepetition claims when there "is the possibility that the creditor will employ an immediate economic

7

sanction, failing such payment"); see also In re Penn Central Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding necessity of payment doctrine permits "immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims have been paid"); In re Just for Feet, Inc., 242 B.R. 821, 824-26 (Bankr. D. Del. 1999) (noting that, in the Third Circuit, debtors may pay prepetition claims that are essential to continued operation of business); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (same).[3]

23.  Today, the rationale for the necessity of payment rule—the rehabilitation of a debtor in reorganization cases—is "the paramount policy and goal of Chapter 11." In re Ionosphere Clubs, Inc., 98 B.R. at 176; see also Burchinal v. Cent. Wash. Bank (In re Adams Apple, Inc.), 829 F.2d 1484, 1490 (9th Cir. 1987) (recognizing that allowance of "unequal treatment of pre-petition debts when necessary for rehabilitation . . ." is appropriate); In re Just For Feet, Inc., 242 B.R. at 826 (finding that payment of prepetition claims to certain trade vendors was "essential to the survival of the debtor during the chapter 11 reorganization"); In re Quality Interiors, Inc., 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("[P]ayment by a debtor-in-possession of pre-petition claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code", but "[a] general practice has developed . . . where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment."); In re Eagle-Picher

---

[3] Additionally, the Bankruptcy Code contemplates prepetition payments in some circumstances. Section 549(a), which deals with postpetition transfers, provides that "the trustee may avoid a transfer of property of the estate . . . that occurs after the commencement of the case . . . that is not authorized . . . by the court." Thus, by necessary implication, a bankruptcy court may authorize limited postpetition payments to satisfy prepetition obligations. See In re Isis Foods, Inc., 37 B.R. 334, 336 n.3 (Bankr. W.D. Mo. 1984) (noting that "proposed transfers [to pay prepetition claims may] be presented in advance to a bankruptcy court for its approval and would thereafter be insulated from attack" under section 549(a); see also 11 U.S.C. § 363(b)(1) (allowing the trustee, after notice and hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate").

Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateauguay Corp.), 80 B.R. 279, 287 (S.D.N.Y. 1987) (authorizing payment of prepetition worker's compensation claims on grounds that the fundamental purpose of reorganization and equity powers of bankruptcy courts "is to create a flexible mechanism that will permit the greatest likelihood of survival of the debtor and payment of creditors in full or at least proportionately"); 2 COLLIER ON BANKRUPTCY § 105.02[4][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010) (discussing cases in which courts have relied on the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately).

24. Courts also have permitted postpetition payment of prepetition claims pursuant to section 105(a) in other situations, such as if nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtors' business reorganization plan. See In re UNR Indus., 143 B.R. 516, 520 (Bankr. N.D. Ill. 1992) (permitting debtor to pay prepetition claims of suppliers or employees whose continued cooperation is essential to the debtors' successful reorganization); Ionosphere Clubs, 98 B.R. at 175-77 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

25. This flexible approach is particularly critical where a prepetition creditor provides vital goods or services to a debtor that would be unavailable if the Debtor did not satisfy its prepetition obligations. In In re Structurlite Plastics Corp., 86 B.R. 922 (Bankr. S.D. Ohio 1988), the bankruptcy court stated it "may exercise its equity powers under § 105(a) [of the Bankruptcy Code] to authorize payment of prepetition claims where such payment is necessary 'to permit the greatest likelihood of survival of the debtors and payment of creditors in full or at

least proportionately.'" Id. at 931. The court explained that "a per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." Id. at 932.

26. The foregoing rationale for authorizing payments under the "doctrine of necessity" holds particularly true for the relief requested herein under the circumstances of these chapter 11 cases. The Debtors' maintenance of their positive relationships with the Printer and the Telemarketing Firms is critical to the Debtors' continued ability to produce their publications, as well as the Debtors' ability to directly market their publications to new and existing customers, and, therefore, to the ongoing operations pending the sale of some or all of the Debtors' business. The Debtors' ability to maintain continued and uninterrupted operations during this crucial time will in turn serve to maximize value of their estates for the benefit of their estates and creditors. Accordingly, the Debtors' ability to pay certain prepetition claims of the Printer and the Telemarketing Firms will facilitate a smooth and orderly reorganization during these chapter 11 cases.

27. The Debtors submit that the total amount to be paid to the Printer and the Telemarketing Firms is minimal compared to (i) the importance and necessity of the printing and direct marketing services to (a) the production and marketing of the Debtors' publications, (b) maintaining the value of the Debtors' business and assets, and (ii) the losses the Debtors may suffer if the production and marketing of their publications were affected.

28. Accordingly, the Debtors submit that permitting them to honor certain undisputed prepetition claims of the Printer and the Telemarketing Firms is in the best interests of their estates and creditors.

## II. The Relief Requested Is Supported By Section 363(b) of the Bankruptcy Code

29. The Court may authorize the Debtors to pay the prepetition claims of the Printer and the Telemarketing Firms under section 363(b) of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under this section, a court may authorize a debtor to pay certain prepetition claims where the debtor articulates "some business justification, other than the mere appeasement of major creditors." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

30. The Debtors' request to pay certain undisputed prepetition claims of the Printer and the Telemarketing Firms surpasses this standard. As set forth above, failure to honor such obligations may have a materially adverse impact on the Debtors' operations and, as a result, the value of the Debtors' business and assets. In the Debtors' business judgment, the uninterrupted maintenance of the goods and services provided by the Printer and the Telemarketing Firms is essential to the continued and uninterrupted operations of the Debtors. Additionally, as noted above, the Debtors do not believe there are cost-effective and/or readily accessible alternatives to the services provided by the Printer and the Telemarketing Firms.

## III. The Relief Requested Is Supported By Sections 363(c), 1107(a) And 1108 Of The Bankruptcy Code

31. Sections 1107(a) and 1108 of the Bankruptcy Code authorize a debtor in possession to continue to operate its business. Further, section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating its business pursuant to section 1108 of the Bankruptcy Code to use property of the estate in the ordinary course of business without notice or a hearing. The Debtors submit that continuing, renewing, replacing, initiating, and/or

11

terminating the relationships with the Printer and the Telemarketing Firms in the ordinary course of business is permitted by sections 363(c), 1107(a) and 1108 of the Bankruptcy Code without further application to the Court.

32. The Debtors submit that the foregoing demonstrates the substantial benefits that will inure to their estates and creditors as a result of the Debtors honoring, maintaining and continuing their existing relationships with the Printer and the Telemarketing Firms during the postpetition period and honoring the Debtors' prepetition obligations to the Printer and the Telemarketing Firms.

33. Accordingly, entry of an order authorizing the Debtors to honor their existing relationships with the Printer and the Telemarketing Firms is necessary and appropriate to maintain the Debtors' going concern value pending a sale.

### IV. Courts in This District Have Granted Similar Relief

34. Payment of the prepetition claims of the Printer and Telemarketing Firms is essential to the continued printing and marketing of the Debtors' publications necessary to maintain the Debtors' operations. Even a minor delay could undermine the Debtors' ability to meet internal schedules and/or fulfill their customers' orders. Such disruptions also would likely cause the Debtors' relationships with their customers to be severely, and possibly irreparably impaired. Any such delay or disruption could jeopardize the Debtors' ability to maximize the value of their estates. Under similar circumstances, this Court has authorized debtors to pay amounts owing for such claims where failure to do so would significantly disrupt the flow of goods and services critical to preservation of such debtors' estates. See e.g., In re BT Tires Group Holding, LLC, Case No. 09-11173 (CSS) (Bankr. D. Del. Apr. 3, 2010); In re Lillian Vernon, Corp., Case No. 08-10323 (BLS) (Bankr. D. Del. Feb. 21, 2008); In re Sharper Image Corp., Case No. 08-10322 (KG) (Bankr. D. Del. Feb. 20, 2008); In re Wickes Holdings, LLC,

Case No. 08-10212 (KJC) (Bankr. D. Del. Feb. 5, 2008); In re Friedman's Inc., Case No. 08-10161 (CSS) (Bankr. D. Del. Jan. 28, 2008); In re Buffets Holdings, Inc., Case No. 08-10141 (BLS) (Bankr. D. Del. Jan. 24, 2008); In re Domain, Inc., Case No. 08-10132 (PJW) (Bankr. D. Del. Jan. 22, 2008); In re Hancock Fabrics, Inc., Case No. 07-10353 (BLS) (Bankr. D. Del. Mar. 22, 2007); In re Pliant Corp., Case No. 06-10001 (MFW) (Bankr. D. Del. Jan. 4, 2006); In re Ultimate Electronics, Inc., Case No. 05-10104 (PJW) (Bankr. D. Del. 2005); In re KB Toys, Inc., Case No. 04-10120 (JBR) (Bankr. D. Del. 2005); In re Cone Mills Corp., Case No. 03-12944 (MFW) (Bankr. D. Del. 2003).

## V. The Requirements Of Bankruptcy Rule 6003 Have Been Satisfied

35. Pursuant to Bankruptcy Rule 6003, the court may grant relief regarding a motion to pay all or part of a prepetition claim that arose before the Petition Date within twenty days after the filing of the petition if the relief is necessary to avoid immediate and irreparable harm. The payment of prepetition amounts owed to the Printer and the Telemarketing Firms is necessary in these chapter 11 cases to avoid immediate and irreparable harm.

36. As described above, the Printer and the Telemarketing Firms are vital to the Debtors' business operations because they provide necessary printing services and direct marketing services to the Debtors. Failure to satisfy obligations with respect to the Printer and the Telemarketing Firms in the ordinary course of business during the first twenty days of these cases will jeopardize the loyalty and trust of the Printer and the Telemarketing Firms. The Printer and/or the Telemarketing Firms may refrain from performing the tasks that they performed prior to the Petition Date and thereby cause serious disruption to the Debtors' business operations during this critical period. Any such disruption would likely have a material adverse effect on the value of the Debtors' business and its ability to successfully reorganize. Accordingly, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule

13

6003 to support immediate payment of certain prepetition obligations to the Printer and the Telemarketing Firms.

## WAIVER OF BANKRUPTCY RULE 6004(h)

37. The Debtors further seek a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, maintaining the Debtors' relationships with the Printer and the Telemarketing Firms is necessary to prevent irreparable damage to the Debtors' business operations and, therefore, the value of the Debtors' business pending reorganization. Accordingly, the Debtors submit that ample cause exists to justify a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent it applies.

## DEBTORS' RESERVATION OF RIGHTS

38. Nothing contained herein is intended to or should be construed as an admission of the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. Likewise, if this Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to and should not be construed as an admission of the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## NOTICE

39. Notice of this Motion has been given to: (i) the U.S. Trustee; (ii) those parties listed on the consolidated list of creditors holding the forty largest unsecured claims against the Debtors, as identified in their chapter 11 petitions; (iii) counsel to the First Lien

Lenders; (iv) counsel to the Second Lien Lenders; (v) all applicable taxing and regulatory authorities; (vi) all parties that have requested notice pursuant to Bankruptcy Rule 2002; and (vii) all other parties required to receive service under Del. Bankr. L.R. 9013-1(m). In light of the relief requested herein, the Debtors submit that no further or other notice need be provided.

## NO PRIOR REQUEST

40. No prior request for the relief sought in this Motion has been made to this Court or any other court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request that this Court (i) enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, authorizing, but not directing, the Debtors to (a) pay the prepetition claims of the Printer and the Telemarketing Firms, up to an aggregate amount of $350,000 and $150,000 respectively, if any, and (b) continue during the postpetition period their prepetition practices with the Printer and the Telemarketing Firms and (ii) grant such other and further relief as is just and proper.

Dated: September 21, 2010
      Wilmington, Delaware

/s/ Derek C. Abbott

Derek C. Abbott (Bar No. 3376)
dabbott@mnat.com
Chad A. Fights (Bar No. 5006)
cfights@mnat.com
Alissa T. Gazze (Bar. No. 5338)
agazze@mnat.com
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

-and-

John F. Ventola
jventola@choate.com
Lisa E. Herrington
lherrington@choate.com
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
Facsimile: (617) 248-4000

*Proposed Counsel to Debtors and Debtors in Possession*