# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>THOMPSON PUBLISHING HOLDING CO., INC., *et al.*,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 10-13070 (PJW)<br><br>Joint Administration Requested<br>*Re: docket #s: 13 ~ 35* |

## ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN POSTPETITION FINANCING ON A FINAL BASIS AND (B) UTILIZE CASH COLLATERAL OF PRE-PETITION SECURED PARTIES ON A FINAL BASIS, (II) GRANTING ADEQUATE PROTECTION, AND (III) MODIFYING THE AUTOMATIC STAY AND (IV) GRANTING RELATED RELIEF, PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363 (c), (d) & (e), 364(c), 364(d)(1), 364(e) AND 507(b)

Upon the Motion, dated September 21, 2010 (the "**Motion**") of TPG AES Holding Co., Inc. ("**Borrower**"), Thompson Publishing Holding Co., Inc. ("**Parent**"), Alex eSolutions, Inc. ("**AES**"), Thompson Publishing Group, Inc. ("**TPG**"), AHC Media LLC ("**AHC**"), The Performance Institute, Inc. ("**PI**" and together with AES, TPG, AHC, the "**Subsidiaries**") (the Subsidiaries together with the Parent and Borrower, the "**Loan Parties**"), Thompson Publishing Development, LLC ("**Development Subsidiary**", and together with Parent, Borrower and the Subsidiaries, the "**Debtors**"), as debtors and debtors-in-possession, in the above-captioned jointly administered chapter 11 cases, for an order pursuant to sections 105, 361, 362, 363(c), 363(d), 363(e), 364(c), 364(d)(1) and 364(e) and 507 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004 and 9014 of the Federal Rules of

---

[1] The Debtors are the following entities (followed by the last four digits of their tax identification numbers): Thompson Publishing Holding Co. Inc. (5470), AHC Media LLC (2136), Alex eSolutions, Inc. (5725), Thompson Publishing Group, Inc. (9013), The Performance Institute, Inc. (8059), Thompson Publishing Development, LLC (2093) and TPG AES Holding Co., Inc. (1658). The Debtors' mailing address is 805 15th Street NW, 3d Floor, Washington, DC 20005-2207.

Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2002-1(b), 4001-2, 9006-1 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), requesting entry of this order on a final basis (the "**Final Financing Order**") providing for the following relief:

(a) authorizing and approving the Borrower to obtain a senior secured super priority revolving loan facility in the aggregate commitment amount of $3.0 million (the "**DIP Facility**") of which up to $150,000 shall be reserved for letters of credit[2];

(b) authorizing the Parent, the Subsidiaries and the Development Subsidiary to jointly and severally guarantee the DIP Obligations,

(c) authorizing the execution and delivery, in form and substance acceptable to the DIP Secured Parties, of the DIP Loan Documents;

(d) granting senior security interests, liens and superpriority claims (including a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, and priming liens pursuant to section 364(d) of the Bankruptcy Code) to the DIP Agent, for the benefit of the DIP Secured Parties, to secure the DIP Obligations;

(e) authorizing the Debtors' use of "cash collateral" (the "**Cash Collateral**") which term shall include, without limitation, all cash and cash equivalents of the Debtors, whenever or wherever acquired, and the proceeds of all collateral pledged to the DIP Agent and the Pre-Petition First Lien Agent (as hereafter defined), as contemplated by section 363 of the Bankruptcy Code;

(f) granting adequate protection to each lender (collectively, the "**Pre-Petition First Lien Lenders**") and each other Secured Party (as defined in the Pre-Petition First Lien Credit Agreement)(together with the Pre-Petition First Lien Lenders, the "**Pre-Petition First Lien Secured Parties**") under and in connection with that certain Amended and Restated Credit Agreement, dated as of July 6, 2007, by among Borrower, the Pre-Petition First Lien Lenders, General Electric Corporation, as syndication agent, and PNC Bank, N.A., as successor to National City Bank as administrative agent (the "**Pre-**

---

[2] Capitalized terms used but not defined herein shall have the meanings assigned to such terms in that certain Debtor In Possession Revolving Credit Agreement, dated as of September 24, 2010, among the DIP Agent, the Debtors and the DIP Lenders (the "**DIP Credit Agreement**"), at all times irrespective of whether the DIP Credit Agreement is in effect.

Petition First Lien Agent**")(as has been amended, restated, supplemented or otherwise modified from time to time, the "**Pre-Petition First Lien Credit Agreement**," and together with all other loan and security documents executed in connection therewith, including the Loan Documents (as defined in the Pre-Petition First Lien Credit Agreement) and the Intercreditor Agreement (as defined below), the "**Pre-Petition First Lien Loan Documents**") and the Pre-Petition First Lien Loan Documents;

(h)     granting adequate protection to each lender (collectively, the "**Pre-Petition Second Lien Lenders**", and, together with the Pre-Petition First Lien Secured Parties, the "**Pre-Petition Lenders**") under and in connection with that certain Amended and Restated Second Lien Credit Agreement, dated as of July 17, 2007, by and among the Borrower, the Pre-Petition Second Lien Lenders and Ableco Finance LLC, as successor to National City Bank as administrative agent (the "**Pre-Petition Second Lien Agent**," and, together with the Pre-Petition First Lien Agent, the "**Pre-Petition Agents**")(as has been amended, restated, supplemented or otherwise modified from time to time, the "**Pre-Petition Second Lien Credit Agreement**," and together with all other loan and security documents executed in connection therewith, including the Loan Documents (as defined in the Pre-Petition Second Lien Credit Agreement) and the Intercreditor Agreement, the "**Pre-Petition Second Lien Loan Documents**" (such Pre-Petition Second Lien Loan Documents, together with the Pre-Petition First Lien Loan Documents, the "**Pre-Petition Loan Documents**")) and the Pre-Petition Second Lien Loan Documents; and

(i)      modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final Financing Order;

all as more fully described in the Motion; and a final  hearing with respect to the Motion having

been held on October 12, 2010 (the "**Final Hearing**"); and notice of the Final Hearing having

been given in accordance with Bankruptcy Rules 2002, 4001(b) and (d), 6004 and 9014 and it

appearing that no other or further notice need be provided; and the relief requested being within

the guidelines for requests for the use of cash collateral set forth in Local Rule 4001-2; and the

relief requested in the Motion being in the best interests of the Debtors and their estates and

creditors; and the Court having considered the Motion and the First Day Declaration filed

contemporaneously with the Motion, and the evidence submitted or adduced and the arguments

of counsel made at the Final Hearing; and the appearances of all interested parties having been noted in the record of the Final Hearing; and the Court having determined that the legal and factual bases set forth in the Motion and at the Final Hearing establish just cause for the relief granted herein; and the Court having overruled any objections to the Motion, to the extent not withdrawn or resolved; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.    **The Petition Date**. On September 21, 2010 (the "**Petition Date**"), the Debtors each commenced in this Court a case under chapter 11 of the Bankruptcy Code (collectively, the "**Bankruptcy Cases**"). The Debtors are continuing to manage and operate their businesses and property as debtors and debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Bankruptcy Cases. No Committee (as hereafter defined) has yet been appointed in the Bankruptcy Cases.

B.    **Jurisdiction and Venue**. This Court has jurisdiction over these proceedings, and over the property affected hereby, pursuant to 28 U.S.C. §§ 157(b) and 1334. This is a core proceeding as defined in and pursuant to 28 U.S.C. § 157(b)(2). Venue for the Bankruptcy Cases and for proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    **Debtors' Stipulations**. Subject to paragraph 15 below, the Debtors admit, stipulate, acknowledge and agree as follows (collectively, the stipulations of the Debtors in paragraphs C(i) through C(v) below are referred to herein as the "**Debtors' Stipulations**"):

i.    As of the Petition Date, the Loan Parties were, without

defense, counterclaim or offset of any kind, jointly and severally indebted and liable to the Pre-Petition First Lien Agent and the Pre-Petition First Lien Lenders and the other Pre-Petition First Lien Secured Parties on account of Pre-Petition First Lien Indebtedness (as defined below) in an amount of not less than $122,618,531.00. For purposes of this Final Financing Order, the term "**Pre-Petition First Lien Indebtedness**" shall mean and include, without duplication, any and all principal amounts owing or outstanding under the Pre-Petition First Lien Loan Documents (including, without limitation, all Obligations (as defined in the Pre-Petition First Lien Credit Agreement) and any obligations under or arising out of the Interest Rate Protection Agreement (as defined in the Pre-Petition First Lien Credit Agreement)), and all interest on, fees and other costs, expenses and charges owing in respect of, such amounts under the applicable provisions of the Pre-Petition First Lien Loan Documents and interest at the Default Rate in accordance with section 1.8.5 of the Pre-Petition First Lien Credit Agreement (in the case of postpetition interest, fees, costs, expenses and charges, to the fullest extent such amounts are allowable under the Bankruptcy Code) and any and all obligations and liabilities, contingent or otherwise, owed in respect of the Obligations (as defined in the Pre-Petition First Lien Credit Agreement) outstanding thereunder.

ii.      Pursuant to the Pre-Petition First Lien Loan Documents, the Loan Parties granted to the Pre-Petition First Lien Agent, for the benefit of the Pre-Petition First Lien Secured Parties, first priority and continuing pledges, liens and security interests (the "**Pre-Petition First Lien Security Interests**") to secure the Pre-Petition First Lien Indebtedness and any guarantees thereof, in and upon (a) all of the Parent's equity interests in the Borrower, (b) all of the Borrower's equity interests in the Subsidiaries, and (c) all of the Loan Parties' (other than the Parent's) present and after-acquired personal property and fixtures of any nature

whatsoever, tangible or intangible, wherever located, including, without limitation, all Equipment, Inventory and other Goods, Accounts, General Intangibles, Fixtures, Documents, Letter-of-Credit Rights, Chattel Paper, Deposit Accounts, Instruments, Investment Property, Commercial Tort Claims, Supporting Obligations, and Proceeds of any and all of the foregoing (each of the foregoing, as defined in that certain Second Amended and Restated Security Agreement, dated July 6, 2007, as supplemented, by and among the Loan Parties (excluding the Parent) and the Pre-Petition First Lien Agent) (the "**Pre-Petition Collateral**").

        iii.     As of the Petition Date and immediately prior to giving effect to this Final Financing Order, (a) (i) the Pre-Petition First Lien Loan Documents are legal, valid, binding and enforceable agreements and obligations of the Loan Parties, (ii) the Pre-Petition First Lien Security Interests constitute legal, valid, binding, enforceable and perfected first priority security interests and liens, subject only to the Permitted Liens (as defined in the Pre-Petition First Lien Credit Agreement), but only to the extent such Permitted Liens are legal, valid, enforceable liens and security interests that are perfected prior to the applicable Petition Date (or perfected after the applicable Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code), which are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law and which are senior in priority to the Pre-Petition First Lien Security Interests under applicable law and after giving effect to any applicable subordination or intercreditor agreements (such liens, the "**Permitted Prior Liens**"), and (iii) the Pre-Petition First Lien Security Interests are not subject to avoidance, reduction, recharacterization, disallowance, impairment or subordination, pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (b) (i) the Pre-Petition First Lien Indebtedness constitutes the legal, valid, and binding obligation of the Loan Parties, enforceable

in accordance with the terms of the Pre-Petition First Lien Loan Documents, (ii) no objection, offset, defense, or counterclaim of any kind or nature to any of the Pre-Petition First Lien Indebtedness exists, and (iii) the Pre-Petition First Lien Indebtedness, and any amounts paid at any time to any Pre-Petition First Lien Secured Party with respect thereto, are not subject to avoidance, recharacterization, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law; and (iv) the Debtors irrevocably waive any right to challenge or contest the Pre-Petition First Lien Security Interests, or the validity of the DIP Obligations or Pre-Petition First Lien Indebtedness.

        iv.     The Pre-Petition First Lien Secured Parties and each of their respective agents, officers, directors, employees, attorneys, professionals, successors, and assigns are deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Pre-Petition First Lien Loan Documents entered into with the Debtors prior to the entry of this Final Financing Order and, subject only to paragraph 15 below, shall not be subject to any further objection or challenge by any party at any time.

        v.     The Loan Parties, the Pre-Petition First Lien Agent and the Pre-Petition Second Lien Agent are parties to that certain Amended and Restated Intercreditor Agreement, dated as of July 17, 2007 (as has been amended, restated, supplemented or otherwise modified from time to time, the "**Intercreditor Agreement**"), which governs the respective rights, obligations and priorities of the Pre-Petition First Lien Lenders and the Pre-Petition Second Lien Lenders with respect to the matters referred to therein, including, without limitation, the use of Cash Collateral and the DIP Facility. The Pre-Petition Second Lien Security Interests (as hereinafter defined) are subject to the Intercreditor Agreement and are junior in all respects to the Pre-Petition First Lien Security Interests.

D.    **Pre-Petition Second Lien Agent's Assertions**.  The Pre-Petition Second Lien Agent asserts as follows:

    i.    As of the Petition Date, the Loan Parties were jointly and severally indebted and liable to the Pre-Petition Second Lien Agent and the Pre-Petition Second Lien Lenders on account of Pre-Petition Second Lien Indebtedness (as defined below) in an amount of not less than $43,500,000.00.  For purposes of this Final Financing Order, the term **"Pre-Petition Second Lien Indebtedness"** shall mean and include, without duplication, any and all principal amounts owing or outstanding under the Pre-Petition Second Lien Loan Documents (including, without limitation, all Obligations (as defined in the Pre-Petition Second Lien Credit Agreement)), and all interest on, fees and other costs, expenses and charges owing in respect of such amounts under the applicable provisions of the Pre-Petition Second Lien Loan Documents, and interest at the Default Rate in accordance with section 1.8.5 of the Pre-Petition Second Lien Credit Agreement (in the case of postpetition interest, fees, costs, expenses and charges, to the fullest extent such amounts are allowable under the Bankruptcy Code) and any and all obligations and liabilities, contingent or otherwise, owed in respect of the Obligations (as defined in the Pre-Petition Second Lien Credit Agreement) outstanding thereunder (such Pre-Petition Second Lien Indebtedness, together with the Pre-Petition First Lien Indebtedness, the **"Pre-Petition Indebtedness"**).

    ii.    Pursuant to the Pre-Petition Second Lien Loan Documents, the Loan Parties granted to the Pre-Petition Second Lien Agent, for the benefit of the Pre-Petition Second Lien Lenders, second priority and continuing pledges, liens and security interests (the **"Pre-Petition Second Lien Security Interests"**) to secure the Pre-Petition Second Lien Indebtedness and any guarantees thereof, in and upon the Pre-Petition Collateral.

iii.     As of the Petition Date and immediately prior to giving effect to this Final Financing Order, (i) the Pre-Petition Second Lien Loan Documents are legal, valid, binding and enforceable agreements and obligations of the Loan Parties and (ii) subject to and in accordance with the Intercreditor Agreement, the Pre-Petition Second Lien Security Interests constitute legal, valid, binding, enforceable and perfected second priority security interests and liens, subject only to the Pre-Petition First Lien Security Interests and the Permitted Prior Liens.

E.     **Adequate Protection**.

i.     The Debtors admit that (i) the Pre-Petition First Lien Agent, for the benefit of the Pre-Petition First Lien Secured Parties, is entitled to adequate protection, and (ii) the Pre-Petition Second Lien Agent, for the benefit of the Pre-Petition Second Lien Lenders (the Pre-Petition Second Lien Agent, Pre-Petition Second Lien Lenders and Pre-Petition First Lien Secured Parties, collectively, the "**Pre-Petition Secured Parties**"), is being provided with adequate protection, solely to the extent it is determined that the Pre-Petition Second Lien Agent and the Pre-Petition Second Lien Lenders are entitled thereto, in each case for any diminution in the value of their respective interests in the Pre-Petition Collateral (calculated in accordance with section 506(a) of the Bankruptcy Code), resulting from the (a) provisions of this Final Financing Order granting first priority and/or priming liens on the Pre-Petition Collateral to the DIP Agent, for the benefit of the DIP Secured Parties, with respect to the DIP Facility; (b) use of the Cash Collateral, (c) use, sale, lease, or depreciation or other diminution in value of the Pre-Petition Collateral, or (d) the imposition of the automatic stay under section 362(a) of the Bankruptcy Code or otherwise pursuant to sections 361(a), 363(c), 364(c) and 364(d)(1) of the Bankruptcy Code (the amount of any such diminution being referred to hereafter as the

"**Adequate Protection Obligations**").

ii.     Pursuant to sections 361, 363 and 507(b), as adequate protection for the Adequate Protection Obligations, the Debtors have agreed to provide the Pre-Petition First Lien Agent, for the benefit of Pre-Petition First Lien Secured Parties, with the First Lien Adequate Protection, and the Pre-Petition Second Lien Agent, for the benefit of the Pre-Petition Second Lien Lenders, with the Second Lien Adequate Protection (each as defined below), it being understood that the Second Lien Adequate Protection is being provided solely to the extent it is determined that the Pre-Petition Second Lien Agent and the Pre-Petition Second Lien Lenders are entitled thereto.

iii.     The adequate protection and other treatment proposed to be provided by the Debtors pursuant to this Final Financing Order are consistent with and authorized by the Bankruptcy Code, will minimize disputes and litigation over use of the Cash Collateral, and facilitate the Debtors' ability to continue their business operations because of the need for a DIP Facility.

F.     **Non-Objection or Non-Impairment**.

i.     Subject to the adequate protection arrangements provided herein being approved by this Final Financing Order, the requisite Pre-Petition First Lien Lenders (a) permit the Debtors' limited use of the Cash Collateral and the adequate protection arrangements in accordance with the terms of this Final Financing Order and (b) do not object to the DIP Facility and the senior secured priming liens granted to the DIP Secured Parties to secure the DIP Facility.

ii.     The security interests and liens granted hereunder to (a) the DIP Agent, for the benefit of the DIP Secured Parties, under section 364(c) and (d) of the

Bankruptcy Code, and (b) to the Pre-Petition First Lien Agent, for the benefit of the Pre-Petition First Lien Secured Parties, under sections 105, 361 and 363 of the Bankruptcy Code, are appropriate because, among other things: (a) the Pre-Petition First Lien Secured Parties have not objected to the security interests and priming liens granted to the DIP Agent for the benefit of the DIP Secured Parties pursuant to this Final Financing Order; (b) the Pre-Petition Second Lien Lenders and Pre-Petition Second Lien Agent have consented to the security interests and priming liens granted to the DIP Agent for the benefit of the DIP Secured Parties pursuant to this Final Financing Order by virtue of the Intercreditor Agreement, (c) the holders of Permitted Prior Liens, to the extent they are legal, valid, binding, continuing, enforceable and fully perfected, are not being impaired by this Final Financing Order, and (d) to the extent any security interest or lien is junior to the Pre-Petition First Lien Security Interests and the Pre-Petition Second Lien Security Interests, such holder thereof is not entitled to adequate protection pursuant to section 361 of the Bankruptcy Code.

G. **Necessity of DIP Facility and Cash Collateral Usage**. The Debtors require the DIP Facility and the ability to use Cash Collateral in order to continue to operate their businesses and to finance their operations, absent which, even for a limited period of time, immediate and irreparable harm will result to the Debtors generally, their estates and creditors, and the prospects for a successful conclusion of the Bankruptcy Cases. The Debtors do not have sufficient available sources of working capital and financing to operate their businesses in the ordinary course of business or to maintain their properties without the DIP Facility and the use of Cash Collateral. The use of Cash Collateral alone is projected to be insufficient to meet the Debtors' post-petition liquidity needs. The Debtors are unable to obtain (i) adequate unsecured credit allowable under either (a) sections 364(b) and 503(b)(1) of the Bankruptcy Code or (b) section

364(c)(1) of the Bankruptcy Code, (ii) adequate credit secured by (a) a senior lien on unencumbered assets of their estates under section 364(c)(2) of the Bankruptcy Code and (b) a junior lien on encumbered assets under section 364(c)(3) of the Bankruptcy Code, or (iii) adequate secured credit under section 364(d)(1) of the Bankruptcy Code from sources other than the DIP Agent and the DIP Lenders on terms more favorable than the terms of the DIP Facility. The relief requested in the Motion is, therefore, of critical importance to the preservation and maintenance of the going concern value of the Debtors.

H.    **Notices**. Notice of the Final Hearing and the relief requested in the Motion has been provided by the Debtors to: (i) the Office of the United States Trustee for Region 3, serving the District of Delaware (the "**U.S. Trustee**"); (ii) the forty (40) largest unsecured creditors; (iii) all of the Debtors' secured creditors of record, other than the Pre-Petition Lenders; (iv) counsel to the Pre-Petition Agents; (v) all of the Debtors' landlords, (vi) all applicable federal, State and local taxing authorities, and (vii) all parties that requested notice pursuant to Bankruptcy Rule 2002 prior to the filing of the Motion.  The requisite notice of the Final Hearing and the relief requested in the Motion has been provided in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitation, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this Final Financing Order.

I.    **Consent.**  The consent of the Majority DIP Lenders and the non-objection of the requisite Pre-Petition First Lien Lenders to the DIP Facility and the requisite Pre-Petition First Lien Lenders' permission to use Cash Collateral is expressly limited to the DIP Facility and the use of Cash Collateral solely on the terms and conditions set forth in this Final Financing Order. Nothing in this Final Financing Order, including, without limitation, any of the provisions herein

with respect to adequate protection, shall constitute, or be deemed to constitute, a finding that the interests of the Pre-Petition First Lien Secured Parties are or will be adequately protected with respect to the financing contemplated by the DIP Facility, any additional financing, or any non-consensual use of Cash Collateral. The DIP Agent and the DIP Lenders have indicated a willingness to provide the DIP Facility, but solely on the terms and conditions set forth in this Final Financing Order and in the DIP Loan Documents.

J.     **No Responsible Person**. The Debtors stipulate that in making the decision to finance the Debtors' operations through the DIP Facility, to permit the Debtors to use Cash Collateral, in administering any loans, in approving the Approved Budget, or in taking any actions permitted by this Final Financing Order or the DIP Loan Documents, none of the DIP Agent, the DIP Lenders, the Pre-Petition First Lien Agent or the Pre-Petition First Lien Secured Parties, as applicable, shall be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person", "owner or operator" or part of any "control group" with respect to any of the Debtors or the management of the Debtors.

K.     **Arm's Length Negotiations, Fairness, Good Cause**. Based on the record before this Court, it appears (and the Debtors have stipulated) that the Debtors, the Loan Parties, the DIP Agent and the Pre-Petition First Lien Agent have negotiated at arms' length and in good faith regarding the terms of the DIP Facility and the Debtors' use of Cash Collateral, respectively, to fund the continued operations of the Debtors for the Final Period (as defined below)(subject to any extensions thereof), all subject to the terms and conditions set forth in this Final Financing Order, including the protection afforded an entity acting in "good faith" under section 364(e) and 363(m) of the Bankruptcy Code.  The terms of the DIP Loan Documents are fair and reasonable under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent

with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration. Good cause has been shown for the immediate entry of this Final Financing Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and to the extent it applies, Bankruptcy Rule 6003, as the Court finds that entry of this Final Financing Order is necessary to avoid immediate and irreparable harm to the Debtors and their estates. Entry of this Final Financing Order is in the best interests of the Debtors and their estates.

Based upon the foregoing and upon the record made before this Court at the Final Hearing, and good and sufficient cause appearing therefore,

NOW, THEREFORE, IT IS HEREBY ORDERED that:

1.    <u>Motion Granted</u>.  The Motion is granted as set forth herein, and the use of Cash Collateral on a final basis is authorized, subject to the terms and conditions set forth in this Final Financing Order.

2.    <u>Objections to Entry of Final Financing Order Overruled</u>.  Any objections to the entry of this Final Financing Order, to the extent not withdrawn or resolved, are hereby overruled. This Final Financing Order shall become effective immediately upon its entry.

3.    <u>Authorization of the Post-Petition Financing and Entry into the DIP Loan Documents</u>.  The terms and conditions of the DIP Loan Documents are approved on a final basis to implement the terms and effectuate the purposes of this Final Financing Order.  The Borrower is authorized to borrow up to $3,000,000.00 of the DIP Facility, subject to the terms and conditions of the DIP Credit Agreement.  The DIP Facility will be made available if (and only if) (a) the book balance of the Debtors' cash and cash equivalents is less than $1,000,000.00 and (b) the Final Financing Order  is in full force and effect.  In the event that the book balance of the Debtors' cash and cash equivalents exceeds $2,500,000.00 at any time there are outstanding DIP

Loans under the DIP Facility, the Debtors shall be required to apply any such excess to the outstanding DIP Loans under the DIP Facility, in accordance with the DIP Loan Documents. Each Debtor is authorized to repay amounts borrowed, together with interest thereon and any other outstanding DIP Obligations to the DIP Lenders in accordance with and subject to the terms and conditions set forth in the DIP Loan Documents and this Final Financing Order.

a. <u>Validity of DIP Loan Documents</u>. The DIP Loan Documents and the DIP Obligations shall constitute, and are hereby deemed to be the legal, valid and binding obligations of the Debtors party thereto, enforceable against each of the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed or elected in the Bankruptcy Cases, or any Successor Cases (defined below), in accordance with the terms of the DIP Loan Documents or this Final Financing Order and not subject to subordination or avoidance for any purposes in the Bankruptcy Cases. Any DIP Loans advanced under the DIP Credit Agreement will be made only to fund (i) the Debtors' working capital and general corporate needs, (ii) current interest and fees under the DIP Facility, (iii) any allowed administrative costs and expenses of the Bankruptcy Cases, and in each case, solely to the extent permitted under the DIP Credit Agreement, and to pay such other amounts as are required or permitted to be paid pursuant to the DIP Credit Agreement and this Final Financing Order, in each case, to be used strictly in accordance with the Approved Budget, subject to compliance with the Variance Covenant (as hereafter defined). No obligation, payment, transfer or grant of security under the DIP Loan Documents or this Final Financing Order shall be stayed, restrained, voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

b.　DIP Obligations. The DIP Obligations: (i) shall be evidenced by the books and records of the DIP Agent or the DIP Lenders; (ii) shall bear interest in the amounts set forth in the DIP Credit Agreement; (iii) shall be secured in the manner specified in this Final Financing Order; (iv) shall be payable in accordance with the terms of the DIP Loan Documents; and (v) shall otherwise be governed by the terms set forth herein and in the DIP Loan Documents.

c.　Interest and Fees Under the DIP Facility. The rate of interest to be charged for the DIP Loans and other DIP Obligations pursuant to the DIP Credit Agreement shall be the rates set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement. The fees charged under the DIP Facility shall be those set forth in the DIP Credit Agreement and shall be payable at the times set forth in the DIP Credit Agreement.

d.　Budget Maintenance. The Approved Budget (as defined below) is in form and substance acceptable to the Pre-Petition First Lien Agent, DIP Agent, requisite Pre-Petition First Lien Lenders and the DIP Secured Parties, and any requests by the Debtors for modifications thereto may only be approved by the DIP Agent and the Pre-Petition First Lien Agent; provided, however, that if any such modification is a Material Modification, then such modification may only be approved by the DIP Agent and the Pre-Petition First Lien Agent, upon Consultation (as hereafter defined) with the DIP Lenders or Pre-Petition First Lien Lenders, as applicable. As used herein, "**Consultation**" shall mean written notification (including via e-mail) from the DIP Agent and/or the Pre-Petition First Lien Agent to the DIP Lenders and/or the Pre-Petition First Lien Lenders, as applicable, as promptly as commercially reasonable, of the general terms of a proposed Material Modification; provided, however, that if the proposed Material Modification is being requested under exigent circumstances, it is not a requirement that

such notification be either expressly acknowledged, or responded to, by all or the Majority DIP Lenders and/or all or the requisite Pre-Petition First Lien Lenders, as applicable, and the DIP Agent and/or the Pre-Petition First Lien Agent, as applicable, shall be deemed to have satisfied any obligation to "Consult" with the DIP Lenders and/or the Pre-Petition First Lien Lenders, as applicable, and therefore deemed authorized to proceed with approving, in the sole discretion of the DIP Agent and/or the Pre-Petition First Lien Agent, as applicable, any such Material Modification; provided further, however, that if the Majority DIP Lenders and/or the requisite Pre-Petition First Lien Lenders, as applicable, do respond in a timely fashion, prior to any such approval, with affirmative direction respecting any such proposed Material Modification, the DIP Agent and/or the Pre-Petition First Lien Agent, as applicable, shall take such action as directed by the Majority DIP Lenders and/or requisite Pre-Petition First Lien Lenders, as applicable. As used herein, "**Material Modification**" shall mean (a) with respect to the Approved Budget, a proposed modification that would cause a breach of the Variance Covenant if not approved in accordance with the terms hereof, and (b) with respect to any of this Final Financing Order, the Bidding Procedures Order, the Cash Management Order or, following the entry thereof, the Sale Order, a material, substantive amendment or other modification thereto.

      e.     Payment of DIP Fees and Expenses. The Debtors shall pay or reimburse the DIP Agent and the DIP Lenders for any and all of their respective accrued and unpaid reasonable fees, costs, expenses and charges payable under the DIP Loan Documents, including, without limitation, the reasonable and documented fees and expenses of the DIP Agent and the DIP Lenders as provided in Section 12.14.1 of DIP Credit Agreement, all without further notice, motion or application to, order of, or hearing before, this Court, provided that such payments shall be made not earlier than ten (10) days following receipt by the Debtors, the

United States Trustee and, if appointed, the Committee or its counsel, of a written invoice (subject to all applicable privilege or work product doctrines); provided, however, that such notice requirement shall not apply to any accrued and unpaid fees due under section 1.7 of the DIP Credit Agreement. In accordance with the foregoing procedures, the Debtors shall promptly pay the reasonable and documented monthly fees and expenses, without the necessity of any further application to the Court for approval or payment, of (i) Blank Rome LLP and Sidley Austin LLP, counsel to the DIP Agent, and (ii) and any other professional, advisor or agent reasonably retained by the DIP Agent or its counsel in connection with the DIP Loan Documents pursuant to the Bankruptcy Cases. No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the Court shall have jurisdiction to determine any dispute concerning such invoices, and provided further, however, that such payments shall be provisional in nature, and if and to the extent that any payment(s) is challenged by a party-in-interest with standing under section 506(b) of the Bankruptcy Code and ultimately not allowed under such provision, such payment(s) may be recharacterized as and reallocated as a payment of principal on the DIP Obligations or as the Court may otherwise order. In addition, the Debtors are hereby authorized to indemnify the DIP Agent and the DIP Lenders (and each of their respective directors, officers, employees, agents, representatives, attorneys, consultants, advisors and controlling persons) against any liability arising in connection with the DIP Loan Documents, to the extent set forth in the DIP Loan Documents. All such unpaid fees, costs and expenses and indemnities of the DIP Agent and the DIP Secured Parties shall be secured by the Collateral and afforded all of the priorities and protections afforded to the DIP Obligations under this Final Financing Order and the DIP Loan Documents.

f.    Grant of Superpriority Claims and Priming Liens to Secure DIP Obligations.

i.    Perfection in the Debtors' Cash.  From the Petition Date until the DIP Obligations have been indefeasibly paid in full in cash, all cash receipts, Cash Collateral and all proceeds from the sale or other disposition of the Collateral or Pre-Petition Collateral and all other proceeds of such collateral of any kind which is now or shall come into the possession or control of any of the Debtors, or to which any of the Debtors is now or shall become entitled, shall be promptly deposited only into accounts upon which the DIP Agent and the Pre-Petition First Lien Agent have a perfected security interest and such collections and proceeds shall remain subject to all of the security interests and liens of the DIP Agent and the Pre-Petition First Lien Agent (subject to further orders of the Court) and shall be treated in accordance with this Final Financing Order.  Subject to the Carve-Out (as hereafter defined) and other provisions of this Final Financing Order, all financial institutions in which the Debtors' accounts are located are authorized and directed to comply with any request, subject to the terms hereof, of the (i) DIP Agent, to turn over to the DIP Agent all funds therein without offset or deduction of any kind to the extent necessary to pay the outstanding DIP Obligations in full, and (ii) the Pre-Petition First Lien Agent, to turn over to the Pre-Petition First Lien Agent all funds therein without offset or deduction of any kind to the extent necessary to pay the outstanding Pre-Petition First Lien Indebtedness in full.

ii.    Superpriority Claims.  In accordance with Bankruptcy Code sections 364(c)(1) and 364(d), the DIP Obligations shall constitute superpriority administrative expense claims (the "**DIP Superpriority Claim**") against each of the Debtors with priority in payment over any and all administrative expense claims, adequate protection

claims, diminution claims and all other claims against the Debtors or their estates, which are now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, (a) claims related to the Pre-Petition First Lien Indebtedness and any adequate protection claims asserted by the Pre-Petition First Lien Agent on behalf of the Pre-Petition First Lien Lenders, (b) claims related to the Pre-Petition Second Lien Indebtedness and any adequate protection claims asserted by the Pre-Petition Second Lien Agent on behalf of the Pre-Petition Second Lien Lenders, and (c) all administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code or otherwise, including those resulting from the conversion of the any of the Bankruptcy Cases pursuant to section 1112 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment; <u>provided</u>, <u>however</u>, that the DIP Superpriority Claims shall be subject to the Carve Out (as defined below).

iii.     <u>DIP Liens</u>.  As security for the DIP Obligations, the DIP Agent, for the benefit of the DIP Secured Parties, is hereby granted as of the Petition Date, valid, enforceable, binding, first priority and fully perfected security interests in and liens upon (such security interests and liens collectively, the "**<u>DIP Liens</u>**"), all present and after-acquired property of the Debtors of any nature whatsoever, including, without limitation, all accounts receivable, inventory, general intangibles, chattel paper, real property, leaseholds, fixtures, machinery and equipment, deposit accounts, cash and cash equivalents, investments, patents, trademarks, trade names, copyrights, rights under license agreements and other intellectual property as well as a pledge of all equity interests in each Debtor (other than the Parent), all inter-company notes or inter-company receivables due to each Debtor and all causes of action whether pursuant to

federal or state law, including, all claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other avoidance actions under the Bankruptcy Code and the proceeds thereof and property received thereby whether by judgment, settlement, or otherwise, whether pursuant to federal law or applicable state law (collectively, "**Avoidance Actions**") of the Debtors or their estates and any and all rents, issues, products, offspring, proceeds and profits generated by any of the foregoing (collectively, the "**Collateral**"), subject and subordinate only to the Permitted Prior Liens. For the avoidance of doubt, the Collateral shall include all of the Pledged Securities (as defined in that certain Second Amended and Restated Parent Guaranty and Pledge Agreement, dated June 6, 2007, by and among Parent, Borrower and Pre-Petition First Lien Agent (the "**Pre-Petition First Lien Parent Guaranty**")), all other property which may be delivered to and held by the Pre-Petition First Lien Agent pursuant to the terms of the Pre-Petition First Lien Parent Guaranty of any character whatsoever or into which any of the Pledged Securities may be converted or which may be substituted for any of the Pledged Securities, and all Proceeds (as defined in the Pre-Petition First Lien Parent Guaranty) of the Pledged Securities. The DIP Liens shall be:

(A) <u>Liens on Unencumbered Assets</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, continuing valid, enforceable, first priority, fully-perfected liens on and security interests in all of the Debtors' right, title, and interest in, to and under all Collateral that is not otherwise encumbered by a validly perfected security interest or lien on the Petition Date.

(B) <u>Liens on Encumbered Assets</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, a continuing valid, enforceable, second priority and fully perfected lien on and security interest (other than as set forth in clause (C) below) in all of the

Debtors' right, title, and interest in, to and under all Collateral which is subject to, as of the Petition Date, a Permitted Prior Lien that was perfected prior to the Petition Date or that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(C)  Priming Liens on Encumbered Assets.  Subject to Permitted Prior Liens, pursuant to section 364(d)(1) of the Bankruptcy Code, valid, enforceable, fully perfected first priority senior priming security interests in and senior priming liens upon all of the Debtors' right, title, and interest in, to and under all Collateral, including, without limitation, priming security interests and priming liens which are senior to (i) the security interests and liens held by the Pre-Petition First Lien Agent, on behalf of the Pre-Petition First Lien Secured Parties, and the Pre-Petition Second Lien Agent, on behalf of the Pre-Petition Second Lien Secured Parties and (ii) the Adequate Protection Liens (as defined below).

(D)  Liens Senior to Certain Other Liens. Notwithstanding anything to the contrary contained in this Final Financing Order, the DIP Liens and the Adequate Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, (ii) any liens arising after the Petition Date, or (iii) any intercompany or affiliate liens of the Debtors.

4.  Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Financing Order, pursuant to sections 363(c)(2) of the Bankruptcy Code, the Debtors are authorized to use Cash Collateral as set forth in the thirteen week budget, attached hereto as "Exhibit A", prepared and delivered to the Pre-Petition First Lien Agent by the Debtors that reflects projected cash receipts, operating disbursements, payroll disbursements, non-

operating disbursements, payment of certain professional fees for the Pre-Petition First Lien Agent and cash balances on a weekly basis, during the period from the Petition Date through and including December 15, 2010 (the "**Final Period**") (such budget, as modified hereafter in accordance with the terms of this Final Financing Order, the "**Approved Budget**"). Except as otherwise expressly provided herein, Cash Collateral and the DIP Facility may be used during the Final Period (subject to any extensions thereof) strictly in accordance with the Approved Budget, subject to compliance with the Variance Covenant. The Debtors shall no longer be authorized to use Cash Collateral at the expiration of the Final Period (subject to any extensions thereof). Notwithstanding anything to the contrary set forth herein, the Final Period may be extended by agreement among the Debtors, the DIP Agent, the DIP Lenders, the Pre-Petition First Lien Agent and the requisite Pre-Petition First Lien Lenders, so long as the Debtors (a) file a notice of such extension with this Court, which notice shall include a modified Approved Budget, if applicable, and (b) serve such notice upon those parties described in paragraph 34 below. Nothing in this Final Financing Order shall be deemed to authorize the use, sale, lease, encumbrance, or disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as provided for in the Approved Budget solely with respect to the wind-down expenses.

        a.      Pre-Petition First Lien Secured Parties' Adequate Protection. As adequate protection for the interests of the Pre-Petition First Lien Agent, for the benefit of the Pre-Petition First Lien Secured Parties, on account of the Adequate Protection Obligations, the Pre-Petition First Lien Agent is being provided with adequate protection (collectively, the "**First Lien Adequate Protection**").

i. <u>First Lien Adequate Protection Liens</u>. The Pre-Petition First Lien Agent, for the benefit of itself and the other Pre-Petition First Lien Secured Parties, is hereby granted valid and perfected replacement and additional security interests in, and liens (the "**First Lien Adequate Protection Liens**") on the Collateral to the extent of the Adequate Protection Obligations, which shall be junior in all respect to the DIP Liens, the Permitted Prior Liens and the Carve Out.

(A)     The First Lien Adequate Protection Liens shall be deemed to be valid, binding, enforceable and fully perfected as of the Petition Date and not subject to subordination or avoidance, for all purposes in the Bankruptcy Cases and subject only to the DIP Liens, the Permitted Prior Liens and the Carve Out.

(B)     The First Lien Adequate Protection Liens shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed or elected in the Bankruptcy Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Bankruptcy Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**").

(C)     Except for the DIP Liens, the Permitted Prior Liens and the Carve Out, the First Lien Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Bankruptcy Cases (unless with the consent of the Pre-Petition First Lien Agent and the requisite Pre-Petition First Lien Lenders), and shall be valid and enforceable against any trustee appointed or elected in any of the Bankruptcy Cases or any Successor Cases, or upon the dismissal of any

of the Bankruptcy Cases or Successor Cases. The First Lien Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the First Lien Adequate Protection Liens.

(D)     From the Petition Date until each of the DIP Obligations and the Pre-Petition First Lien Indebtedness have been indefeasibly paid in full in cash, all cash receipts, Cash Collateral and all proceeds from the sale or other disposition of the Collateral or Pre-Petition Collateral and all other proceeds of such collateral of any kind which is now or shall come into the possession or control of any of the Debtors, or to which any of the Debtors is now or shall become entitled, shall be promptly deposited only into accounts upon which the DIP Agent or the Pre-Petition First Lien Agent, as applicable, has a perfected security interest and such collections and proceeds shall remain subject to all of the security interests and liens of the DIP Agent for the benefit of the DIP Secured Parties, and the Pre-Petition First Lien Agent for the benefit of the Pre-Petition First Lien Secured Parties (subject to further orders of the Court), and shall be treated in accordance with this Final Financing Order. Subject to the Carve-Out and other provisions of this Final Financing Order, all financial institutions in which the Debtors' accounts are located are authorized and directed to comply with any request of the DIP Agent or the Pre-Petition First Lien Agent, as applicable, subject to the terms hereof, to turn over to the DIP Agent or the Pre-Petition First Lien Agent, as applicable, all funds therein without offset or deduction of any kind.

ii.     <u>First Lien Adequate Protection Claims</u>. As further adequate protection, the Pre-Petition First Lien Agent, for the benefit of the Pre-Petition First

Lien Secured Parties, is hereby granted an allowed administrative claim (the "**First Lien Adequate Protection Claim**") against the Debtors' estates under sections 503 and 507(b) of the Bankruptcy Code to the extent that the First Lien Adequate Protection Liens do not adequately protect the diminution in the value of the Pre-Petition First Lien Secured Parties' interest in the Pre-Petition Collateral, which First Lien Adequate Protection Claim shall be subject and subordinate only to the DIP Superpriority Claim, the Carve Out and any claim of any holder of a Permitted Prior Lien and shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, which are now existing, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b), 506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code; and

> iii.     <u>Additional Adequate Protection</u>.  As further adequate protection, and without limiting any rights of the Pre-Petition First Lien Agent, for the benefit of the Pre-Petition First Lien Secured Parties, under section 506(b) of the Bankruptcy Code which are hereby preserved, and in consideration, and as a requirement, for the Adequate Protection Obligations, the Debtors shall pay or reimburse the Pre-Petition First Lien Agent for any and all of its accrued and payable reasonable fees, costs, expenses and charges payable under the Pre-Petition First Lien Loan Documents, including, without limitation, the reasonable and documented fees and expenses of the Pre-Petition First Lien Agent as provided in Section 11.14.1 of the Pre-Petition First Lien Credit Agreement, whether accrued pre-petition or post-petition, all without further notice, motion or application to, order of, or hearing before, this Court, provided that such payments shall be made not earlier than ten (10) days following receipt

by the Debtors, the United States Trustee and, if appointed, the Committee or its counsel, of a written invoice (subject in all respects to applicable privilege or work product doctrines). In accordance with the foregoing procedures, the Debtors shall promptly pay the reasonable and documented monthly fees and expenses, without the necessity of any further application to the Court for approval or payment, of (i) Blank Rome LLP and Sidley Austin LLP, counsel to the Pre-Petition First Lien Agent, and (ii) and any other professional, advisor or agent reasonably retained by the Pre-Petition First Lien Agent or its counsel in connection with the Pre-Petition First Lien Loan Documents pursuant to the Bankruptcy Cases; provided that none of such fees and expenses as adequate protection payments hereunder shall be subject to approval by the Court or the United States Trustee Guidelines. No recipient of any such payment shall be required to file with respect thereto any interim or final fee application with the Court; provided, however, that the Court shall have jurisdiction to determine any dispute concerning such invoices, and provided further, however, that such payments shall be provisional in nature, and if and to the extent that any payment(s) is challenged by a party-in-interest with standing under section 506(b) of the Bankruptcy Code and ultimately not allowed under such provision, such payment(s) may be recharacterized as and reallocated as a payment of principal on the Pre-Petition First Lien Indebtedness or as the Court may otherwise order.

b. Pre-Petition Second Lien Agent's and Pre-Petition Second Lien Lenders' Adequate Protection. In consideration for and on account of the Adequate Protection Obligations, without conceding any entitlement thereto, the Pre-Petition Second Lien Agent, for the benefit of the Pre-Petition Second Lien Lenders, is being provided with adequate protection, solely to the extent it is determined that the Pre-Petition Second Lien Agent and the Pre-Petition

Second Lien Lenders are entitled thereto (the "**Second Lien Adequate Protection**" and, together with the First Lien Adequate Protection, the "**Adequate Protection**").

        i.      Second Lien Adequate Protection Liens. The Pre-Petition Second Lien Agent is hereby granted valid and perfected replacement and additional security interests in, and liens on all of the Debtors' right, title and interest in, to and under all Collateral (the "**Second Lien Adequate Protection Liens**," and together with the First Lien Adequate Protection Liens, the "**Adequate Protection Liens**"), which liens are valid, binding enforceable and fully perfected as of the date hereof and which liens are subordinate and subject to (i) the DIP Liens for the benefit of the DIP Secured Parties, (ii) the liens of the Pre-Petition First Lien Agent for the benefit of the Pre-Petition First Lien Secured Parties, (iii) the First Lien Adequate Protection Liens, (iv) the Permitted Prior Liens and (v) the Carve Out.

        ii.     Additional Second Lien Adequate Protection. The Second Lien Adequate Protection Liens shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed or elected in the Bankruptcy Cases or any Successor Cases. Except as provided herein, the Second Lien Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore entered in the Bankruptcy Cases, and shall be valid and enforceable against any trustee appointed or elected in any of the Bankruptcy Cases or Successor Cases, or upon the dismissal of any of the Bankruptcy Cases or Successor Cases. The Second Lien Adequate Protection Liens shall not be subject to sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Second Lien Adequate Protection Liens, except as provided herein.

iii.     Second Lien Adequate Protection Claims.  As further

adequate protection, and solely to the extent it is determined that the Pre-Petition Second Lien

Agent, for the benefit of the Pre-Petition Second Lien Lenders, is entitled thereto, the Pre-

Petition Second Lien Agent, for the benefit of the Pre-Petition Second Lien Lenders, is hereby

granted an allowed administrative claim (the "**Second Lien Adequate Protection Claim**", and

together with the First Lien Adequate Protection Claim, the "**Adequate Protection Claims**")

against the Debtors' estates under sections 503 and  507(b) of the Bankruptcy Code to the extent

that the Second Lien Adequate Protection Liens do not adequately protect the diminution in the

value of the Pre-Petition Second Lien Lenders' interest in the Pre-Petition Collateral, which

Second Lien Adequate Protection Claim shall have priority over all administrative expense

claims and unsecured claims against the Debtors or their estates, which are now existing, of any

kind or nature whatsoever, including, without limitation, administrative expenses of the kinds

specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 364, 365, 503(a), 503(b),

506(c), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of

the Bankruptcy Code; provided, however, that the Second Lien Adequate Protection Claim shall

be subject and subordinate only to (i) the DIP Superpriority Claim, (ii) the First Lien Adequate

Protection Claim and (iii) the Carve Out.

5.     Maturity of DIP Facility and Right to Use Cash Collateral.  The DIP

Facility and the Debtor's right to use Cash Collateral will mature and terminate, respectively (the

"**Termination Date**"), upon the earliest to occur of (i) the expiration of the Final Period (subject

to any extensions thereof); (ii) the date on which the DIP Obligations shall become due and

payable in accordance with the terms of the DIP Credit Agreement (including by acceleration by

the DIP Agent) or the Commitment (as defined in the DIP Credit Agreement) is terminated in

accordance with the terms of the DIP Credit Agreement; (iii) conversion of any of the Bankruptcy Cases to a case under chapter 7 of the Bankruptcy Code unless otherwise consented to in writing by the DIP Agent, the Pre-Petition First Lien Agent, the Majority DIP Lenders and the requisite Pre-Petition First Lien Lenders; (iv) dismissal of any of the Bankruptcy Cases, unless consented to in writing by the DIP Agent and the Majority DIP Lenders; (v) the date of consummation of the Approved Sale (as hereafter defined); and (vi) the effective date of any Debtors' plan of reorganization confirmed in the Bankruptcy Cases unless extended, as to the DIP Facility, with the prior written consent of the DIP Agent and Majority DIP Lenders and, as to the use of Cash Collateral, the Pre-Petition First Lien Agent and requisite Pre-Petition First Lien Lenders.

6.    Modification of Automatic Stay.  The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Financing Order, including, without limitation, to: (a) permit the Debtors to grant the Adequate Protection; (b) permit the Debtors to perform such acts as the DIP Agent and the Pre-Petition First Lien Agent may reasonably request to assure the perfection and priority of the liens granted herein; and (c) authorize the Debtors to make payments made in accordance with the terms of this Final Financing Order.

7.    Perfection of DIP Liens and Adequate Protection Liens.  This Final Financing Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the security interests and liens granted under this Final Financing Order, without the necessity of filing or recording any mortgage, financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit

account control agreement, the taking possession of any of the Collateral or Pre-Petition Collateral of the Debtors, the execution of any control, lock-box, deposit account, or the taking of any action to have security interests or liens noted on certificates of title or similar documents) to validate or perfect (in accordance with applicable non-bankruptcy law) the security interests and liens granted herein, or to entitle the DIP Agent or Pre-Petition Agents to the priorities granted herein. Notwithstanding the foregoing, the DIP Agent and the Pre-Petition First Lien Agent may, in their sole discretion, file such financing statements, mortgages, deeds of trust, notices of lien, or similar instruments or otherwise confirm perfection of such liens, security interests, and mortgages without seeking modification of the automatic stay under section 362 of the Bankruptcy Code and all such documents shall be deemed to have been filed or recorded at the time of and on the Petition Date and will be deemed to have the priorities as set forth in this Final Financing Order. Any entity holding property of the Debtors' estates shall cooperate promptly with the DIP Agent and the Pre-Petition First Lien Agent in the execution of documents or other acts as the DIP Agent and the Pre-Petition First Lien Agent may request in their reasonable discretion to confirm perfection of the liens granted hereunder to the DIP Agent, for the benefit of the DIP Secured Parties, and the Pre-Petition First Lien Agent, for the benefit of the Pre-Petition First Lien Secured Parties.

8. <u>Conditions Precedent to Borrowing Under the DIP Facility</u>. The Debtor's right to use Cash Collateral and to borrow under the DIP Facility will be subject to the satisfaction of all conditions precedent deemed necessary or appropriate by the DIP Agent and the Pre-Petition First Lien Agent, as applicable, including, but not limited to:

a. The Final Financing Order shall have been entered by the Bankruptcy Court and shall not have been stayed, modified or appealed;

b. Continued retention by the Debtors of Loughlin Meghji + Company or another CRO firm acceptable to the Debtors, the DIP Agent, the Pre-Petition First Lien Agent, the Majority DIP Lenders and requisite Pre-Petition First Lien Lenders, on terms acceptable to the DIP Agent, the Pre-Petition First Lien Agent, Majority DIP Lenders and requisite Pre-Petition First Lien Lenders;

c. Continued retention by the Debtors of SSG Capital Advisors, LLC to serve as investment banker to market the Debtors' assets or another investment banking firm acceptable to the Debtors, the DIP Agent, the Pre-Petition First Lien Agent, the Majority DIP Lenders and requisite Pre-Petition First Lien Lenders, on terms acceptable to the DIP Agent, the Pre-Petition First Lien Agent, Majority DIP Lenders and requisite Pre-Petition First Lien Lenders;

d. Subject to the terms of this Final Financing Order, reimbursement in full in cash of the professional fees, costs and expenses of the Pre-Petition First Lien Agent, the Pre-Petition First Lien Lenders, the DIP Agent, and the DIP Lenders; and

e. The delivery of such other deliverables as the DIP Agent and the Pre-Petition First Lien Agent may reasonably require.

9.   Debtors' Obligations.  The Debtors shall:

a. Not utilize Cash Collateral or the DIP Facility other than in strict compliance with the Approved Budget, subject only to the Variance Covenant;

b. Deliver to the DIP Agent and the Pre-Petition First Lien Agent no later than Thursday of each week for the week ended on the previous Saturday a variance report, in form and detail satisfactory to the DIP Agent and the Pre-Petition First Lien Agent, comparing the actual cash receipts, disbursements and DIP Loan balance for the immediately preceding four

(4) week period to the anticipated cash receipts and disbursements and anticipated DIP Loan balance for such period as set forth in the Approved Budget, which shall include a discussion and analysis by management of any variances, together with all other deliverables required by section 5.1.1 of the DIP Credit Agreement, irrespective (with respect to the Pre-Petition First Lien Agent) of whether the DIP Credit Agreement is then in effect;

c. Provide the DIP Agent, the DIP Lenders, the Pre-Petition First Lien Agent and the Pre-Petition First Lien Lenders with monthly, quarterly and annual financial reports in accordance with section 5.1 of the DIP Credit Agreement, regardless of whether the DIP Credit Agreement is then in effect, and such additional business, financial, corporate affairs and other information with respect to the businesses, financial conditions, assets or results of operations of the Debtors as the DIP Agent, any Lender, the Pre-Petition First Lien Agent or any Pre-Petition First Lien Lender may from time to time reasonably request; and

d. Serve the DIP Agent and the Pre-Petition First Lien Agent and its counsel with a copy of each monthly report filed by the Debtors in these Bankruptcy Cases as required by the Court, the U.S. Trustee or applicable law.

10. Cash Management. The Cash Management Order shall be consistent with this Final Financing Order and the Debtors shall at all times maintain the cash management system set forth in the Cash Management Order (Material Modifications of which are subject to the prior written consent of the DIP Agent or the Pre-Petition First Lien Agent, as applicable, upon Consultation with the DIP Lenders or the Pre-Petition First Lien Lenders, as applicable).

11. Disposition of Collateral. The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent

of the DIP Agent, Majority DIP Lenders, the Pre-Petition First Lien Agent, and the requisite Pre-Petition First Lien Lenders.

12. <u>Events of Default</u>. The occurrence of any of the following events shall constitute an event of default (collectively, the "**<u>Events of Default</u>**"):

a. The entry of a final order approving a motion by any party seeking dismissal of the Bankruptcy Cases (unless consented to in writing by the DIP Agent and the Majority DIP Lenders), conversion of the Bankruptcy Cases to chapter 7 cases (unless consented to in writing by the DIP Agent, the Pre-Petition First Lien Agent, the Majority DIP Lenders and the requisite Pre-Petition First Lien Lenders), or the appointment in the Bankruptcy Cases of a chapter 11 trustee or examiner with expanded powers beyond those set forth in sections 1106(a)(3) and (a)(4) of the Bankruptcy Code.

b. Absent the prior written consent of the DIP Agent and the Pre-Petition First Lien Agent, the Debtors' filing of a motion seeking financing under section 364(d) of the Bankruptcy Code, or any Debtor seeks to obtain additional financing that is pari passu or senior to the DIP Facility or the Pre-Petition First Lien Indebtedness.

c. This Final Financing Order is not in form and substance acceptable to the DIP Agent and the Pre-Petition First Lien Agent, upon Consultation with the Majority DIP Lenders and the requisite Pre-Petition First Lien Lenders, is not promptly entered upon the conclusion of the Final Hearing or shall at any time cease to be in full force and effect, including, without limitation, the entry of a final order approving a motion to amend, reverse, supplement, stay, vacate or otherwise modify this Final Financing Order in a manner not agreed to in writing by the DIP Agent and the Pre-Petition First Lien Agent, upon Consultation with the Majority DIP Lenders and the requisite Pre-Petition First Lien Lenders, respectively.

d.       The entry of a final order granting relief from the automatic stay in favor of any creditor asserting a security interest in any assets of the Debtors which have an aggregate value in excess of $100,000.00.

e.       Entry of an order authorizing the sale of assets of the Debtors, without the consent of the DIP Agent and the Pre-Petition First Lien Agent.

f.       The failure by any Debtor to fully and timely comply with the terms and provisions contained in this Final Financing Order including, but not limited to, the failure (i) to operate within the Approved Budget, subject only to the Variance Covenant or (ii) to make any adequate protection payments when due.

g.       The filing of any plan of reorganization which does not have the prior written consent of the DIP Agent, the Majority DIP Lenders, the Pre-Petition First Lien Agent, and the requisite Pre-Petition First Lien Lenders or the termination of Debtors' "exclusive period" under section 1121 of the Bankruptcy Code for the filing of a plan of reorganization.

h.       The granting of any superpriority claim (other than the Carve Out) or of any other lien (other than Permitted Prior Liens, and including any other adequate protection lien) which is pari passu with or senior to the claims and liens of the DIP Agent or the Pre-Petition First Lien Agent.

i.       The payment by any Debtor (whether by way of adequate protection or otherwise) of principal or interest or otherwise on account of any Pre-Petition Indebtedness or payables (including without limitation, reclamation claims or the Debtors' consent to any creditor taking any set-off against any of its pre-petition indebtedness based upon any such return pursuant to section 553(b)(1) of the Bankruptcy Code or otherwise) other than payments authorized by the Court and which are set forth in the Approved Budget, in each case

to the extent authorized by one or more "first day" or other orders satisfactory to the DIP Agent and the Pre-Petition First Lien Agent.

        j.     The Debtors engage in or support (i) the commencement of any adversary proceeding, contested matter, any other litigation or proceeding seeking to challenge the validity, perfection, priority, extent or enforceability of the DIP Facility, the Pre-Petition First Lien Loan Documents, the DIP Liens, or the Pre-Petition First Lien Security Interests; (ii) the initiation, service or filing of any formal discovery or motion seeking authority to conduct discovery of any of the Pre-Petition Secured Parties, the DIP Agent, or the DIP Lenders, the Debtors or any other person with respect to a Challenge (as defined below) and the Debtors fail to timely take all actions necessary and appropriate to oppose the relief requested through such Challenge; or (iii) any investigation or assertion of any claim or cause of action (or directly or indirectly support assertion of the same) against the Pre-Petition First Lien Secured Parties; provided, however, that it shall not constitute an Event of Default hereunder if the Debtors provide information with respect to the Pre-Petition Loan Documents to a party in interest or are compelled to provide information by an order of the Bankruptcy Court and provide prior written notice to the DIP Agent and the DIP Secured Parties and the Pre-Petition First Lien Agent and the Pre-Petition First Lien Lenders of any intention or requirement to do so.

        k.     For any four-week rolling period, the aggregate actual cash disbursements by the Debtors exceed 110% of the aggregate projected cash disbursements for such period as set forth in the Approved Budget; provided, however, that (i) for purposes of measuring compliance with the foregoing, together with the amount of any positive variance described in clause (ii) below, actual and projected cash disbursements for professional fees and expenses shall be disregarded, and (ii) if for any four-week rolling period, the aggregate actual

cash disbursements are less than the projected cash disbursements for such period as set forth in the Approved Budget (a "positive variance") and the actual cash balance as of the end of such period is not more than 10% below the projected cash balance for the end of such period as set forth in the Approved Budget, then the Debtors may carry-forward such positive variance to the immediately succeeding four-week rolling period and the aggregate projected cash disbursements for such immediately succeeding four-week rolling period shall be deemed to be increased by an amount equal to such positive variance. All modifications to the Approved Budget will include a line item for net positive variances and such other detail regarding positive variances as the DIP Agent shall require. This paragraph (k) is sometimes referred to herein as the "**Variance Covenant**." The Variance Covenant shall be tested on a weekly basis commencing with the first week following the Petition Date. The initial four-week rolling period(s) described above will include the applicable pre-petition period.

l. An "Event of Default" under Article 8 of the DIP Credit Agreement shall have occurred, irrespective of whether the DIP Credit Agreement is then in effect.

m. The Termination Date shall have occurred.

n. The failure to file a motion under section 363 of the Bankruptcy Code seeking authority to sell all or substantially all of the Debtors' assets to the Pre-Petition First Lien Agent or its designee under an Asset Purchase Agreement acceptable to Pre-Petition First Lien Agent, subject to the receipt of "higher and better" bids (the "**Approved Sale**"), together with bidding procedures (the "**Bidding Procedures**"), in each case, in form and substance satisfactory to the Pre-Petition First Lien Agent, on the Petition Date.

o.    The failure to obtain a court order approving the Bidding Procedures (the "**Bidding Procedures Order**") on or before the 25th day following the Petition Date, such Bidding Procedures Order to be in form and substance acceptable to the Pre-Petition First Lien Agent.

p.    The failure to conduct an auction in accordance with the Bidding Procedures (the "**Auction**") on or before November 17, 2010.

q.    The failure to obtain a court order of the Approved Sale (the "**Sale Order**") to the successful bidder on or before the 5th business day following the completion of the Auction, such Sale Order to be in form and substance satisfactory to the Pre-Petition First Lien Agent, upon Consultation with the Pre-Petition First Lien Lenders.

r.    The failure to consummate an Approved Sale on or before December 15, 2010. [3]

s.    Any person shall obtain a judgment under section 506(a) of the Bankruptcy Code or similar determination with respect to the Pre-Petition First Lien Indebtedness that is unacceptable to the Pre-Petition First Lien Agent and requisite Pre-Petition First Lien Lenders.

t.    The allowance of any claim or claims under section 506(c) or 552(b) of the Bankruptcy Code against or with respect to any of the Collateral.

u.    The breach by any Debtor of any other covenant or agreement (not specifically addressed above) contained in the DIP Loan Documents (irrespective of whether the

---

[3] Notwithstanding the foregoing, any or all of the dates described in the preceding clauses (o) through (r) may be extended in writing by up to 30 days by the Pre-Petition First Lien Agent in its sole and absolute discretion. Neither the Bidding Procedures nor any of the approvals described above shall be amended or otherwise modified without the consent of the Pre-Petition First Lien Agent and requisite Pre-Petition First Lien Lenders.

DIP Loan Documents are then in effect) or in this Final Financing Order, and such breach shall continue unremedied for more than three (3) business days.

13. <u>Rights and Remedies Upon Event of Default</u>. Upon the occurrence and during the continuance of an Event of Default, and without the necessity of seeking relief from the automatic stay, (i) the DIP Agent shall no longer have any obligation to make any DIP Loans under the DIP Facility and shall be entitled to accelerate the DIP Facility; (ii) the DIP Agent or Pre-Petition First Lien Agent shall be entitled to immediately terminate the Debtors' right to use Cash Collateral by written notice thereof to counsel for the Debtors, counsel for any official committee of unsecured creditors ("**Committee**"), and the U.S. Trustee, without further notice, application or order of this Court, (iii) the Debtors shall be bound by all restrictions, prohibitions and other terms as provided in this Final Financing Order, the DIP Credit Agreement and the other DIP Loan Documents and the Pre-Petition First Lien Loan Documents, and (iv) the DIP Agent or the Majority DIP Lenders shall be entitled to charge the default rate of interest under the DIP Facility and both the DIP Agent and the Pre-Petition First Lien Agent shall be entitled to take any act or exercise any right or remedy as provided in this Final Financing Order, the DIP Loan Documents, Pre-Petition First Lien Loan Documents or applicable law, including, without limitation, subject to the notice requirement set forth below, setting off any DIP Obligations or Pre-Petition First Lien Indebtedness with Collateral or Pre-Petition Collateral or proceeds in the DIP Agent's or Pre-Petition First Lien Agent's or any DIP Lender's or Pre-Petition First Lien Lender's possession, and enforcing any and all rights with respect to the Collateral or Pre-Petition Collateral. Upon the occurrence and during the continuance of an Event of Default and the exercise by the DIP Agent or the Pre-Petition First Lien Agent of their respective rights and remedies under this Final Financing Order, the DIP Loan Documents or Pre-Petition First Lien

Loan Documents, the Debtors shall assist the DIP Agent and the Pre-Petition First Lien Agent in effecting any sale or other disposition of the Collateral or Pre-Petition Collateral required by the DIP Agent and Pre-Petition First Lien Agent, including any sale of Collateral or Pre-Petition Collateral pursuant to section 363 of the Bankruptcy Code or assumption and assignment of Collateral or Pre-Petition Collateral consisting of contracts and leases pursuant to section 365 of the Bankruptcy Code, in each case, upon such terms that are designed to maximize the proceeds obtainable from such sale or other disposition and otherwise acceptable to the DIP Agent and the Pre-Petition First Lien Agent, and the Debtors shall fully cooperate with the DIP Secured Parties and the Pre-Petition First Lien Secured Parties in their exercise of rights and remedies; provided, however, that the DIP Agent and Pre-Petition First Lien Agent shall authorize the use of Cash Collateral if available, and if neither the Cash Collateral nor the Carve Out is sufficient at such time, the DIP Lenders shall provide funds in connection with a modified Approved Budget to pay related expenses other than the Carve Out. Without further notice, application or order of this Court, upon the occurrence and during the continuance of an Event of Default, and after providing three (3) business days' prior written notice thereof (which three (3) day period only applies to the Collateral or Pre-Petition Collateral enforcement remedies described below) to counsel for the Debtors, counsel for any Committee, and the U.S. Trustee, the DIP Agent for the benefit of itself and the other DIP Secured Parties, and the Pre-Petition First Lien Agent, for the benefit of itself and the other Pre-Petition First Lien Secured Parties, shall be entitled to take any action and exercise all rights and remedies provided to them by this Final Financing Order, the DIP Loan Documents or the Pre-Petition First Lien Loan Documents or applicable law as the DIP Agent or the Pre-Petition First Lien Agent may deem appropriate, each in their sole discretion, to, among other things, proceed against and realize upon the Collateral or Pre-Petition

Collateral or any other assets or properties of the Debtors' estates upon which the DIP Agent, for the benefit of itself and the other DIP Secured Parties and the Pre-Petition First Lien Agent, for the benefit of itself and the other Pre-Petition First Lien Secured Parties, has been or may hereafter be granted liens or security interests to obtain the full and indefeasible payment of all DIP Obligations and the Pre-Petition First Lien Indebtedness. Notwithstanding the foregoing, during such three (3) business day-period, the Debtors can cure the Event of Default (to the extent curable), the DIP Agent shall not accelerate during such three (3) business day-period (at which point the DIP Agent shall be entitled to accelerate without further notice or order of the Court), and the Debtors and/or any Committee shall be entitled to seek an emergency hearing with the Court, at which the only issue the Debtors and/or any Committee shall be allowed to assert is whether an Event of Default actually occurred. The rights and remedies of the DIP Secured Parties and the Pre-Petition First Lien Secured Parties specified herein are cumulative and not exclusive of any rights or remedies that the DIP Secured Parties and the Pre-Petition First Lien Secured Parties may have under the DIP Loan Documents, Pre-Petition First Lien Loan Documents or otherwise.

14.  Carve Out.

a.  Carve Out. Subject to the terms and conditions contained in this paragraph, the Adequate Protection Liens and Adequate Protection Claims and the DIP Liens and DIP Superpriority Claims, which have the relative lien and payment priorities as set forth herein, shall, in any event, in all cases be subject and subordinate only to a Carve Out (the "**Carve Out**"), which shall be comprised of the following:

i.  statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. §§ 1930(a)(6) with respect to the Debtors (the "**Statutory Fees**"); and

ii.    subject in all cases to the limitations set forth in this Final

Financing Order and to Court approval, the sum of (A) and (B) (collectively, the "**Priority**

**Professional Expenses**"), where (A) is the aggregate amount of the Debtors' professional fees

and disbursements which have been incurred, accrued, or invoiced in accordance with the

Approved Budget (but remain unpaid) prior to the earlier of (i) the date on which the Pre-Petition

First Lien Agent and/or DIP Agent provides written notice to the Debtors that an Event of

Default has occurred and that the post-default Carve Out has been triggered (whether or not

preceded by the receipt of written notice from Debtors that such Event of Default has occurred),

(ii) the date on which the Debtors provide written notice to the Pre-Petition First Lien Agent and

DIP Agent that an Event of Default has occurred and (iii) the Termination Date (unless the

Termination Date results from the consummation of the Approved Sale, in which event the

Carve Out Trigger Date shall not occur)(such earlier date, the "**Carve Out Trigger Date**"), in

either case, for any professional of the Debtors (each, a "**Professional**") retained by an order of

the Court under section 327 or 328 of the Bankruptcy Code, but only to the extent such fees and

expenses are or become allowed under section 330 of the Bankruptcy Code, and (B) is the

aggregate amount of fees and disbursements of the Debtors' Professionals accrued in accordance

with the Approved Budget after the Carve Out Trigger Date up to $100,000.00;  provided,

however, that if at the time the Court has approved the allowance and payment of the Priority

Professional Expenses, the Carve Out will not be available to the extent that the Debtors have

other unencumbered or less than fully encumbered assets consisting of cash and cash equivalents

out of which Priority Professional Expenses and Statutory Fees can be paid; and provided further,

however, that if the Carve Out is used at any time as set forth herein and subsequently

unencumbered assets of Debtors become available, the DIP Lenders and the Pre-Petition First

Lien Secured Parties shall be immediately reimbursed from such unencumbered assets for the release of their Collateral proceeds for the purpose of funding the Carve Out prior to the use of such funds.

            b.      <u>Ineligible Professional Expenses</u>.  Notwithstanding anything to the contrary in this Final Financing Order, neither the Carve Out, the Cash Collateral nor the DIP Facility shall be used to pay any Priority Professional Expenses or any other fees or expenses incurred by any Professional in connection with any of the following:  (a) an assertion or joinder in any claim, counter-claim, action, proceeding, application, motion, objection, defense or other contested matter seeking any order, judgment, determination or similar relief: (i) challenging the legality, validity, priority, perfection, or enforceability of the DIP Obligations or the Pre-Petition Indebtedness or any of the DIP Secured Parties' or the Pre-Petition Secured Parties' liens on and security interests in the Collateral or the Pre-Petition Collateral, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations or the Pre-Petition Indebtedness or any of the DIP Secured Parties' or Pre-Petition Secured Parties' liens on and security interests in the Collateral or the Pre-Petition Collateral, (iii) challenging any Adequate Protection Obligation, Adequate Protection Lien or Adequate Protection Claim or (iv) preventing, hindering or delaying any of the DIP Secured Parties' or the Pre-Petition First Lien Secured Parties' assertions or enforcement of any lien, claim, right or security interest or realization upon any Collateral or Pre-Petition Collateral in accordance with the terms and conditions of this Final Financing Order; <u>provided, however</u>, that notwithstanding the foregoing, any professional employed by any Committee shall be permitted to be paid $15,000.00 from Cash Collateral for the investigation of any Challenges as set forth in paragraph 15 below, (b) a request to use the Cash Collateral without the prior written consent of the Pre-Petition First Lien Agent and DIP

Agent, (c) a request for authorization to obtain debtor-in-possession financing or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code, without the prior written consent of the DIP Agent and the Pre-Petition First Lien Agent, (d) the commencement or prosecution of any action or proceeding of any claims, causes of action or defenses against any of the DIP Secured Parties or Pre-Petition Secured Parties or any of their respective officers, directors, employees, agents, attorneys, affiliates, successors or assigns, including, without limitation, any attempt to recover or avoid any claim or interest from any of the Pre-Petition Secured Parties under chapter 5 of the Bankruptcy Code, or (e) any act which has or could have the effect of materially and adversely modifying or compromising the rights and remedies of any of the DIP Secured Parties or Pre-Petition First Lien Secured Parties, or which is contrary, in a manner that is material and adverse to any of the DIP Secured Parties or Pre-Petition First Lien Secured Parties, to any term or condition set forth in or acknowledged by this Final Financing Order and which results in the occurrence of an Event of Default hereunder.

        c.      <u>Payment of Carve Out</u>.

        i.      Prior to the occurrence of the Carve Out Trigger Date, the Debtors shall be permitted to pay to the Professionals compensation and reimbursement of expenses that accrued prior to the Carve Out Trigger Date and in the ordinary course of the Debtors' business, and that are otherwise allowed and payable under section 328, 330 and 331 of the Bankruptcy Code and any interim procedures order entered by this Court, as the same may be due and payable but subject in any event to the times and amounts specified therefore in the Approved Budget.

        ii.      To the extent that any of the Pre-Petition First Lien Secured Parties or the DIP Lenders directly fund or otherwise pay the Carve Out, such amounts shall be

added to and made a part of the DIP Obligations under the DIP Facility to the extent the DIP Obligations have not been satisfied in full, or if the DIP Obligations have been indefeasibly paid in full, Pre-Petition First Lien Indebtedness, secured by the Collateral or the Pre-Petition Collateral, and entitle the DIP Agent and the Pre-Petition First Lien Agent to all of the rights, claims, liens, priorities and protections under this Final Financing Order, the Bankruptcy Code or applicable law. Payment of any amounts on account of the Carve Out, whether by or on behalf of any of the DIP Lenders or the Pre-Petition First Lien Secured Parties, shall not and shall not be deemed to reduce the DIP Obligations or the Pre-Petition First Lien Indebtedness, and shall not and shall not be deemed to subordinate any of the DIP Obligations or the Pre-Petition First Lien Secured Parties' liens and security interests in the Collateral or the Pre-Petition Collateral to any junior pre- or post-petition lien, interest or claim in favor of any other party. Except as otherwise expressly provided herein with respect to the Carve Out, the DIP Lenders and the Pre-Petition First Lien Secured Parties shall not, under any circumstance, be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals incurred in connection with the Bankruptcy Cases under any chapter of the Bankruptcy Code, and nothing in this Final Financing Order shall be construed to obligate any of the DIP Lenders or the Pre-Petition First Lien Secured Parties in any way, to pay compensation to or to reimburse expenses of any professional, or to ensure that the Debtors have sufficient funds to pay such compensation or reimbursement. Notwithstanding anything to the contrary contained herein, to the extent there are available any unencumbered assets, such assets shall be used to first fund the Carve Out.

        d.     Reduction of Carve Out. The Carve Out shall be reduced by the amount of any compensation and reimbursement of expenses paid or incurred (including any retainers received or to be applied post-petition), to the extent ultimately allowed by the Court,

prior to the occurrence of the Carve Out Trigger Date. In addition, following the Carve Out Trigger Date, any amounts paid thereafter to Professionals by any means will reduce the Carve Out on a dollar-for-dollar basis until reaching the post-default Carve Out. For the avoidance of doubt, nothing herein shall be construed to impair the ability of any party in interest to object to any fee, expense, reimbursement or compensation sought by the Professionals retained by the Debtors, any Committee or any other statutory committee appointed in the Bankruptcy Cases.

15. _Investigation Rights/Release_. Until November 16, 2010 ("**Challenge Expiration Date**"), the extent, legality, validity, perfection, priority enforceability and other matters noted in this Final Financing Order with respect to the Pre-Petition First Lien Loan Documents and the Pre-Petition First Lien Secured Parties' liens in the Pre-Petition Collateral as security for the Pre-Petition First Lien Indebtedness are for all purposes subject only to the rights of (i) any Committee, provided it has obtained the requisite standing, and (ii) any other creditor or non-debtor party-in-interest who obtains the requisite standing and any chapter 11 trustee, chapter 7 trustee or other estate representative (subject to the foregoing time period), to (a) challenge in any manner the Pre-Petition First Lien Indebtedness, and/or assert claims or causes of action of any nature in any way arising out of, relating to, or in connection with the Pre-Petition First Lien Indebtedness or the Pre-Petition First Lien Loan Documents, including, without limitation, causes of action under chapter 5 of the Bankruptcy Code, or (b) assert or allege any other matters in any way arising out of, or relating to, or in connection with the Pre-Petition First Lien Indebtedness or the Pre-Petition First Lien Loan Documents, including, without limitation, causes of action under chapter 5 of the Bankruptcy Code, or (c) challenge the extent, legality, validity, priority, perfection and/or enforceability of any of the Pre-Petition First Lien Security Interests pursuant to the Bankruptcy Code (the actions described in clause (a), (b)

and/or (c) above, collectively referred to herein as a "**Challenge**"). If a properly commenced Challenge is not timely filed on or before the Challenge Expiration Date, (i) the Debtors' Stipulations shall be irrevocably binding on the Debtors' estates, any Committee and all parties-in-interest and any and all successor in interest as to any of the foregoing (including any chapter 11 or chapter 7 trustee or any estate representative) and such parties shall thereafter be forever barred from bringing any Challenge, and (ii) the Pre-Petition First Lien Indebtedness shall be deemed allowed, on a final basis, in full and the Pre-Petition First Lien Secured Parties' security interests in and liens upon the Pre-Petition Collateral and the Collateral shall be recognized and allowable as legal, valid, binding, in full force and effect, non avoidable, perfected and senior to all other liens (subject only to Permitted Prior Liens and the DIP Liens) upon and claims against the Pre-Petition Collateral and the Collateral with respect to all parties in the Bankruptcy Cases including any Successor Cases and not be subject to any counterclaim, setoff, recoupment, deduction, or claim of any kind or any defense, or any further objection or challenge by any party at any time, including any subsequently appointed chapter 11 or chapter 7 trustee or estate representative. Nothing in this Final Financing Order shall be deemed to confer standing to commence any action or proceeding on either any Committee, or any other party-in-interest. Notwithstanding anything to the contrary herein, (a) if any Challenge is timely commenced, the Debtors' stipulations shall nonetheless remain binding on all parties-in-interest and preclusive except to the extent that such stipulations are expressly and successfully challenged in the Challenge; and (b) the Pre-Petition First Lien Secured Parties reserve all of their rights to contest, on any ground, any Challenge.

16. <u>Modification of DIP Loan Documents</u>. The Debtors, the DIP Agent, and the DIP Lenders are hereby authorized to implement, in accordance with the terms of the DIP

Loan Documents, any non-material modification (including, without limitation, any change in the number or composition of the DIP Lenders) of the DIP Loan Documents without further order of this Court, or any other modification to the DIP Loan Documents; provided however, that notice of any material modification or amendment to the DIP Loan Documents shall be provided to counsel to any Committee, the U.S. Trustee and the Pre-Petition First Lien Agent, each of whom shall have three (3) business days from the date of such notice within which to object in writing to such modification or amendment. If any Committee, the U.S. Trustee or the Pre-Petition First Lien Agent timely objects to any material modification or amendment to the DIP Loan Documents, such modification or amendment shall only be permitted pursuant to an order of this Court.

17. <u>No Third Party Rights</u>. Except as explicitly provided for herein (including in respect of the Carve Out), this Final Financing Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

18. <u>No Marshalling.</u> The Pre-Petition First Lien Indebtedness, the Pre-Petition First Lien Security Interests, the Pre-Petition Collateral, the First Lien Adequate Protection Liens, the First Lien Adequate Protection Claims, the DIP Obligations, the DIP Liens, and the Collateral and any proceeds, products, offspring, or profits of the foregoing, shall not be subject to any marshaling requirement with respect to the Collateral or Pre-Petition Collateral or subject to sections 510, 549, 550 or 551 of the Bankruptcy Code.

19. <u>Charges/Equities of the Case</u>. With the exception of the Carve Out, upon entry of this Final Financing Order, the Debtors and the Debtors' estates (for themselves and for any trustee or estate representative appointed in the Bankruptcy Cases or any Successor Case) irrevocably waive for the benefit and in favor of the Pre-Petition First Lien Secured Parties the

right to surcharge the Pre-Petition Collateral, pursuant to section 506(c) of the Bankruptcy Code or otherwise, without the prior written consent of the Pre-Petition First Lien Agent, and no such consent shall be implied from any other action, inaction, or acquiescence by the Pre-Petition First Lien Secured Parties in this proceeding. Upon entry of this Final Financing Order, the Pre-Petition First Lien Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and no expenses of administration of the Bankruptcy Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, may be charged against proceeds, product, offspring or profits from any of the Collateral or the Pre-Petition Collateral under section 552(b) of the Bankruptcy Code.

20. <u>No Liability to Third Parties</u>. In not objecting to the Debtors' use of Cash Collateral under the terms set forth herein or in taking any other actions related to this Final Financing Order, the DIP Secured Parties and/or the Pre-Petition First Lien Secured Parties shall not owe any fiduciary duty to the Debtors, their creditors or their estates. The DIP Secured Parties' and/or the Pre-Petition First Lien Secured Parties' relationship with any Debtor shall not constitute or be deemed to constitute a joint venture or partnership with any Debtor.

21. <u>Rights Preserved</u>. Notwithstanding anything herein to the contrary, the entry of this Final Financing Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly: (a) the DIP Secured Parties' and/or the Pre-Petition First Lien Secured Parties' right to seek any other or supplemental relief in respect of any Debtor, including the right to seek additional adequate protection; or (b) any of the rights of any of the DIP Secured Parties and/or the Pre-Petition First Lien Secured Parties under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the

automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Bankruptcy Cases or a Successor Case, conversion of any of the Bankruptcy Cases to cases under chapter 7, or appointment or election of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans. This Final Financing Order shall not be deemed to be an amendment or modification to, or a waiver of any term, condition or covenant contained in, the Intercreditor Agreement or the Pre-Petition Loan Documents.

22.    Section 507(b) Reservation. Except as otherwise provided in paragraph 4(b)(iii) above, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Pre-Petition First Lien Secured Parties hereunder is insufficient to compensate for any diminution in value of their interests in the Collateral or the Pre-Petition Collateral during the Bankruptcy Cases or any Successor Cases; provided that such application shall be consistent with the priorities set forth in this Final Financing Order. Nothing contained herein shall be deemed a finding by the Court, or an acknowledgement by the Pre-Petition First Lien Secured Parties, that the adequate protection granted herein does in fact adequately protect the Pre-Petition First Lien Secured Parties against any diminution in value of their respective interest in the Pre-Petition Collateral (including Cash Collateral).

23.    No Waiver by Failure to Seek Relief. The failure of any of the DIP Secured Parties or Pre-Petition First Lien Secured Parties to seek relief or otherwise exercise their rights and remedies under this Final Financing Order or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise of the applicable DIP Secured Parties or Pre-Petition First Lien Secured Parties.

24.    Proofs of Claim. Notwithstanding the entry of an order establishing a bar date in any of these Bankruptcy Cases, the Pre-Petition First Lien Secured Parties will not be required to file proofs of claim in any of the Bankruptcy Cases with respect to any obligations under the Pre-Petition Loan Documents or any other claims or liens granted hereunder or created hereby. The Pre-Petition First Lien Agent, for the benefit of itself and the other Pre-Petition First Lien Secured Parties, is hereby authorized and entitled, in its sole discretion, but not required, to file (and amend and/or supplement, as it sees fit) aggregate proofs of claim in each of the Bankruptcy Cases on behalf of all of the Pre-Petition First Lien Secured Parties in respect of the Pre-Petition First Lien Indebtedness. Any proof of claim so filed shall be deemed to be in addition and not in lieu of any other proof of claim that may be filed by any of the Pre-Petition First Lien Secured Parties. Any order entered by the Bankruptcy Court in relation to the establishment of a bar date in any of the Bankruptcy Cases will so provide.

25.    Good Faith. The DIP Secured Parties and the Pre-Petition First Lien Secured Parties have acted in good faith in connection with this Final Financing Order and their reliance on this Final Financing Order is in good faith.

26.    Binding Effect of Final Financing Order. The provisions of this Final Financing Order shall be binding upon all parties-in-interest in the Bankruptcy Cases, including the DIP Secured Parties and the Pre-Petition Secured Parties, any Committee and any other statutory committee that may be appointed in the Bankruptcy Cases, and the Debtors and their respective successors and assigns, including any subsequently appointed chapter 11 or chapter 7 trustee or other estate representative; and shall inure to the benefit of the DIP Secured Parties, the Pre-Petition Secured Parties and the Debtors, and their respective successors and assigns. Such binding effect is a benefit of the DIP Secured Parties' and the Pre-Petition Secured Parties'

bargain in connection with the Debtors' use of Cash Collateral and is an integral part of this Final Financing Order. In the event of any inconsistency between the provisions of this Final Financing Order and any other order (including any "first day" order) and any pre-petition agreement or any DIP Loan Document, the provisions of this Final Financing Order shall govern and control. Any payment to be made under any order (including any "first day" order) shall be made in accordance with this Final Financing Order and the Approved Budget, subject to the Variance Covenant.

27. <u>Survival</u>. The provisions of this Final Financing Order and any actions taken pursuant hereto shall survive the entry of any order: (i) confirming any plan of reorganization in any of the Bankruptcy Cases; (ii) converting any of the Bankruptcy Cases to a chapter 7 case; or (iii) dismissing any of the Bankruptcy Cases, and the terms and provisions of this Final Financing Order, as well as the Adequate Protection granted pursuant to this Final Financing Order shall continue in full force and effect notwithstanding the entry of any such order, and such claims and liens shall maintain their priority as provided by this Final Financing Order and the DIP Loan Documents and the Pre-Petition Loan Documents and to the maximum extent permitted by law until all of the DIP Obligations and the Pre-Petition First Lien Indebtedness is indefeasibly paid and satisfied in full. In no event shall any plan of reorganization or liquidation be allowed to alter the terms of repayment of any of the DIP Obligations from those set forth herein and in the DIP Loan Documents.

28. <u>Subsequent Reversal</u>. If any or all of the provisions of this Final Financing Order are hereafter modified, vacated, amended, or stayed by subsequent order of this Court or any other court without the consent of the DIP Agent or the Pre-Petition First Lien Agent: (i) such modification, vacatur, amendment, or stay shall not affect the validity of any

DIP Obligation or DIP Lien or the Pre-Petition Indebtedness or Pre-Petition lien of the Pre-Petition Secured Parties that is or was incurred prior to the effective date of such modification, vacatur, amendment, or stay (the "**Effective Date**"), or the validity, enforceability or priority of the DIP Liens, DIP Superpriority Claims, the Adequate Protection or other grant authorized or created by this Final Financing Order; (ii) the DIP Liens, DIP Superpriority Claims, the Adequate Protection pursuant to this Final Financing Order arising prior to the Effective Date shall be governed in all respects by the original provisions of this Final Financing Order, and the validity of any such DIP Obligations or security interest granted pursuant to this Final Financing Order is and shall be protected by section 363(m) and 364(e) of the Bankruptcy Code; (iii) Adequate Protection furnished to the Pre-Petition Secured Parties pursuant to this Final Financing Order shall be governed in all respects by the original provisions of this Final Financing Order, the Intercreditor Agreement and the Pre-Petition Loan Documents; and (iv) the DIP Liens and DIP Superpriority Claims shall be governed in all respects by the original provisions of this Final Financing Order and the DIP Loan Documents.

29.     Effect of Dismissal of Bankruptcy Cases. If any Bankruptcy Case is dismissed, converted or substantively consolidated, then neither the entry of this Final Financing Order nor the dismissal, conversion or substantive consolidation of any Bankruptcy Case shall affect the rights of the DIP Secured Parties or the Pre-Petition Secured Parties (to the extent of Adequate Protection provided hereunder) under their respective documents or this Final Financing Order, and all of the respective rights and remedies of the DIP Secured Parties or the Pre-Petition Secured Parties (to the extent of Adequate Protection provided hereunder) shall remain in full force and effect as if any Bankruptcy Case had not been dismissed, converted, or substantively consolidated. If an order dismissing any of the Bankruptcy Cases is at any time

entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the DIP Liens and DIP Superpriority Claims granted to the DIP Secured Parties and the Adequate Protection granted to and conferred upon the Pre-Petition Secured Parties shall continue in full force and effect and shall maintain their priorities as provided in this Final Financing Order and the Intercreditor Agreement until such DIP Obligations and the Adequate Protection has been satisfied, (ii) any hearing on a motion to dismiss any of the Bankruptcy Cases shall require at least twenty days prior notice, unless this Court shortens such period, and (iii) the DIP Agent and/or the Pre-Petition First Lien Agent shall be entitled to request that the effectiveness of any order dismissing the Bankruptcy Cases shall not occur until sixty (60) days after it is entered in order to give the DIP Secured Parties the opportunity to perfect their respective security interests and liens in the Collateral under non-bankruptcy law and to procure waivers from any landlord, tenant, mortgagee, bailee or warehouseman and consents from any licensor or similar party-in-interest. The provisions of this Final Financing Order and any actions taken pursuant hereto, shall survive the entry of and shall govern with respect to any conflict with any order that may be entered confirming any plan of reorganization or converting any of the Bankruptcy Cases from chapter 11 to chapter 7.

30. <u>Effect of this Final Financing Order</u>. This Final Financing Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be enforceable *nunc pro tunc* to the applicable Petition Date immediately upon execution thereof.

31. <u>Waiver of Bankruptcy Rule 6003(b), 6004(a) and 6004(h)</u>. The 21 day provision of Bankruptcy Rule 6003(b), the notice requirements of Bankruptcy Rule 6004(a) and the 14 day stay of 6004(h) are hereby waived.

32. <u>Retention of Jurisdiction</u>. The Court has and will retain exclusive jurisdiction to enforce this Final Financing Order according to its terms.

33. <u>Authorized Signatories</u>. The signature of any Authorized Officer (as defined in the voluntary petitions commencing these Bankruptcy Cases) or Debtors' attorney appearing on any one or more of the DIP Loan Documents shall be sufficient to bind the Debtors.

34. <u>Final Financing Order</u>. This Final Financing Order shall be served upon: (i) the United States Trustee; (ii) the forty (40) largest unsecured creditors; (iii) all of the Debtors' secured creditors of record, other than the Pre-Petition Lenders; (iv) counsel to the Pre-Petition Agents; (v) all of the Debtors' landlords, (vi) all applicable federal, State and local taxing authorities, and (vii) all parties that requested notice pursuant to Bankruptcy Rule 2002 as of the date of this Final Financing Order.

Dated: O c t 1 2010
    Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE