# SCHEDULE 1

Bidding Procedures

# BIDDING PROCEDURES

By motion dated September 21, 2010 (the "**Motion**"),[1] Thompson Publishing Holding Co., Inc., a Delaware corporation (the "**Parent**"), TPG AES Holdings, Inc., a Delaware corporation ("**TPG**"), Thompson Publishing Group, Inc., a Delaware corporation ("**Thompson**"), AHC Media LLC, a Delaware limited liability company ("**AHC**"), Alex eSolutions, Inc. (d/b/a Sheshunoff Information Services and/or A.S. Pratt), a Delaware corporation ("**SIS**"), Thompson Publishing Development, LLC, a Delaware limited liability company ("**Thompson Development**"), and The Performance Institute, Inc., a Virginia corporation ("**PI**," and collectively with the Parent, TPG, Thompson, AHC, SIS, PI and Thompson Development, the "**Debtors**"), sought approval of, among other things, the procedures through which they will determine the highest or otherwise best price for the sale (collectively, the "**Sale**") of substantially all of their assets (the "**Purchased Assets**"), as described in the Asset Purchase Agreement by and among PNC Bank, National Association (including its permitted successors and assigns, the "**Buyer**") and the Debtors dated as of September 21, 2010 (the "**Stalking Horse Purchase Agreement**"), a copy of which is attached to the Motion as Exhibit A. The Stalking Horse Purchase Agreement provides for credit bidding (the "**Stalking Horse Bid**") by the Buyer and additional credit bidding is allowed subject to the requirements of the Bankruptcy Code and the Stalking Horse Purchase Agreement.

On [_____], 2010, the United Stated Bankruptcy Court for the District of Delaware (the "**Court**") entered an order (the "**Bidding Procedures Order**") that among other things, authorized the Debtors to determine the highest or otherwise best bid for the Purchased Assets through the process and procedures set forth below (the "**Bidding Procedures**"). To the extent set forth in the Bidding Procedures Order, the Debtors, in consultation with the First Lien Agent (as defined below) and the Official Committee of Unsecured Creditors (the "**Committee**")[2], reserve the right to modify or waive the Bidding Procedures; provided, however, that the Debtors shall provide prompt notice of any substantive modification to or waiver of the requirements of the Bidding Procedures to the United States Trustee.

**Participation Requirements**

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in the Purchased Assets (a "**Potential Bidder**") must first deliver the following materials to the Debtors, the PNC Bank, N.A., as successor to National City Bank, as Administrative First Lien Agent (in such respective capacity, the "**First Lien Agent**") and each of their counsel and counsel to the Committee:

i. An executed confidentiality agreement in form and substance satisfactory to the Debtors and their counsel which, in the aggregate, is no less favorable to the Debtors than the form confidentiality agreement proposed by the Debtors in connection with the sale process leading up to the execution of the Stalking Horse Purchase Agreement;

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings given to them in the Motion.
[2] All references to the Committee herein will only be applicable if the Committee is formed and retains counsel.

ii. The most current audited and latest unaudited financial statements (collectively, the "**Financials**") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of a Sale transaction, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors that demonstrates, in the Debtors' discretion after consultation with the First Lien Agent, the Potential Bidder's financial ability to consummate a competing Sale transaction and (y) a written statement acceptable to the Debtors and the First Lien Agent, and their counsel stating that the equity holder(s) of the Potential Bidder will be responsible for the Potential Bidder's obligations, including an outline of the contemplated debt and equity capitalization, in connection with a Sale transaction (including being bound by the terms and conditions of these Bidding Procedures); provided that, if a Potential Bidder is unable to provide Financials, the Debtors may accept such other information sufficient to demonstrate to the Debtors' satisfaction (as determined in the Debtors' sole discretion after consultation with the First Lien Agent) that such Potential Bidder has the financial wherewithal to consummate a Sale transaction. The Potential Bidder also must establish to the Debtors' satisfaction (as determined by the Debtors in their discretion after consultation with the First Lien Agent) that it has the financial ability to consummate its proposed transaction within the timeframe contemplated for consummation of the Stalking Horse Purchase Agreement. A person meeting the requirements set forth in this paragraph shall be considered a "**Qualified Bidder**;" and

iii. Following receipt by the Debtors of the information set forth in clauses (i) and (ii) above, the Debtors, after consultation with the First Lien Agent and the Committee, will promptly advise the Potential Bidder in writing of the Debtors' determination as to whether or not the Potential Bidder is a Qualified Bidder. For purposes of these Bidding Procedures, the Buyer is deemed a Qualified Bidder.

**Bid Requirements**

**I. Qualified Bids**

The Debtors, after consultation with the First Lien Agent and the Committee, shall determine whether a bid for all or substantially all of the Debtors' assets qualifies as a "**Qualified Bid**." To constitute a Qualified Bid, a bid (other than the Stalking Horse Purchase Agreement, which shall constitute a Qualified Bid) must be a written irrevocable offer from a Qualified Bidder and:

i. state that the Qualified Bidder offers to purchase substantially all of the Debtors' assets and to consummate the Sale for cash pursuant to a legally binding agreement that is substantially similar to the Stalking Horse Purchase Agreement, and has been marked to show amendments and modifications to the Stalking Horse Purchase Agreement, including price, assets to be purchased and terms that are being proposed by the Qualified Bidder, as applicable (the "**Marked Purchase Agreement**"). IF ANY BID IS CONDITIONED ON THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS

AND/OR UNEXPIRED LEASES, THEN SUCH QUALIFIED BIDDER SHALL BE REQUIRED TO PROVIDE EVIDENCE OF ITS ABILITY TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE OF SUCH CONTRACTS OR LEASES ALONG WITH THE BID ("**Adequate Assurance Package**");

ii. exceed the total consideration being provided by the Buyer pursuant to the Stalking Horse Purchase Agreement by $250,000 (the "**Minimum Overbid Amount**");

iii. contain (a) a list of the Debtors' executory contracts and unexpired leases with respect to which the Qualified Bidder seeks assignment from the Debtors (which may include some or all of the contracts and leases included in the Stalking Horse Purchase Agreement and some or all of the excluded contracts and leases not included in the Stalking Horse Purchase Agreement), and (b) a statement confirming that the Qualified Bidder shall be solely responsible for paying all cure costs necessary for the assumption and assignment of such executory contracts and unexpired leases;

iv. confirm that the offer shall remain open and irrevocable as provided below;

v. enclose an executed copy of the proposed clean and Marked Purchase Agreement;

vi. provide written evidence that the Qualified Bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid and the execution of the Marked Purchase Agreement, or a representation that no such authorization or approval is required;

vii. be accompanied with a certified or bank check or wire transfer in an amount equal to 10% of the purchase price stated in such bid as a minimum good faith deposit (the "**Minimum Deposit**"), which Minimum Deposit shall be used to fund a portion of the purchase price provided for in the bid, provided, that, nothing contained herein shall be construed to require a Minimum Deposit with respect to the Stalking Horse Bid;

viii. be on terms that are not materially more burdensome or conditional than the terms of the Stalking Horse Purchase Agreement;

ix. not be conditioned on obtaining financing or the outcome of any due diligence by the Qualified Bidder;

x. by its terms remain open and irrevocable until the earlier of: (a) closing of the Sale to the Successful Bidder or the Back-Up Bidder (each as defined below), as applicable; and (b) such date as the Debtors affirm in writing, after consultation with the First Lien Agent, that they do not intend to pursue a Sale transaction;

xi.  contain evidence satisfactory to the Debtors, after consultation with the First Lien Agent and the Committee, that the Qualified Bidder is reasonably likely to obtain prompt regulatory approval, if any is required, to purchase the Purchased Assets;

xii.  not request or entitle the Qualified Bidder to any break-up fee, expense reimbursement, or similar type of payment;

xiii.  fully disclose the identify of each entity participating in connection with such bid, and the complete terms of any such participation;

xiv.  be accompanied by a firm commitment letter for each component of debt or equity in support of such bid, or other evidence of its financial ability to perform, in each case acceptable to the Debtors in their sole discretion, after consultation with the First Lien Agent;

xv.  contain an acknowledgement and representation that the Qualified Bidder: has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the Marked Purchase Agreement (as defined below);

xvi.  contain other information reasonably requested by the Debtors, after consultation with the First Lien Agent and the Committee; and

xvii.  be received by the Bid Deadline (as defined below).

The Debtors shall deliver copies of any bids to the First Lien Agent and counsel for the First Lien Agent and the Committee within 24 hours after the Debtors' receipt of such bids. A bid received from a Qualified Bidder that meets the requirements set forth above will be considered a Qualified Bid if the Debtors, after consultation with the First Lien Agent and the Committee, believe that such bid evidences a *bona fide* interest and ability to purchase the Purchased Assets. Notwithstanding anything contained herein to the contrary, the Stalking Horse Purchase Agreement submitted by the Buyer shall be deemed a Qualified Bid.

## II.  Qualified Partial Bids

The Debtors, after consultation with the First Lien Agent and after consultation with the Committee, shall determine whether a bid for less than substantially all of the Debtors' assets qualifies as a "**Qualified Partial Bid**." To constitute a Qualified Partial Bid, a bid must be a written irrevocable offer from a Qualified Bidder and:

i.  state that the Qualified Bidder offers to purchase a portion of the Debtors' assets (which assets shall be described in detail) and to consummate the Sale for cash pursuant to a legally binding agreement that is substantially similar to the Stalking Horse Purchase Agreement. IF ANY BID IS CONDITIONED ON THE

ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES, THEN SUCH QUALIFIED BIDDER SHALL BE REQUIRED TO PROVIDE AN ADEQUATE ASSURANCE PACKAGE;

ii. [*Reserved*];

iii. contain (a) a list of the Debtors' executory contracts and unexpired leases with respect to which the Qualified Bidder seeks assignment from the Debtors (which may include some or all of the contracts and leases included in the Stalking Horse Purchase Agreement and some or all of the excluded contracts and leases not included in the Stalking Horse Purchase Agreement), it any and (b) a statement confirming that the Qualified Bidder shall be solely responsible for paying all cure costs necessary for the assumption and assignment of such executory contracts and unexpired leases;

iv. confirm that the offer shall remain open and irrevocable as provided below;

v. enclose an executed copy of the proposed clean and Marked Purchase Agreement;

vi. provide written evidence that the Qualified Bidder has obtained authorization and approval from its board of directors (or comparable governing body) with respect to the submission of its bid and the execution of the Marked Purchase Agreement, or a representation that no such authorization or approval is required;

vii. be accompanied with a certified or bank check or wire transfer in an amount equal to 20% of the purchase price stated in such bid as a Minimum Deposit, which Minimum Deposit shall be used to fund a portion of the purchase price provided for in the bid;

viii. be on terms that are not materially more burdensome or conditional than the terms of the Stalking Horse Purchase Agreement;

ix. not be conditioned on obtaining financing or the outcome of any due diligence by the Qualified Bidder;

x. by its terms remain open and irrevocable until the earlier of: (a) closing of the Sale to the Successful Bidder(s) or the Back-Up Bidder(s) (each as defined below), as applicable; and (b) such date as the Debtors affirm in writing, after consultation with the First Lien Agent, that they do not intend to pursue a Sale transaction;

xi. contain evidence satisfactory to the Debtors, after consultation with the First Lien Agent and the Committee, that the Qualified Bidder is reasonably likely to obtain prompt regulatory approval, if any is required, to purchase the Purchased Assets;

xii. not request or entitle the Qualified Bidder to any break-up fee, expense reimbursement, or similar type of payment;

4725025                                         5

xiii. fully disclose the identify of each entity participating in connection with such bid, and the complete terms of any such participation;

xiv. be accompanied by a firm commitment letter for each component of debt or equity in support of such bid, or other evidence of its financial ability to perform, in each case acceptable to the Debtors in their sole discretion, after consultation with the First Lien Agent;

xv. contain an acknowledgement and representation that the Qualified Bidder: has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the Marked Purchase Agreement (as defined below);

xviii. contain other information reasonably requested by the Debtors, after consultation with the First Lien Agent; and

xvi. be received by the Bid Deadline (as defined below).

The Debtors shall deliver copies of any bids to the First Lien Agent, counsel for the First Lien Agent and the Office of the United States Trustee (Attn: Juliet Sarkessian, via e-mail (Juliet.M.Sarkessian@usdoj.gov) and facsimile (302- 573-6497)) within 24 hours after the Debtors' receipt of such bids. A bid received from a Qualified Bidder that meets the requirements set forth above will be considered a Qualified Partial Bid if the Debtors, after consultation with the First Lien Agent and the Committee, believe that such bid evidences a *bona fide* interest and ability to purchase the Purchased Assets. Immediately upon determining that any bid received does not constitute a Qualified Bid, the Debtors will notify the Office of the United States Trustee of the same.

***

After the Bid Deadline (defined below), the Debtors shall determine, after consultation with the First Lien Agent and after consultation with the Committee, which Qualified Bid or group of Qualified Partial Bids represents the then-highest or otherwise best bid (the "**Starting Qualified Bid**").

**Bid Deadline**

**The deadline for submitting bids on the Purchased Assets by a Qualified Bidder shall be November 12, 2010 at 4:30 p.m. (prevailing Eastern Time) (the "Bid Deadline").**

A Qualified Bidder that desires to make a bid must deliver written copies of its bid prior to the Bid Deadline to: (i) Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market St., Wilmington, Delaware 19801 (Attn: Derek C. Abbott), co-counsel to the Debtors (e-mail: dabbott@mnat.com, facsimile: 302-425-4664); (ii) Choate, Hall & Stewart LLP, Two

International Place, Boston, Massachusetts 02110 (Attn: John F. Ventola, Esq. (e-mail: jventola@choate.com, facsimile: 617-502-5085) and Lisa E. Herrington, Esq. (e-mail: lherrington@choate.com, facsimile: 617-502-4064)), co-counsel to the Debtors; (iii) Thompson Publishing Group, Inc., 5201 W Kennedy Blvd. Ste 220, Tampa, Florida 33609-1823 (Attn: Kevin Ooley); (iv) SSG Capital Advisors LLC, 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428 (Attn: Mark Chesen and Michael Gorman); and (v) the Office of the United States Trustee, 844 King Street, Room 2207, Wilmington, Delaware 19801 (Attn: Juliet Sarkessian (e-mail: Juliet.M.Sarkessian@usdoj.gov; facsimile: (302) 573-6497).

On or before the date that is two (2) business days after the Debtors have determined, after consultation with the First Lien Agent, which Qualified Bid or group of Qualified Partial Bids represents the Starting Qualified Bid, each Qualified Bidder that timely submitted a Qualified Bid or a Qualified Partial Bid will be advised of such Starting Qualified Bid.

After consultation with the First Lien Agent and the Committee, the Debtors may (i) determine whether to distribute copies of other Qualified Bids or Qualified Partial Bids to other Qualified Bidders prior to or during the Auction or (ii) proceed with sealed bidding.

**Obtaining Due Diligence Access**

The Debtors shall afford each Potential Bidder reasonable due diligence information (as determined, in part, based on whether such Potential Bidder is a competitor of one or more of the Debtors). Site access shall be provided upon reasonable request to the Debtors at the discretion of the Debtors within their reasonable business judgment. Unless otherwise determined by the Debtors, the due diligence period will end on the Bid Deadline. Qualified Bidders are required to exercise their own discretion before relying on any information regarding the Purchased Assets provided by the Debtors.

The Debtors shall not be obligated to furnish any information relating to the Debtors, the Purchased Assets, and/or the Sale to any person except to a Potential Bidder. The Debtors shall give each Qualified Bidder reasonable access to all written due diligence information provided to another Potential Bidder. The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. Neither the Debtors nor their representatives are responsible for, and will bear no liability with respect to, any information obtained by Potential Bidders pursuant hereto.

**Due Diligence From Potential Bidders**

Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale. Failure by the Potential Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a bid made by the Potential Bidder is not a Qualified Bid or Qualified Partial Bid, as applicable, or is not the Successful Bid or Back-Up Bid.

**"As Is, Where Is"**

The Sale of the Purchased Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or estates, except to the extent set forth in the purchase agreement between the Debtors and the Successful Bidder. Except as otherwise provided in (i) the Stalking Horse Purchase Agreement or (ii) another Successful Bidder's purchase agreement, all of the Debtors' right, title and interest in and to the Purchased Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests therein (collectively, the "**Interests**"), such Interests to attach to the net proceeds of the Sale of the Purchased Assets, with the same validity and priority as existed immediately prior to such Sale.

Each bidder, other than the Buyer (whose acknowledgements and representations are contained in the Stalking Horse Purchase Agreement), shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Purchased Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Purchased Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the Stalking Horse Purchase Agreement or Marked Purchase Agreement, as applicable.

**The Auction**

If, prior to the Bid Deadline, the Debtors receive (a) a Qualified Bid by a Qualified Bidder (other than the Stalking Horse Purchase Agreement) or (b) one or more Qualified Partial Bids from Qualified Bidder(s) with respect to which the aggregate consideration to be paid to the Debtors (as determined by the Debtors after consultation with the First Lien Agent and after consultation with the Committee) exceeds the Stalking Horse Bid by an amount equal to or greater than the Minimum Overbid Amount, an auction (the "Auction") with respect to the sale of the Purchased Assets shall take place on **November 17, 2010 at 10:00 a.m. (prevailing Eastern Time)** at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market St., Wilmington, Delaware 19801, or such other place and time as the Debtors shall notify all Qualified Bidders (including the Buyer) and other invitees. If, however, no such Qualified Bid or group of Qualified Partial Bids is received by the Bid Deadline, then the Auction will not be held, and the Debtors and the Buyer shall promptly proceed to obtain an order approving the Sale to the Buyer and to complete the transactions contemplated by the terms of the Stalking Horse Purchase Agreement, pursuant to the terms of the Stalking Horse Purchase Agreement.

<u>Auction Rules</u>:

i. Only a Qualified Bidder (including the Buyer) and its authorized representatives who have submitted a Qualified Bid or a Qualified Partial Bid will be eligible to participate at the Auction. At the Auction, only the Buyer and other Qualified Bidders who have submitted a Qualified Bid will be permitted to increase their bids. The bidding at the Auction shall start at the purchase price stated in the

Starting Qualified Bid, and then continue in minimum increments of $250,000. In the event that a successive bid at the Auction is comprised of two or more Qualified Partial Bids, the aggregate consideration in such Qualified Partial Bids must exceed the Starting Qualified Bid by an amount equal to or greater than $250,000. The Debtors reserve the right to determine, in their discretion, after consultation with the First Lien Agent and after consultation with the Committee, which group of Qualified Partial Bids has satisfied this requirement.

ii. Unless otherwise agreed by the Debtors, in their sole discretion, after consultation with the First Lien Agent, and with respect of and in the best interests of the estates only, no Qualified Bidder will be permitted more than one-half hour to respond to the previous bid at the Auction and, at the expiration of such time (if no new Qualified Bid or Qualified Partial Bids are received), the Auction shall conclude.

iii. From time to time during the course of the Auction, the Debtors shall inform each participant which Qualified Bid or group of Qualified Partial Bids reflects, in the Debtors' view, after consultation with of the First Lien Agent and after consultation with the Committee, the highest or otherwise best offer. In determining which Qualified Bid or group of Qualified Partial Bids reflects the highest or otherwise best offer, the Debtors may consider, in addition to the aggregate purchase price, all other terms of the proposed purchase, including, without limitation, the liabilities that a Qualified Bidder proposes to assume. To the extent that such bid has been determined to be the highest or otherwise best offer entirely or in part because of the addition, deletion or modification of a provision or provisions in the Stalking Horse Purchase Agreement, or related ancillary agreement or, if applicable, in the Qualified Bid or Qualified Partial Bids, other than an increase in the cash purchase price, the Debtors, after consultation with the First Lien Agent, shall provide notice to each participant of the value ascribed by the Debtors to any such added, deleted or modified provision or provisions.

iv. The Auction may be adjourned as the Debtors, after consultation with the First Lien Agent and the Committee, deem appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to Qualified Bidders that have submitted a Qualified Bid or Qualified Partial Bid and other invitees.

v. [*Reserved*]

vi. No Qualified Bidder, having submitted a Qualified Partial Bid, may increase, decrease or otherwise modify at the Auction the assets of the Debtors that are subject to such Qualified Partial Bid, unless otherwise agreed by the Debtors acting in their discretion, after consultation with the First Lien Agent.

vii. Qualified Bidders submitting Qualified Partial Bids may not combine their Qualified Partial Bids or otherwise bid together or as a group for all or any portion of the Purchased Assets.

viii. Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale.

ix. All bids submitted at the Auction will be deemed to indicate a commitment by the Qualified Bidder submitting such bid that such Qualified Bidder will serve as the Back-Up Bidder and such bid will serve as the Back-Up Bid (as such terms are defined below), if so selected.

x. Bidding at the Auction will be transcribed or videotaped.

**Other Terms**

All Qualified Bids, Qualified Partial Bids, the Auction, and the Bidding Procedures are subject to such additional terms and conditions as are announced by the Debtors, after consultation with the First Lien Agent. At the conclusion of the Auction, after consultation with the First Lien Agent and after consultation with the Committee, the Debtors shall identify the Qualified Bid or group of Qualified Partial Bids made pursuant to the Bidding Procedures that represents, in the Debtors' discretion, (a) the highest or otherwise best offer (such Qualified Bid or group of Qualified Partial Bids, the "**Successful Bid**" and, the Qualified Bidder(s) who submitted the Successful Bid(s), the "**Successful Bidder**"), and (b) the next highest or otherwise best Qualified Bid or group of Qualified Partial Bids after the Successful Bid(s) (such Qualified Bid or group of Qualified Partial Bids, the "**Back-Up Bid**" and the Qualified Bidder(s) who submitted the Back-Up Bid, the "**Back-Up Bidder**"). If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid or Qualified Partial Bids only when (i) such bid(s) is declared the Successful Bid at the Auction; (ii) definitive documentation has been executed in respect thereof; and (iii) the Court has entered an order approving such Successful Bid. In the event that the Successful Bid and/or the Back-Up Bid, if applicable, is comprised of more than one Qualified Bid, the Debtors reserve the right to require, after consultation with the First Lien Agent, that the Sales are consummated simultaneously.

If an Auction is held, and immediately upon selection of the Successful Bid(s), if the Minimum Deposit(s) do or does not equal (a) in the case of a Qualified Bid, 10% of the purchase price in the Successful Bid and Back-Up Bid or (b) in the case of Qualified Partial Bid(s), 20% of the purchase price in the Successful Bid(s) and Back-Up Bids, then the Successful Bidder(s) and Back-Up Bidder(s) shall increase the amounts of such Minimum Deposit(s) within 24 hours, unless waived by the Debtors, after consultation with the First Lien Agent.

Following the entry of the Sale Order, if the Successful Bidder (or one or more Successful Bidders, as applicable) fails to consummate the Sale in accordance with the terms of the purchase agreement executed by such Successful Bidder, the Back-Up Bidder (or, as applicable, the Back-Up Bidder that submitted a Back-Up Bid for the same assets as such Successful Bidder) will be deemed to have the new Successful Bid, and the Debtors, after consultation with the First Lien Agent, will be authorized, but not required, to consummate the

Sale with the Back-Up Bidder without the need for an additional hearing or further order of the Court. If the original Stalking Horse Purchase Agreement is selected as the Back-Up Bid, Buyer shall be under no obligation to hold such Back-Up Bid open, and not revoke such Back-Up Bid, past the earlier of (i) the date of termination of the Stalking Horse Purchase Agreement in accordance with its terms, and (ii) the date that is thirty (30) days after the conclusion of the Auction. If any other party is selected as the Back-Up Bidder, the Back-Up Bid shall remain open and irrevocable until the earlier of: (a) closing of the Sale to the Successful Bidder; and (b) such date as the Debtors affirm in writing, after consultation with the First Lien Agent, that they do not intend to pursue a Sale transaction.

The Debtors will present the results of the Auction to the Court at the Sale Hearing (as defined below), at which time certain findings will be sought from the Court regarding the Auction, including, among other things, that: (i) the Auction was conducted and the Successful Bidder was selected in accordance with these Bidding Procedures; (ii) the Auction was fair in substance and procedure; and (iii) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best value for the Purchased Assets and is in the best interests of the Debtors, their estates and creditors.

**Sale Hearing**

A hearing to consider approval of the Sale of the Purchased Assets to the Successful Bidder (or to approve the Stalking Horse Purchase Agreement if no Auction is held) will take place on **November 19, 2010 at 9:30 a.m. (prevailing Eastern Time)** before the Honorable Peter J. Walsh in the United States Bankruptcy Court for the District of Delaware, 824 N. Market Street, Wilmington, Delaware 19801 (the" **Sale Hearing**").

**Return of Deposit**

Except as otherwise provided with respect to any Successful Bid, the Minimum Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within three (3) business days after the earlier of; (a) closing of the Sale to the Successful Bidder or the Back-Up Bidder; and (b) such date as the Debtors affirm in writing, after consultation with the First Lien Agent, that they do not intend to pursue a Sale transaction. The Minimum Deposit of the Successful Bidder and Back-Up Bidder, if applicable, shall be held until the closing of the Sale of the Purchased Assets and applied in accordance with the Successful Bid.

**Debtors' Rights Upon Successful Bidder's Failure to Close**

Notwithstanding anything to the contrary set forth in the Stalking Horse Purchase Agreement or any Marked Purchase Agreement, if the Successful Bidder (or, if applicable, one or more Successful Bidders) fails to consummate the transaction in accordance with the terms of the purchase agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason, the Debtors shall: (i) retain such Successful Bidder's Minimum Deposit (except in the case of the Buyer, whose rights to any deposit shall be governed by the Stalking Horse Purchase Agreement); and (ii) maintain the right to pursue all other available remedies, whether legal or equitable available to them, against such

Successful Bidder, except if the Buyer is the Successful Bidder, and in that case, the Debtors' right to pursue all other available remedies shall be governed by the terms of the Stalking Horse Purchase Agreement.

**Reservation of Rights**

Except as otherwise provided in the Staking Horse Purchase Agreement or the Bidding Procedures Order, the Debtors, after consultation with the First Lien Agent and after consultation with the Committee, reserve the right as they may reasonably determine to be in the best interests of the estates, to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids and which bids are Qualified Partial Bids; (iii) determine which Qualified Bid is the highest and best proposal and which is the next highest and best proposal or which group of Qualified Partial Bids together are the highest and best proposal and/or the next highest and best proposal; (iv) reject any bid (other than the Buyer's Qualified Bid) that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) remove some of the Purchased Assets from the Auction, (vi) waive terms and conditions set forth herein with respect to all Potential Bidders; (vii) impose additional terms and conditions with respect to all Potential Bidders; (viii) extend the deadlines set forth herein; (ix) conduct the Auction in any manner that the Debtors and the First Lien Agent reasonably deem appropriate and adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; and (x) modify the Bidding Procedures if they determine any such modification to be in the best interests of their estates or to withdraw the Motion at any time with or without prejudice. Without limiting the generality of the foregoing, in evaluating any Qualified Bid, Qualified Partial Bid or group of Qualified Partial Bids, the Debtors reserve the right to consider, after consultation with the First Lien Agent, the costs of winding-down the Debtors' estates and any assets that would not be purchased pursuant to such Qualified Bid or Qualified Partial Bids and the additional costs and potential uncertainties associated with consummating more than one sale of the Debtors' assets.

Nothing in these Bidding Procedures shall, or shall be deemed to amend, modify, limit or otherwise affect the terms or conditions of the Stalking Horse Purchase Agreement or the rights and remedies of the parties thereunder or under applicable bankruptcy law.

**Expenses**

Any bidders presenting bids shall bear their own expenses in connection with the proposed sale, whether or not such sale is ultimately approved, in accordance with the terms of the purchase agreement.

**Jurisdiction and Waiver of Jury Trial**

All Qualified Bidders shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to jury trial in connection with any disputes relating to the Auction, and the construction and enforcement of each Qualified Bidder's contemplated transaction documents, as applicable.