## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| TPH SELLER, INC. (f/k/a THOMPSON PUBLISHING HOLDING CO., INC.), *et al.*,[1] | Case No. 10-13070 (PJW) |
| Debtors. | Jointly Administered |

## DEBTORS' FIRST AMENDED PLAN OF LIQUIDATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE, DATED MARCH 28, 2011

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (Bar No. 3376)
Chad A. Fights (Bar No. 5006)
Alissa T. Gazze (Bar No. 5338)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

-and-

CHOATE, HALL & STEWART LLP
John F. Ventola
Sean M. Monahan
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
Facsimile: (617) 248-4000

*Counsel to Debtors and Debtors in Possession*

---

[1] The Debtors are the following entities (followed by the last four digits of their tax identification numbers): TPH Seller, Inc. (f/k/a Thompson Publishing Holding Co. Inc.) (5470), AHC Seller LLC (f/k/a AHC Media LLC) (2136), AES Seller, Inc. (f/k/a Alex eSolutions, Inc.) (5725), TPG Seller, Inc. (f/k/a Thompson Publishing Group, Inc.) (2093), PI Seller, Inc. (f/k/a The Performance Institute, Inc.) (8059), TPG AES Holding Seller, Inc. (f/k/a TPG AES Holding Co., Inc.) (1658), and TPD Seller, LLC (f/k/a Thompson Publishing Development, LLC) (2093), c/o P.O. Box 26185, Tampa, FL 33623-6185.

4787903

# TABLE OF CONTENTS

SECTION 1.  DEFINITIONS AND INTERPRETATION .......................................................1
    1.1.    Definitions.............................................................................................1
    1.2.    Other Terms ..........................................................................................8
    1.3.    Construction of Certain Terms...............................................................8

SECTION 2.  ADMINISTRATIVE CONSOLIDATION...............................................8
    2.1.    Administrative Consolidation of the Debtors ........................................8

SECTION 3.  TREATMENT OF ADMINISTRATIVE EXPENSES;
              INTERCOMPANY CLAIMS...........................................................9
    3.1.    Allowed Administrative Expenses..........................................................9
    3.2.    Professional Fee Claims........................................................................9

SECTION 4.  CLASSIFICATION OF CLAIMS AND INTERESTS .........................................10

SECTION 5.  TREATMENT OF CLAIMS AND INTERESTS ................................................11
    5.1.    Class 1: Allowed Secured Claims.........................................................11
    5.2.    Class 2: Allowed Priority Claims ........................................................12
    5.3.    Class 3: General Unsecured Claims......................................................12
    5.4.    Class 4: Allowed Deficiency Claims of First Lien Secured Parties .....................12
    5.5.    Class 5: Allowed Deficiency Claims of Second Lien Claimholders .....................13
    5.6.    Class 6: Interests ................................................................................13

SECTION 6.  ACCEPTANCE OR REJECTION OF THIS PLAN ...........................................13
    6.1.    Voting of Claims.................................................................................13
    6.2.    Acceptance by Holders of Class 3 Allowed General Unsecured Claims .............13
    6.3.    Acceptance by Holders of Class 4 Allowed Deficiency Claims.............................13
    6.4.    Presumed Acceptance of Plan...............................................................14
    6.5.    Presumed Rejection of Plan .................................................................14

SECTION 7.  MEANS OF IMPLEMENTING AND EXECUTION OF THE PLAN ...............14
    7.1.    Implementation on the Effective Date ..................................................14
    7.2.    Conditions Precedent to Effectiveness..................................................14
    7.3.    Waiver of Conditions..........................................................................14
    7.4.    Vesting of Assets of the Estate ............................................................15
    7.5.    Appointment of Liquidating Supervisor ...............................................15
    7.6.    Duties and Responsibilities of Liquidating Supervisor .........................15
    7.7.    The Post-Confirmation Administrative Reserve....................................16
    7.8.    Retention of Professionals by the Liquidating Supervisor .....................16
    7.9.    Dissolution of Debtors ........................................................................16
    7.10.    Cancellation of Interests .....................................................................17
    7.11.    Resignation of Officers and Directors ..................................................17
    7.12.    Funding For This Plan .........................................................................17

7.13. Accounts and Investment of Available Cash ...................................................17
7.14. Bond ..........................................................................................................18
7.15. Tax Returns ................................................................................................18
7.16. Claims Filed After Applicable Bar Dates ...................................................19
7.17. Permanent Injunction ..................................................................................19
7.18. No Discharge ..............................................................................................19
7.19. Closing of the Chapter 11 Cases and Entry of the Final Decree ............19
7.20. Limitation of Liability .................................................................................19

SECTION 8. PROVISIONS GOVERNING DISTRIBUTIONS ..............................20
8.1. Distributions ................................................................................................20
8.2. Distributions of Cash ..................................................................................21
8.3. Delivery of Distributions and Undeliverable Distributions ......................21
8.4. Withholding and Reporting Requirements .................................................21
8.5. Time Bar to Cash Payments .......................................................................21
8.6. Setoffs ........................................................................................................21
8.7. Professional Fees and Expenses .................................................................22
8.8. Transactions on Business Days ..................................................................22
8.9. Minimum Distributions ..............................................................................22

SECTION 9. PROCEDURES FOR RESOLVING AND TREATING DISPUTED
CLAIMS ...........................................................................................22
9.1. No Distribution Pending Allowance ..........................................................22
9.2. Resolution of Disputed Claims ..................................................................22
9.3. Estimation ...................................................................................................23
9.5. Allowance of Disputed Claims ..................................................................23
9.6. Release of Funds from Disputed Claims Reserve ......................................23
9.7. Effect on Third Parties ...............................................................................23

SECTION 10. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ...........................................................................................24
10.1. Executory Contracts and Unexpired Leases .............................................24
10.2. Approval of Rejection of Executory Contracts and Unexpired Leases .................24
10.3. Bar Date for Filing Proofs of Claim Relating to Executory Contracts
and Unexpired Leases Rejected Pursuant to this Plan ...........................24
10.4. Retiree Benefits ..........................................................................................24

SECTION 11. EFFECT OF CONFIRMATION .........................................................24
11.1. Release of Assets .......................................................................................24
11.2. Binding Effect ............................................................................................25
11.3. Term of Injunctions or Stays .....................................................................25
11.4. Rights of Action .........................................................................................25

SECTION 12. MODIFICATIONS TO PLAN ............................................................25

4787903

12.1. Pre-Confirmation Modification ................................................................25
12.2. Pre-Effective Date Modification................................................................25
12.3. Non-Material Modifications ................................................................25

SECTION 13. RETENTION OF JURISDICTION ................................................26
13.1. Jurisdiction of the Bankruptcy Court................................................26

SECTION 14. MISCELLANEOUS PROVISIONS................................................27
14.1. Deletion of Classes and Subclasses ................................................27
14.2. Successors and Assigns................................................................27
14.3. Binding Effect................................................................27
14.4. Effectuating Documents and Further Transactions................................27
14.5. Exemption from Transfer Taxes ................................................27
14.6. Releases................................................................27
14.7. Injunction ................................................................27
14.8. Exculpation ................................................................28
14.9. Release ................................................................28
14.10. Post-Effective Date Fees and Expenses of Professionals and of
    Winding up the Estates ................................................29
14.11. Payment of Statutory Fees ................................................29
14.12. Withdrawal or Revocation ................................................29
14.13. Bankruptcy Courts of Competent Jurisdiction................................30
14.14. Notices ................................................................30
14.13. Severability ................................................................30
14.14. Governing Law................................................................31
14.15. Headings ................................................................31
14.16. Exhibits ................................................................31

SECTION 15. REQUEST FOR CONFIRMATION ................................................32
15.1. Request for Confirmation ................................................32

4787903

# INTRODUCTION

TPH Seller, Inc., a Delaware corporation formerly known as Thompson Publishing Holding Co. Inc. ("Parent"), AHC Seller LLC, a Delaware limited liability company formerly known as AHC Media LLC ("AHC"), AES Seller, Inc., a Delaware corporation formerly known as Alex eSolutions, Inc. ("AES"), TPG Seller, Inc., a Delaware corporation formerly known as Thompson Publishing Group, Inc. ("TPG"), PI Seller, Inc., a Virginia corporation formerly known as The Performance Institute, Inc. ("TPI"), TPG AES Holding Seller, Inc., a Delaware corporation formerly known as TPG AES Holding Co., Inc. ("TAH"), and TPD Seller, LLC, a Delaware limited liability company formerly known as Thompson Publishing Development, LLC ("TPD" and, collectively with Parent, AHC, AES, TPG, TPI, and TAH, the "Debtors" and each, individually, a "Debtor"), propose this plan of liquidation for the resolution and satisfaction of Claims against and Interests in the Debtors. Reference is made to the *Disclosure Statement for the Debtors' First Amended Plan of Liquidation Under Chapter 11 of the Bankruptcy Code, Dated March 28, 2011* for (i) a discussion of the Debtors' history, business and results of operations, and (ii) a summary and analysis of this Plan. **TO THE EXTENT THAT THIS PLAN IS INCONSISTENT WITH THE DISCLOSURE STATEMENT, THIS PLAN WILL GOVERN.**

This Plan provides for the liquidation and conversion of all of the Debtors' remaining assets to Cash and the distribution of the net proceeds therefrom to their Creditors in accordance with the priorities established by the Bankruptcy Code. To liquidate certain of the Debtors' assets and, ultimately, to effectuate the distribution of the Debtors' assets to their Creditors, the Plan provides for the appointment of a Liquidating Supervisor on the Effective Date. On a subsequent date, to be determined by the Liquidating Supervisor, the Debtors will be dissolved.

## SECTION 1.
## DEFINITIONS AND INTERPRETATION

**1.1.** **Definitions.** As used in this Plan, and unless the context otherwise requires, the following terms shall have the respective meanings specified below:

"Administrative Expense" means any expenses of the Debtors' estates payable under Sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the assets of the Debtors, any actual and necessary expenses of operating the businesses of the Debtors, all compensation and reimbursement of expenses allowed by the Bankruptcy Court under Section 330 or 503 of the Bankruptcy Code, and any fees and charges assessed against the Debtors under Section 1930 of chapter 123 of title 28 of the United States Code, all as may arise prior to the Effective Date.

"AES" means AES Seller, Inc., a Delaware corporation formerly known as Alex eSolutions, Inc.

"AHC" means AHC Seller LLC, a Delaware limited liability company formerly known as AHC Media LLC.

"Allowed" means any Claim (a) against a Debtor, proof of which is timely filed, or which by order of the Bankruptcy Court or pursuant to this Plan is not or will not be required to be

filed; (b) that has been or is hereafter listed in the Schedules as neither disputed, contingent nor unliquidated, and for which no timely proof of claim has been filed; or (c) allowed pursuant to this Plan; provided, however, that with respect to any Claim described in clauses (a) or (b) above, such Claim shall be deemed Allowed only if (i) no objection to the allowance thereof has been interposed within the applicable period of time fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, (ii) the Liquidating Supervisor has determined, in his reasonable discretion, not to object to the allowance of such Claim or (iii) such an objection is so interposed and the Claim shall have been allowed by a Final Order. The amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.

"Allowed Claims Reserve" means, in the event there exists any unpaid Allowed Claims on or after the Effective Date, Cash to be reserved by the Liquidating Supervisor in an amount sufficient to pay all such unpaid Allowed Claims in accordance with the provisions of this Plan.

"Asset Purchase Agreement" means that certain Asset Purchase Agreement dated as of September 21, 2010, by and among the Debtors and the First Lien Administrative Agent.

"Assets" means all legal or equitable pre-petition and post-petition interests of the Debtors in any and all real or personal property of any nature, whether tangible or intangible, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in progress, accounts, chattel paper, Cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Causes of Action, assumed executory contracts and unexpired leases and general intangibles and the proceeds, product, offspring, rents or profits thereof, whether liquidated or unliquidated, contingent or uncontingent, disputed or undisputed.

"Available Cash" means all Cash held by the Post-Confirmation Estate less the amount of Cash held in the Allowed Claims Reserve, the Disputed Claims Reserve, the Post-Confirmation Administrative Reserve, and the Net Creditor Payment Fund.

"Ballot" means each of the ballot forms distributed with the Disclosure Statement to Creditors entitled to vote under Sections 5.3 and 5.4 hereof in connection with the solicitation of acceptances of the Plan.

"Ballot Date" means the date set by the Bankruptcy Court by which all completed Ballots must be received.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S. C. §§ 101 *et seq.*, as now in effect or hereafter amended.

"Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware, having jurisdiction over these Chapter 11 Cases, or in the event that such court ceases to exercise jurisdiction over such Chapter 11 Cases, such court or adjunct thereof that exercises jurisdiction over such Chapter 11 Cases in lieu of the United States Bankruptcy Court for the District of Delaware.

"Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Cases or proceedings therein, as the case may be.

"Business Day" means any day other than a Saturday, Sunday or "legal holiday" as defined in Bankruptcy Rule 9006(a).

"Cash" means legal tender accepted in the United States of America for the payment of public and private debts, currently denominated in United States Dollars.

"Causes of Action" means all claims, including claims for disgorgement of any fees previously received, rights of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtors or their Estates may hold against any Person, of any kind or any nature whatsoever, whether arising prior to, during or after the Chapter 11 Cases (including all claims arising under Sections 510, 544 through 551 and 553 of the Bankruptcy Code or under similar state laws including fraudulent conveyance claims, preference actions, all claims for professional negligence, malpractice or breach of fiduciary duty and all other claims of the Debtors under the Bankruptcy Code).

"Chapter 11" means Chapter 11 of the Bankruptcy Code.

"Chapter 11 Cases" means the cases under Chapter 11 of the Bankruptcy Code commenced by the Debtors on September 21, 2010, styled *In re TPH Seller, Inc. (f/k/a Thompson Publishing Holding Co., Inc.), et al.*, Case No. 10-13070 (PJW) (jointly administered), currently pending in the Bankruptcy Court.

"Claim" means any right to (a) payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or (b) an equitable remedy for breach of performance by the Debtors if such breach gives rise to a right to payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Claim Objection Deadline" means the date that is one hundred twenty (120) days after the Effective Date or, if extended by the Bankruptcy Court at the request of the Liquidating Supervisor, the subsequent date by which the Liquidating Supervisor must file objections, if any, to Claims.

"Class" means any group of substantially similar Claims or Interests classified by this Plan pursuant to Section 1123(a)(1) of the Bankruptcy Code.

"Closing Date" means December 23, 2010.

"Confirmation" means entry by the Clerk of the Bankruptcy Court of the Confirmation Order.

"Confirmation Date" means the date of entry of the Confirmation Order by the Clerk of the Bankruptcy Court.

4787903

"Confirmation Hearing" means the hearing to consider confirmation of this Plan under Section 1129 of the Bankruptcy Code.

"Confirmation Order" means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

"Creditor" means any Person who holds an Allowed Claim against any Debtor.

"Creditor Payment Fund" means Cash in the amount of $100,000, funded by the First Lien Lenders on the Closing Date, to be distributed in accordance with the terms of the Plan.

"Debtors" means, collectively, Parent, AHC, AES, TPG, TPI, TAH, and TPD.

"Deficiency Claim" means any Claim held by any entity to the extent that the value, as agreed to by the holder of such Claim and the Debtors or Liquidating Supervisor, as applicable, or as determined by a Final Order of the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code, of any interest in property of the Estates securing such Claim is less than the amount of such Claim.

"Disclosure Statement" means the disclosure statement that relates to this Plan, as amended, supplemented or modified from time to time, and has been approved by the Bankruptcy Court as containing adequate information as required by Section 1125 of the Bankruptcy Code.

"Disputed Claims" means Claims that are not Allowed or have not been disallowed by a Final Order of the Bankruptcy Court.

"Disputed Claims Reserve" means, in the event there exists any Disputed Claim on or after the Effective Date, Cash to be reserved by the Liquidating Supervisor in an amount sufficient to pay all such Disputed Claims in accordance with the provisions of this Plan to the extent that such Disputed Claims become Allowed Claims, as set forth more fully in Section 8.1(c) of this Plan.

"Distribution" means any payment of Cash or property called for under the Plan.

"Effective Date" means the date to be selected by the Debtors on which this Plan shall become effective, which date shall be as soon as reasonably practicable after the date on which the conditions specified in Section 7.2 of this Plan have been satisfied or waived by the Debtors.

"Estates" means individually each estate and, collectively, the Debtors' estates in the Chapter 11 Cases created pursuant to Section 541 of the Bankruptcy Code.

"File," "Filed" or "Filing" means file, filed, or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

"Final Administrative Expense Bar Date" means the date by which requests for Administrative Expenses must be filed pursuant to Section 3.1(a) of the Plan.

"Final Decree" means an order entered by the Bankruptcy Court closing the Chapter 11 Cases after satisfaction of all obligations and duties under this Plan.

"Final Distribution Date" means the twentieth (20th) Business Day (or such later date as the Liquidating Supervisor determines in his reasonable discretion) after the date on which (a) all Assets of the Debtors (other than those Assets abandoned by the Liquidating Supervisor) have been liquidated and all sums due or owed to the Post-Confirmation Estate have been remitted or returned to the Post-Confirmation Estate, and (b) all Disputed Claims that did not become Allowed Claims have been disallowed by Final Order of the Bankruptcy Court.

"Final Order" means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in these Chapter 11 Cases, which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or other reargument, or rehearing has expired and as to which no appeal, petition for certiorari, new trial, reargument, or rehearing thereof has been sought, or (b) in the event an appeal, petition for certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed relating to such order shall not cause such order to not be a Final Order.

"First Lien Administrative Agent" means PNC Bank, National Association.

"First Lien Credit Agreement" means that certain Amended and Restated Credit Agreement dated as of July 6, 2007, by and among TAH, as Borrower, the First Lien Lenders, and the First Lien Administrative Agent, as amended, restated, supplemented or otherwise modified from time to time.

"First Lien Lenders" means the financial institutions from time to time party to the First Lien Credit Agreement as lenders.

"First Lien Secured Parties" means the First Lien Administrative Agent, the First Lien Lenders and each other Secured Party (as defined in the First Lien Credit Agreement).

"General Bar Date" means January 18, 2011.

"General Unsecured Claims" means any Claims, other than Administrative Expenses, Priority Claims, Deficiency Claims, or Secured Claims.

"Government Bar Date" means March 21, 2011.

"Impaired" means any Claim or Interest that is "impaired" within the meaning of Section 1124 of the Bankruptcy Code.

"Intercompany Claims" means any Claim by a Debtor against another Debtor.

"Interests" means either (a) the legal, equitable, contractual or other rights of any Person with respect to the preferred or common stock, or any other equity interest in any of the Debtors, including any other interest in or right to convert into such equity interest, or (b) the legal, equitable, contractual or other right of any Person to acquire or receive any of the foregoing.

"Liquidating Supervisor" means the Person appointed and serving from time to time as the Liquidating Supervisor of the Debtors on and after the Effective Date.

"Net Creditor Payment Fund" means the net amount of the Creditor Payment Fund available for the payment of Allowed General Unsecured Claims, after all Allowed Administrative Expense Claims (including Professional Fee Claims) have been paid in full, reserved or otherwise resolved.

"Parent" means TPH Seller, Inc., a Delaware corporation formerly known as Thompson Publishing Holding Co. Inc.

"Person" means any individual, corporation, partnership, association, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any subdivision thereof, official or unofficial committee, and any other entity.

"Petition Date" means September 21, 2010, the date on which the Debtors commenced their Chapter 11 Cases.

"Plan" means this Chapter 11 plan of reorganization for the Debtors and all exhibits annexed hereto or referenced herein, as the same may be amended, modified, or supplemented from time to time.

"Post-Confirmation Estate" means, collectively, the estates of the Debtors on and after the Effective Date.

"Post-Confirmation Administrative Reserve" means the reserve established by the Liquidating Supervisor pursuant to Section 7.7 of the Plan, which reserve shall consist of Cash available whether through the Wind-Down Budget (as defined in the Disclosure Statement) or the Creditor Payment Fund, as applicable, held by the Liquidating Supervisor in reserve to fund the administration of the Post-Confirmation Estate in accordance with the terms of this Plan.

"Priority Claim" means any Claim which, to the extent it is Allowed, is entitled to priority in payment under Section 507(a) of the Bankruptcy Code.

"*Pro Rata* Share" means the proportion that the amount of any Claim in any Class bears to the aggregate amount of all other Claims in such Class entitled to distributions from the same source of Cash.

"Professional Fee Claim" means a Claim of a Professional for compensation or reimbursement of actual and necessary costs and expenses relating to services performed after the Petition Date and prior to or on the Effective Date.

"Professionals" means any professional employed in the Chapter 11 Cases and retained pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code and a Final Order of the Bankruptcy Court.

"Purchaser" means Thompson Media Group, LLC, a Delaware limited liability company, as the assignee of the First Lien Administrative Agent under the Asset Purchase Agreement.

"Sale Order" means that certain *Order: (A) Approving Asset Purchase Agreement and Authorizing the Sale of Assets of Debtors Outside the Ordinary Course of Business; (B) Authorizing and Approving Sale of Assets Free and Clear of Liens, Claims, Encumbrances, and Interests; (C) Approving Assumption and Assignment of Designated Executory Contracts and Unexpired Leases; and (D) Granting Related Relief* (Docket No. 178) entered by the Bankruptcy Court on November 19, 2010.

"Schedules" means the Debtors' schedules of assets and liabilities and the statements of financial affairs, filed with the Bankruptcy Court by the Debtors, as such schedules or statements may be amended or supplemented from time to time in accordance with Bankruptcy Rule 1009 or orders of the Bankruptcy Court.

"Second Lien Administrative Agent" means Ableco Finance LLC, as successor to PNC Bank, National Association.

"Second Lien Claimholders" means the Second Lien Administrative Agent, the Second Lien Lenders and each other Secured Party (as defined in the Second Lien Credit Agreement).

"Second Lien Credit Agreement" means that certain Amended and Restated Second Lien Credit Agreement dated as of July 17, 2007, by and among TAH, as Borrower, the Second Lien Lenders, and the Second Lien Administrative Agent, as amended, restated, supplemented or otherwise modified from time to time.

"Second Lien Lenders" means the financial institutions from time to time party to the Second Lien Credit Agreement as lenders.

"Secured Claim" means a Claim held by any entity to the extent of the value, as agreed to by the holder of such Claim and Debtors or the Liquidating Supervisor, as applicable, or as determined by a Final Order of the Bankruptcy Court pursuant to Section 506(a) of the Bankruptcy Code, of any interest in property of the Estates securing such Claim; provided, however, that a Secured Claim shall not include any portion of the Claim that exceeds the value of the interest in property of the Estates securing such Claim.

"TAH" means TPG AES Holding Seller, Inc., a Delaware corporation formerly known as TPG AES Holding Co., Inc.

"TPD" means TPD Seller, LLC, a Delaware limited liability company formerly known as Thompson Publishing Development, LLC.

"TPG" means TPG Seller, Inc., a Delaware corporation formerly known as Thompson Publishing Group, Inc.

"TPI" means PI Seller, Inc., a Virginia corporation formerly known as The Performance Institute, Inc.

"Unimpaired" means any Claim or Interest that is not impaired within the meaning of Section 1124 of the Bankruptcy Code.

"W-9 Request Letter" shall have the meaning set forth in Section 8.1(a) of this Plan.

**1.2.** **Other Terms.** A term used in this Plan that is not defined shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

**1.3.** **Construction of Certain Terms.**

**(a)** The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan;

**(b)** Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter;

**(c)** any reference in this Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions;

**(d)** any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified or supplemented;

**(e)** unless otherwise specified, all references in this Plan to Sections and Exhibits are references to Sections and Exhibits of or to this Plan;

**(f)** captions and headings to Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; and

**(g)** the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**SECTION 2.**
**ADMINISTRATIVE CONSOLIDATION**

**2.1.** **Administrative Consolidation of the Debtors.** For the purposes of this Plan and for the administrative convenience of the Debtors and parties in interest, holders of Claims in each Debtor's case shall receive the identical treatment referenced below and each Unimpaired Class and each Impaired Class shall be deemed automatically to apply in each case as if there were separate plans of liquidation filed in each case. This Plan does not provide for the substantive consolidation of the Debtors following the Effective Date, but all Claims shall be deemed filed against the consolidated Debtors and shall be deemed one Claim against or

-8-

obligation of the Debtors as if they were consolidated and the holders of such Claims shall receive one distribution from the Debtors' Estates in accordance with the provisions of this Plan.

## SECTION 3.
## TREATMENT OF ADMINISTRATIVE EXPENSES; INTERCOMPANY CLAIMS

### 3.1. **Allowed Administrative Expenses.**

(a)     **Bar Date for Requests for Payment of Pre-Confirmation Administrative Expenses.**  The Confirmation Order will establish the Final Administrative Expense Bar Date for the filing of all requests for payment of Administrative Expenses (not including Professional Fee Claims), which date shall be thirty (30) days after the Effective Date.  Parties asserting a right to payment of an Administrative Expense, other than Professional Fee Claims or United States Trustee fees, not paid prior to the Effective Date must file requests for payment of such Administrative Expenses on or before the Final Administrative Expense Bar Date or shall forever be barred from doing so.  The notice of the Confirmation Order to be delivered pursuant to Bankruptcy Rule 3020(c) and 2002(f) will set forth such date and constitute notice of the Final Administrative Expense Bar Date.  The Liquidating Supervisor shall have sixty (60) days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Final Administrative Expense Bar Date to review and object to such Administrative Expenses.  If no objection is made, then at the end of such sixty (60) day period the Administrative Expense shall be deemed an Allowed Administrative Expense and shall be paid by the Liquidating Supervisor in accordance with this Plan.

(b)     **Allowed Administrative Expenses.**  Except (i) to the extent that the Liquidating Supervisor and the holder of an Allowed Administrative Expense agree to a different treatment or (ii) the obligations and liabilities with respect to such Administrative Expenses were assumed by the Purchaser in accordance with the Asset Purchase Agreement and the Sale Order (in which case such Administrative Expenses shall not be an obligation of the Debtors or their Estates), the Liquidating Supervisor shall pay Cash to each holder of Allowed Administrative Expenses from the Post-Confirmation Administrative Reserve (or, to the extent that the Cash in the Post-Confirmation Administrative Reserve is insufficient to pay all Allowed Administrative Expenses in full, from the Creditor Payment Fund) in an amount equal to such Allowed Administrative Expenses on the fifteenth (15th) Business Day of the first month following the month in which such Administrative Expenses becomes Allowed Administrative Expenses in accordance with this Plan, or as soon after such date as is practicable; provided, however, that amounts representing obligations incurred after the Effective Date in the ordinary course of administering the Post-Confirmation Estate shall be paid in full from the Post-Confirmation Administrative Reserve and performed by the Liquidating Supervisor in accordance with the terms and conditions of the particular transactions and any applicable agreements.

### 3.2. **Professional Fee Claims.**

Each Professional retained by the Debtors with approval by order of the Bankruptcy Court or requesting compensation in the Chapter 11 Cases pursuant to Sections 330 or 503(b) of the Bankruptcy Code shall be required to file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases incurred through the

Effective Date on or before a date to be set by the Bankruptcy Court in the Confirmation Order. Objections to any such application shall be filed on or before a date to be set by the Bankruptcy Court in the Confirmation Order.

After the Effective Date, the costs associated with winding up the affairs of the Estates, including statutory fees, if any, payable to the United States Trustees' Office shall be paid in the ordinary course as they become due and without the necessity for any approval by the Bankruptcy Court.

**3.3.** **Intercompany Claims**. All Intercompany Claims shall be extinguished as of the Effective Date. No distributions will be made on account of Intercompany Claims.

## SECTION 4.
## CLASSIFICATION OF CLAIMS AND INTERESTS

| | |
|---|---|
| Class 1 – Allowed Secured Claims | Class 1 consists of all Allowed Secured Claims against the Debtors. The Allowed Claims in Class 1 have been previously satisfied by the Debtors or were assumed by the Purchaser under, and are deemed paid in full pursuant to, the Asset Purchase Agreement and the Sale Order. Although holders of Allowed Claims in Class 1 will receive no property under the Plan, Class 1 is Unimpaired. |
| Class 2 – Allowed Priority Claims | Class 2 consists of all Allowed Priority Claims against the Debtors. The Allowed Claims in Class 2 have been assumed by the Purchaser under, and are deemed paid in full pursuant to, the Asset Purchase Agreement and the Sale Order. Although holders of Allowed Claims in Class 2 will receive no property under the Plan, Class 2 is Unimpaired. |
| Class 3 – General Unsecured Claims | Class 3 Consists of all Allowed General Unsecured Claims against the Debtors. Each holder of an Allowed Claim in Class 3 shall be entitled to receive, subject to the terms of the Plan and in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Claim, its *Pro Rata* Share of the Net Creditor Payment Fund; provided, that no Distribution shall be made to holders of General Unsecured Claims in Class 3 unless and until all Allowed Administrative Expenses and all Professional Fee Claims have been paid in full, reserved or otherwise resolved, and/or included in or accounted for in the Distribution at issue. Class 3 is Impaired. |

| Class 4 – Allowed Deficiency Claims of First Lien Secured Parties | Class 4 consists of all Allowed Deficiency Claims of the First Lien Secured Parties against the Debtors. Each holder of an Allowed Claim in Class 4 shall be entitled to receive, subject to the terms of the Plan and in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Claim, its *Pro Rata* Share of Available Cash; provided, that (a) no Distribution shall be made to holders of Allowed Deficiency Claims in Class 4 unless and until all Allowed Administrative Expenses and all Professional Fee Claims have been paid in full, reserved or otherwise resolved, and/or included in or accounted for in the Distribution at issue; and (b) notwithstanding anything to the contrary set forth in the Plan, holders of Class 4 Allowed Deficiency Claims shall not be entitled to receive any Distribution from the Creditor Payment Fund. Class 4 is Impaired. |
|---|---|
| Class 5 – Allowed Deficiency Claims of Second Lien Claimholders | Class 5 consists of all Allowed Deficiency Claims of the Second Lien Claimholders against the Debtors. Holders of Allowed Claims in Class 5 shall not be entitled to receive any distribution on account of such Claims. Class 5 is Impaired. |
| Class 6 – Interests | Class 6 consists of all Interests in the Debtors. Holders of Interests in Class 6 shall not be entitled to receive any distribution on account of such Interests. Class 6 is Impaired. |

## SECTION 5.
## TREATMENT OF CLAIMS AND INTERESTS

### 5.1.  Class 1: Allowed Secured Claims.

**(a)  Impairment and Voting.** Class 1 is Unimpaired by this Plan. Each holder of an Allowed Claim in Class 1 is conclusively deemed to have accepted the Plan and is not entitled to vote to accept or reject this Plan.

**(b)  Treatment.** The Allowed Claims in Class 1 have been previously satisfied by the Debtors or were assumed by the Purchaser under, and are deemed paid in full pursuant to, the Asset Purchase Agreement and the Sale Order. As a result, the holders of Allowed Claims in Class 1 shall not be entitled to receive any distribution on account of such Claims.

**(c)  Full Settlement.** As more specifically set forth in, and without in any way limiting Sections 14.7, 14.8 and 14.9 of the Plan, the treatment provided in this Section 5.1 is in full settlement, release and discharge of each holder's Allowed Secured Claim and all other Claims (other than any Deficiency Claim of such holder) against the Debtors, if any, of such holder directly or indirectly related to or arising out of the transactions, agreements or instruments upon which such Allowed Secured Claim was based.

-11-

### 5.2. Class 2: Allowed Priority Claims.

(a)     **Impairment and Voting**. Class 2 is Unimpaired by this Plan. Each holder of an Allowed Claim in Class 2 is conclusively deemed to have accepted the Plan and is not entitled to vote to accept or reject this Plan.

(b)     **Treatment**. The Allowed Claims in Class 2 have been assumed by the Purchaser under, and are deemed paid in full pursuant to, the Asset Purchase Agreement and the Sale Order. As a result, the holders of Allowed Claims in Class 2 shall not be entitled to receive any distribution on account of such Claims.

(c)     **Full Settlement**. As more specifically set forth in, and without in any way limiting Sections 14.7, 14.8 and 14.9 of the Plan, the treatment provided in this Section 5.2 is in full settlement, release and discharge of each holder's Allowed Priority Claim and all other Claims against the Debtors, if any, of such holder directly or indirectly related to or arising out of the transactions, agreements or instruments upon which such Allowed Priority Claim was based.

### 5.3. Class 3: General Unsecured Claims.

(a)     **Impairment and Voting**. Class 3 is Impaired by this Plan. Each holder of an Allowed Claim in Class 3 is entitled to vote to accept or reject this Plan.

(b)     **Treatment**. On the Final Distribution Date, each holder of a Class 3 Allowed General Unsecured Claim shall be entitled to receive, subject to the terms of the Plan and in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Claim, its *Pro Rata* Share of the Net Creditor Payment Fund. No Distribution shall be made to holders of General Unsecured Claims in this Class 3 unless and until all Allowed Administrative Expenses and all Professional Fee Claims have been paid in full, reserved or otherwise resolved, and/or included in or accounted for in the Distribution at issue.

(c)     **Full Settlement**. As more specifically set forth in, and without in any way limiting Sections 14.7, 14.8 and 14.9 of this Plan, the distributions provided in this Section 5.3 are in full settlement, release and discharge of each holder's Allowed General Unsecured Claim and all other Claims against any and all of the Debtors, if any, of such holder directly or indirectly related to or arising out of the transactions, agreements or instruments upon which such Allowed General Unsecured Claim was based.

### 5.4. Class 4: Allowed Deficiency Claims of First Lien Secured Parties.

(a)     **Impairment and Voting**. Class 4 is Impaired by this Plan. Each holder of an Allowed Claim in Class 4 is entitled to vote to accept or reject this Plan.

(b)     **Treatment**. On the Final Distribution Date, each holder of a Class 4 Allowed Deficiency Claim shall be entitled to receive, subject to the terms of this Plan and in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Claim, its *Pro Rata* Share of Available Cash. No Distribution shall be made to holders of Allowed Deficiency Claims in this Class 4 unless and until all Allowed Administrative Expenses and all Professional Fee Claims have been paid in full, reserved or otherwise resolved, and/or included

in or accounted for in the Distribution at issue. Notwithstanding anything to the contrary set forth in the Plan, holders of Class 4 Allowed Deficiency Claims shall not be entitled to receive any Distribution from the Creditor Payment Fund.

**(c)** **Full Settlement**. As more specifically set forth in, and without in any way limiting Sections 14.7, 14.8 and 14.9 of this Plan, the distributions provided in this Section 5.4 are in full settlement, release and discharge of each holder's Allowed Deficiency Claim and all other Claims against any and all of the Debtors, if any, of such holder directly or indirectly related to or arising out of the transactions, agreements or instruments upon which such Allowed Deficiency Claim was based.

### 5.5. Class 5: Allowed Deficiency Claims of Second Lien Claimholders.

**(a)** **Impairment and Voting**. Class 5 is Impaired by this Plan. Each holder of an Allowed Claim in Class 5 is conclusively deemed to have rejected the Plan and is not entitled to vote to accept or reject this Plan.

**(b)** **Treatment**. Holders of Allowed Claims in Class 5 shall not be entitled to receive any distribution on account of such Claims.

### 5.6. Class 6: Interests.

**(a)** **Impairment and Voting**. Class 6 is Impaired by this Plan. Each holder of an Interest in Class 6 is conclusively deemed to have rejected the Plan and is not entitled to vote to accept or reject this Plan.

**(b)** **Treatment**. On the Effective Date, the Interests shall be deemed extinguished, null and void, cancelled and of no force and effect. Holders of Interests in Class 6 shall not be entitled to receive any distribution on account of such Interests.

### SECTION 6.
### ACCEPTANCE OR REJECTION OF THIS PLAN

**6.1.** **Voting of Claims**. Each holder of a Class 3 Allowed General Unsecured Claim or a Class 4 Allowed Deficiency Claim shall be entitled to vote to accept or reject this Plan as provided for in the order entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject this Plan (a copy of which was distributed together with the Disclosure Statement).

**6.2.** **Acceptance by Holders of Class 3 Allowed General Unsecured Claims**. Consistent with Section 1126(c) of the Bankruptcy Code and except as provided for in Section 1126(e) of the Bankruptcy Code, holders of Class 3 Allowed General Unsecured Claims shall have accepted this Plan if Creditors holding at least two-thirds in amount and more than one-half in number of such Class 3 General Unsecured Claims have timely and properly voted to accept this Plan.

**6.3.** **Acceptance by Holders of Class 4 Allowed Deficiency Claims**. Consistent with Section 1126(c) of the Bankruptcy Code and except as provided for in Section 1126(e) of the

Bankruptcy Code, holders of Class 4 Allowed Deficiency Claims shall have accepted this Plan if Creditors holding at least two-thirds in amount and more than one-half in number of such Class 4 Allowed Deficiency Claims have timely and properly voted to accept this Plan.

**6.4.** **Presumed Acceptance of Plan**. Classes 1 and 2 are Unimpaired under the Plan and therefore, pursuant to Section 1126(f) of the Bankruptcy Code, each holder of a Claim in Class 1 or Class 2 is conclusively presumed to have accepted this Plan. Solicitation of acceptance with respect to such classes is not required.

**6.5.** **Presumed Rejection of Plan.** Classes 5 and 6 are Impaired under the Plan and the holders of Claims in Class 5 and the holders of Interests in Class 6 are not be entitled to receive any distribution on account of such Claims or Interests, as applicable. Therefore, pursuant to Section 1126(g) of the Bankruptcy Code, each holder of any such Claim or Interest is conclusively presumed not to have accepted this Plan. Solicitation of acceptance with respect to such classes is not required.

## SECTION 7.
## MEANS OF IMPLEMENTING AND EXECUTION OF THE PLAN

**7.1.** **Implementation on the Effective Date**. This Plan shall be implemented on the Effective Date, which date, subject to the conditions precedent set forth in Section 7.2 below, shall be determined by the Debtors in their sole discretion; provided, however, that the Effective Date shall occur no later than thirty (30) days after entry by the Bankruptcy Court of an unstayed order confirming this Plan; and provided further, that nothing contained herein shall be deemed to prevent the Debtors from requesting that the Bankruptcy Court extend such thirty (30) day period for cause shown.

**7.2.** **Conditions Precedent to Effectiveness**. This Plan shall not become effective unless and until the following conditions shall have been satisfied or waived pursuant to Section 7.3 of this Plan:

      **(i)**      the Bankruptcy Court shall have entered an order confirming this Plan in form and substance satisfactory to the Debtors;

      **(ii)**      no stay of the Confirmation Order shall then be in effect; and

      **(iii)**      the Debtors determine that it is in the best interests of the Estates that this Plan become effective; and

      **(iv)**      the Debtors shall have filed a notice of the Effective Date in the Debtors' Bankruptcy Cases.

**7.3.** **Waiver of Conditions**. The Debtors may waive one or more of the conditions precedent to effectiveness of this Plan set forth in Section 7.2 above; provided, that this Plan shall not become effective until such time as the Bankruptcy Court has entered an order confirming this Plan.

4787903

**7.4.** **Vesting of Assets of the Estate**. Upon the Effective Date, the Assets of the Debtors shall vest in the Post-Confirmation Estate for the purpose of fully administering this Plan, and the Debtors, through the Liquidating Supervisor, shall liquidate such Assets and distribute the proceeds from that liquidation to the holders of Allowed Claims in accordance with the provisions of the Plan. The Liquidating Supervisor shall also be vested with all rights, powers and benefits afforded to a "trustee" under Section 1108 of the Bankruptcy Code exclusive of the rights of a trustee to make a claim under Section 326 of the Bankruptcy Code for compensation (the Liquidating Supervisor's compensation being subject to the provisions of this Plan). Except as provided herein, or as provided in a prior or future order of the Bankruptcy Court, no Asset of the Estates shall be deemed abandoned and no Cause of Action shall be deemed released or compromised by or as a result of this Plan, its Confirmation, its consummation or its treatment of any Claim, Interest or Creditor. Further, no defense, set-off, counterclaim or right of recoupment shall be deemed waived or compromised.

**7.5.** **Appointment of Liquidating Supervisor.** From and after the Effective Date, James J. Loughlin, Jr. or his successor shall serve as the Liquidating Supervisor of the Debtors through the earlier of (a) the date such officer resigns, is replaced or is terminated, and (b) the date upon which the Liquidating Supervisor has completed all of the duties and responsibilities of the Liquidating Supervisor set forth in Section 7.6 below.

**7.6.** **Duties and Responsibilities of Liquidating Supervisor**. On the Effective Date, the Liquidating Supervisor shall assume all of the responsibilities, duties and obligations of the Debtors' board of directors, members and officers that arise after the Effective Date under the Plan and is empowered and authorized to satisfy such responsibilities, duties and obligations without further corporate or limited liability company authorization, as applicable, as may have been required prior to the Effective Date. These duties, responsibilities and obligations of the Liquidating Supervisor include, but are not limited to, the following, all of which are done on behalf of the respective Debtors:

(a)     Paying Allowed Claims in accordance with the terms of this Plan;

(b)     The preparation and filing, in the name and on behalf of the Debtors, of all original and amended tax returns of the Debtors for all periods, whether before or after the Effective Date, and controlling all audits and examinations with respect thereto, including exercising, as determined by the Liquidating Supervisor in his sole discretion, the right to request a determination of tax liability as set forth in Section 505 of the Bankruptcy Code and litigating any and all disputes with taxing authorities;

(c)     Administration of employee benefits, including, but not limited to matters regarding any Debtors' 401(k) plan, if any, and/or COBRA issues;

(d)     Preservation or liquidation of Assets or the distribution of proceeds of Assets;

(e)     Payment of post-Confirmation fees due to the Office of the United States Trustee;

(f)     Filing of status reports with the Bankruptcy Court or other parties in interest;

**(g)**     Approving or disapproving any corporate or limited liability company action, including any action that would otherwise require shareholder or member action under applicable state law;

**(h)**     Responding to inquiries of Creditors;

**(i)**     Commencing and/or prosecuting any and all objections to Claims and Interests;

**(j)**     Any duty of care, loyalty or other duty imposed or imputed by law;

**(k)**     Purchasing appropriate errors and omissions or director and officer insurance to insure the Liquidating Supervisor;

**(l)**     Commencing and/or prosecuting any Causes of Action (but solely to the extent that such Causes of Action were not transferred to the Purchaser pursuant to the Asset Purchase Agreement);

**(m)**     Filing a motion for a Final Decree;

**(n)**     Filing post-Confirmation quarterly operating results; and

**(o)**     Any responsibility, duty and obligation of the Debtors under this Plan.

**7.7.     The Post-Confirmation Administrative Reserve.**  The Liquidating Supervisor shall establish the Post-Confirmation Administrative Reserve, in amount to be determined by the Liquidating Supervisor, for the payment by the Liquidating Supervisor of all expenses of the Post-Confirmation Estate, including, without limitation, the compensation of the Liquidating Supervisor, compensation of the professionals retained by the Liquidating Supervisor, and the payment of all other reasonable and reasonably anticipated expenses, debts, charges, liabilities and obligations relating to the Post-Confirmation Estate and its administration, including, without limitation, any tax owed by the Debtors or the Post-Confirmation Estate.  Any balance remaining in the Post-Confirmation Administrative Reserve after the payment (as determined by the Liquidating Supervisor) of all expenses, debts, charges, liabilities and obligations intended to be paid therefrom shall become Available Cash.  Any monies deposited in the Post-Confirmation Administrative Reserve shall be invested in interest-bearing deposits or investments specified in Section 7.13 of this Plan, and the interest earned thereon shall be credited thereto.

**7.8.     Retention of Professionals by the Liquidating Supervisor.**  The Liquidating Supervisor may retain such attorneys (including special counsel), accountants, advisors, expert witnesses, and other professionals as he shall consider advisable without necessity of approval of the Bankruptcy Court.  The reasonable fees and expenses of the professionals retained by the Liquidating Supervisor shall be paid by the Liquidating Supervisor from the Post-Confirmation Administrative Reserve in accordance with Section 14.10 of the Plan.  Persons who served as Professionals to the Debtors prior to the Effective Date shall not be precluded from continuing to serve the Liquidating Supervisor after the Effective Date.

**7.9.     Dissolution of Debtors.**  From and after the Effective Date, each of the Debtors shall continue to exist until such time as the Liquidating Supervisor determines to dissolve the

Debtors. After the Final Distribution Date, pursuant to Section 1123(b) of the Bankruptcy Code, the Liquidating Supervisor shall be authorized to file each Debtor's final tax returns, and shall be authorized to file and shall file with the official public office for keeping corporate or limited liability company records, as applicable, in each Debtor's state of incorporation or formation a certificate of dissolution or equivalent document. Such a certificate of dissolution may be executed by the Liquidating Supervisor without need for any action or approval by the shareholders, members or board of directors of any Debtor. From and after the Final Distribution Date, the Debtors (a) for all purposes shall be deemed to have withdrawn their business operations from any state in which they were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum or take any other action in order to effectuate such withdrawal and (b) shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Final Distribution Date.

**7.10.** **Cancellation of Interests**. Upon the Effective Date, all of the capital stock and membership interests, as applicable, of each of the Debtors shall be deemed cancelled, terminated and of no further force or effect without any further action of the Debtors or the Liquidating Supervisor.

**7.11.** **Resignation of Officers and Directors**. Upon the Effective Date, all of the Debtors' officers and directors shall be deemed to have resigned without the necessity of any further action or writing and they shall be released from any responsibilities, duties and obligations that arise after the Effective Date.

**7.12.** **Funding For This Plan**. This Plan shall be funded by (a) the Creditor Payment Fund, (b) Available Cash remaining on the Effective Date, and (c) funds available after the Effective Date from, among other things, the investment of Cash, the proceeds to be received from the sale of remaining Assets, the prosecution and enforcement of Causes of Action (but solely to the extent that such Causes of Action were not transferred to the Purchaser pursuant to the Asset Purchase Agreement) and any release of funds from the Disputed Claims Reserve after the Effective Date.

**7.13.** **Accounts and Investment of Available Cash**. The Liquidating Supervisor may establish one or more interest-bearing accounts as determined may be necessary or appropriate to effectuate the provisions of this Plan consistent with Section 345 of the Bankruptcy Code and any orders of the Bankruptcy Court. The Liquidating Supervisor shall invest any monies held at any time as part of the Post-Confirmation Estate only in the following:

**(a)** securities issued or fully guaranteed or insured by the United States government or any agency thereof and backed by the full faith and credit of the United States maturing not more than one year from the date of acquisition;

**(b)** certificates of deposit, time deposits, Eurodollar time deposits, bankers' acceptances or deposit accounts having in each case a remaining term to maturity of not more than one year, which are either (i) fully insured by the Federal Deposit Insurance Corporation or (ii) issued by any lender or by any commercial bank under the laws of any state or any national

-17-

banking association that has combined capital and surplus of not less than $800,000,000 and whose short-term securities are rated at least A-1 by S&P or P-1 by Moody's;

(c)  commercial paper that is rated at least A-1 by S&P or P-1 by Moody's, issued by a company that is incorporated under the laws of the United States or of any state and directly issues its own commercial paper, and has a remaining term to maturity of not more than one year;

(d)  repurchase agreements with (i) any commercial bank that is organized or licensed under the laws of any state or any national banking association and that has total assets of at least $1,000,000,000, or (ii) any investment bank that is organized under the laws of any state and that has total assets of at least $1,000,000,000, if such agreement is secured by any one or more of the securities and obligations described in clauses (a), (b) or (c) above having a market value (exclusive of accrued interest and valued at least monthly) at least equal to the principal amount of such investment; or

(e)  any money market or other investment fund the investments of which are limited to investments described in clauses (a), (b), (c) and (d) above and which is managed by (i) a commercial bank that is organized under the laws of any state or any national banking association and that has total assets of at least $1,000,000,000, or (ii) an investment bank that is organized under the laws of any state and that has total assets of at least $1,000,000,000.

The Liquidating Supervisor shall be restricted to the collection and holding of such monies and any income earned on such monies and to the payment and distribution thereof for the purposes set forth in this Plan.

**7.14.  Bond**.  On the Effective Date or immediately thereafter, the Liquidating Supervisor, at the expense of the Post-Confirmation Estate, shall procure a "Bond of Administrative Trustee of Confirmed Plan" written by an insurance company authorized to do business in the State of Delaware and written on a standard and customary bond form.  No bond shall be required in the event undistributed Cash held in the Post-Confirmation Estate is less than $1,000,000.

**7.15.  Tax Returns**.  In accordance with Section 7.6(b) above, and notwithstanding any contrary provision of this Plan, the Liquidating Supervisor shall prepare or cause to be prepared and shall file, on behalf of the Debtors and the Post-Confirmation Estate, all state and federal tax returns required to be filed by the Debtors and the Post-Confirmation Estate under applicable law, and shall pay, in accordance with the terms of this Plan, all taxes due in connection with such returns.  The Liquidating Supervisor may request a determination of any unpaid liability of the Estates or the Post-Confirmation Estate for any tax incurred during the administration of the cases pursuant to Section 505(b) of the Bankruptcy Code.  Certain of such taxes may be classified as Administrative Expenses or Priority Claims as called for under applicable law.  No entity shall be entitled to assert any claim for any excise or property tax accruing after the Confirmation Date.  The Liquidating Supervisor shall have sole authority and discretion with respect to all state and federal tax returns required to be filed by the Debtors and the Post-Confirmation Estate under applicable law and the resolution of any disputes with respect to the same.

**7.16.     Claims Filed After Applicable Bar Dates**.  Any Claim not filed prior to the General Bar Date, the Government Bar Date, the Final Administrative Expense Bar Date, or any other deadline established by the Bankruptcy Court for filing any claim, as applicable, shall be disallowed as untimely pursuant to Rule 3003(c) of the Bankruptcy Rules, and the holder of such Claim shall not be entitled to any distribution from the Post-Confirmation Estate on account of such Claim.  No amendment to any Claim shall be filed after the Confirmation Date absent leave granted by the Bankruptcy Court unless the Liquidating Supervisor has consented to the filing of such Claim expressly and in writing.  Any such amendment to any Claim filed after the Confirmation Date without leave of the Bankruptcy Court shall be void, of no effect, and deemed disallowed, and neither the Debtors, the Liquidating Supervisor nor any other party shall have any obligation to respond in any way to any such Claim.

**7.17.     Permanent Injunction**.  From and after the Effective Date, and as provided for by the Confirmation Order, there shall be in place with regards to the Post-Confirmation Estate a permanent injunction to the same extent and with the same effect as the stay imposed by Section 362 of the Bankruptcy Code.  Such permanent injunction will remain in effect until the Chapter 11 Cases are closed pursuant to Section 350 of the Bankruptcy Code, except as otherwise expressly provided herein or as may be agreed to in writing by the Liquidating Supervisor.

**7.18.     No Discharge**.  Pursuant to Section 1141(d)(3) of the Bankruptcy Code, Confirmation will not discharge the Debtors.

**7.19.     Closing of the Chapter 11 Cases and Entry of the Final Decree**.  When all Disputed Claims filed against the Debtors have become Allowed Claims or have been disallowed by Final Order, and all remaining assets of the Debtors have been liquidated and converted into Cash (other than assets abandoned by the Debtors or the Liquidating Supervisor), and all Available Cash has been distributed in accordance with this Plan, or at such earlier time as the Liquidating Supervisor deems appropriate, the Liquidating Supervisor shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.  It shall be the sole and exclusive duty of the Liquidating Supervisor to prepare and file a motion requesting that the Bankruptcy Court enter a Final Decree in the Chapter 11 Cases.

**7.20.     Limitation of Liability**.  Neither the Liquidating Supervisor, nor the firms or corporations represented by or representing him, nor any of his or their respective employees, professionals or agents, shall in any way be liable for any acts or for any acts of any such employees, professionals or agents, in each case to the extent undertaken in the performance of their duties as Liquidating Supervisor or the employees, professionals or agents, thereof, except for acts undertaken in bad faith, gross negligence or willful misconduct.  The Post-Confirmation Estate shall indemnify and hold harmless the Liquidating Supervisor and any and all of his employees, professionals and agents from and against any and all liabilities, expenses, claims, damages or losses incurred by them as a direct result of acts or omissions taken by them in good faith in their capacities as Liquidating Supervisor or employees, professionals or agents for the Liquidating Supervisor.

# SECTION 8.
## PROVISIONS GOVERNING DISTRIBUTIONS

### 8.1. Distributions.

(a) **Form W-9.** Within 15 days after the Effective Date, the Liquidating Supervisor will send to each Person holding an Allowed Claim or a Disputed Claim a letter (a "<u>W-9 Request Letter</u>") (1) instructing such Person to send the Liquidating Supervisor a completed Internal Revenue Service Form W-9 (or, as applicable, a completed Form W-8) and (2) informing such Person that the Liquidating Supervisor will not make a distribution on account of an Allowed Claim unless and until the holder of an Allowed Claim has returned to the Liquidating Supervisor a fully-completed Form W-9 (or W-8). The Liquidating Supervisor will send W-9 Request Letters to each holder of an Allowed or Disputed Claim at the address of the holder of such Claim set forth on the Debtors' Schedules filed with the Bankruptcy Court, unless superseded by the address as set forth on the proof of claim filed by such creditor or other writing notifying the Liquidating Supervisor of a change of address. Nothing contained in the Plan or the Disclosure Statement will require the Debtors, the Liquidating Supervisor or any other party to attempt to locate any holder of an Allowed Claim or a Disputed Claim. If the Liquidating Supervisor does not receive a Form W-9 (or W-8) from the holder of an Allowed Claim or a Disputed Claim within ninety (90) days after the date of the W-9 Request Letter, then the Cash reserved on account of such Claim shall become Available Cash and the holder of such Claim shall not be entitled to any distribution from the Post-Confirmation Estate.

(b) **Allowed Claims Reserve.** If and to the extent that there remain unpaid Allowed Claims on and after the Effective Date, the Liquidating Supervisor shall hold Cash in the Allowed Claims Reserve in an aggregate amount sufficient to pay each Allowed Claim pursuant to the terms of this Plan. Nothing contained herein shall be deemed to require the Liquidating Supervisor to segregate the Allowed Claims Reserve from the other Assets.

(c) **Disputed Claims Reserve.** On and after the Effective Date, the Liquidating Supervisor shall hold Cash in the Disputed Claims Reserve in an aggregate amount sufficient to pay to each holder of a Disputed Claim the amount of Cash that such holder would be entitled to receive under this Plan if such Disputed Claim becomes an Allowed Claim in accordance with the terms of this Plan. The Liquidating Supervisor shall be permitted, in his discretion, to increase the amount of the Disputed Claims Reserve from time to time. Cash withheld and reserved for payments to holders of Disputed Claims shall be held and deposited by the Liquidating Supervisor in one or more interest-bearing reserve accounts pursuant to Section 7.13 of this Plan and shall be used to satisfy such Claims if such Disputed Claims become Allowed Claims in accordance with the terms of this Plan. Nothing contained herein shall be deemed to require the Liquidating Supervisor to segregate the Disputed Claims Reserve from the other Assets.

(d) **Distributions on the Final Distribution Date**. Unless otherwise provided in this Plan, the Liquidating Supervisor shall, on the Final Distribution Date, (i) distribute to each holder of an Allowed General Unsecured Claim in Class 3 its *Pro Rata* Share of the Net Creditor Payment Fund, and (ii) to the extent there is Available Cash subsequent to the Effective Date from any source including, among other things, (A) the liquidation and conversion to Cash of the

-20-

Assets of the Post-Confirmation Estate, (B) the investment of Cash, (C) the prosecution and enforcement of Causes of Action (but solely to the extent that such Causes of Action were not transferred to the Purchaser pursuant to the Asset Purchase Agreement), (D) the release of funds from the Disputed Claims Reserve in accordance with Section 9.5 of this Plan, or (E) the return of unclaimed, undeliverable or time-barred distributions to holders of Allowed Claims pursuant to Sections 8.3 or 8.5 of this Plan, distribute to each holder of an Allowed Deficiency Claim in Class 4 its *Pro Rata* Share of such Available Cash.  In no event shall the foregoing clause (ii) of this Section 8.1(d) impair the right of the Liquidating Supervisor under Section 9.5 of this Plan to use remaining Available Cash to satisfy the costs of administering and fully consummating this Plan.

 **8.2.** **Distributions of Cash**.  At the Liquidating Supervisor's option, any Cash payment to be made by the Post-Confirmation Estate pursuant to this Plan may be made by (i) check drawn on a domestic bank or (ii) by wire transfer.

 **8.3.** **Delivery of Distributions and Undeliverable Distributions**.  Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address as set forth on the proofs of claim filed by such holders or other writing notifying the Liquidating Supervisor of a change of address.  If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Liquidating Supervisor is notified of such holder's then current address, at which time all missed distributions shall be made to such holder.  All Claims for undeliverable distributions shall be made on or before the thirtieth (30th) day after the date such undeliverable distribution was made.  After such date, all unclaimed property shall, at the discretion of the Liquidating Supervisor, be used to satisfy the costs of administering and fully consummating this Plan or shall become Available Cash for distribution in accordance with this Plan, and the holder of any such Claim shall not be entitled to any other or further distribution under this Plan on account of such Claim.

 **8.4.** **Withholding and Reporting Requirements**.  In connection with this Plan and all instruments issued in connection therewith and distributed thereon, the Liquidating Supervisor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under this Plan shall be subject to any such withholding or reporting requirements.

 **8.5.** **Time Bar to Cash Payments**.  All delivered but uncashed distributions shall be handled in accordance with this Section 8.5 of the Plan.  Checks issued by the Liquidating Supervisor on account of Allowed Claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  After such date, all funds held on account of such voided check shall, at the discretion of the Liquidating Supervisor, be used to satisfy the costs of administering and fully consummating this Plan or shall become Available Cash for distribution in accordance with the Plan, and the holder of any such Claim shall not be entitled to any other or further distribution under this Plan on account of such Claim.

 **8.6.** **Setoffs**.  Except as provided herein, or as provided in a prior or future order of the Bankruptcy Court, the Liquidating Supervisor shall retain all of the Debtors' rights of setoff and recoupment under Section 553 of the Code and applicable non-bankruptcy law; provided,

-21-

however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Liquidating Supervisor of any such claims, rights and Causes of Action that the Debtors may possess against such holder; and provided, further, that any claims of the Debtors arising before the Petition Date shall first be setoff against Claims against the Debtors arising before the Petition Date.

**8.7.** **Professional Fees and Expenses**. Each Professional retained by order of the Bankruptcy Court or requesting compensation in the Chapter 11 Cases pursuant to Sections 330 or 503(b) of the Bankruptcy Code shall be required to file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Cases incurred through the Effective Date on or before a date to be set by the Bankruptcy Court in the Confirmation Order. Objections to any such application shall be filed on or before a date to be set by the Bankruptcy Court in the Confirmation Order. Any fees and expenses arising after the Effective Date shall be paid in accordance with Section 14.10 of this Plan.

**8.8.** **Transactions on Business Days**. If the Effective Date or any other date on which a transaction may occur under this Plan shall occur on a day that is not a Business Day, the transactions contemplated by this Plan to occur on such day shall instead occur on the next succeeding Business Day.

**8.9.** **Minimum Distributions**. If a distribution to be made to a given holder of an Allowed Claim on or after the Effective Date would be $25 or less in the aggregate, notwithstanding any contrary provision of this Plan, no such distribution will be made to such holder unless a request therefore is made in writing to the Liquidating Supervisor. Any unclaimed distributions pursuant to this Section 8.9 shall, at the discretion of the Liquidating Supervisor, be used to satisfy the costs of administering and fully consummating this Plan or shall become Available Cash for distribution in accordance with the terms of this Plan.

## SECTION 9.
## PROCEDURES FOR RESOLVING
## AND TREATING DISPUTED CLAIMS

**9.1.** **No Distribution Pending Allowance**. Notwithstanding any other provision of this Plan, no Cash or other property shall be distributed under this Plan on account of any Disputed Claim, unless and until such Disputed Claim becomes an Allowed Claim.

**9.2.** **Resolution of Disputed Claims**. On and after the Effective Date, the Liquidating Supervisor shall be vested with the authority to bring, prosecute and dispose of any and all objections to Claims for the benefit of the Estates. Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise expressly provided for below, the Liquidating Supervisor shall have the exclusive right (except as to applications for allowances of compensation and reimbursement of expenses under Sections 330 and 503 of the Bankruptcy Code) to make and file objections to Claims (which includes, without limitation, objections to Claims filed pursuant to Section 10.3 of this Plan) and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, but in no event later than the Claim Objection Deadline; provided, however, that the Liquidating Supervisor may request that the Bankruptcy Court enter an order extending the Claim Objection Deadline. From

and after the Effective Date, all objections shall be litigated to a Final Order except to the extent the Liquidating Supervisor elects to withdraw any such objection or elects to compromise, settle or otherwise resolve any such objection, in which event he may settle, compromise or otherwise resolve any Disputed Claim without approval of the Bankruptcy Court; provided, however, that any compromise of any Disputed Claim with a face value in excess of $50,000 shall be presented to the Bankruptcy Court for approval pursuant to Bankruptcy Rule 9019 or any procedure approved by the Court. If the Liquidating Supervisor and the holder of a Disputed Claim elect to compromise, settle or otherwise resolve the objection to a Disputed Claim with a face amount of $50,000 or less, the Disputed Claim shall be deemed an Allowed Claim in the amount agreed upon by the Liquidating Supervisor and the claimant. Nothing contained herein shall prevent the Liquidating Supervisor from presenting to the Bankruptcy Court for approval pursuant to Bankruptcy Rule 9019 the compromise of any Disputed Claim with a face value of $50,000 or less.

**9.3.** **Estimation**. The Liquidating Supervisor may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Liquidating Supervisor has previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including, without limitation, during litigation concerning any objection to such Claim. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Supervisor may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. On and after the Effective Date, Claims which have been estimated subsequently may be compromised, settled, withdrawn or otherwise resolved without further order of the Bankruptcy Court as provided in Section 9.2 of this Plan.

**9.4.** **Allowance of Disputed Claims**. On the Final Distribution Date, the Liquidating Supervisor shall, in accordance with the terms of this Plan, distribute from the Disputed Claims Reserve to the holder of any Disputed Claim that has become an Allowed Claim the amount of Cash that such holder is entitled to receive under this Plan on account of such Claim.

**9.5.** **Release of Funds from Disputed Claims Reserve**. If at any time or from time to time after the Effective Date, there shall be Cash in the Disputed Claims Reserve in an amount in excess of the maximum remaining payment obligations on account of remaining Disputed Claims, such excess funds shall become Available Cash for distribution in accordance with this Plan; provided, however, that the Liquidating Supervisor shall be permitted to use such excess funds in whole or in part to supplement the Post-Confirmation Administrative Reserve and satisfy the costs of administering and fully consummating this Plan.

**9.6.** **Effect on Third Parties**. As of the Effective Date, the Liquidating Supervisor shall have sole signatory power and authority to act on behalf of the Post-Confirmation Estate without further action or authority by or from officers, directors, members, or shareholders of the Debtors, as may otherwise have been required under applicable state law, and all third parties may rely upon such signature without further certification.

-23-

## SECTION 10.
## TREATMENT OF EXECUTORY
## CONTRACTS AND UNEXPIRED LEASES

**10.1.** **Executory Contracts and Unexpired Leases**. On the Effective Date, all executory contracts and unexpired leases that exist between the Debtors and any Person shall be deemed rejected as of the Effective Date, except for any executory contract or unexpired lease (a) which has been assumed by the Debtors and assigned to the Purchaser in accordance with the Sale Order, (b) which has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (c) as to which a motion for approval of the assumption or rejection of such contract or lease has been filed and served prior to the Effective Date, or (d) which appear on Schedule A attached hereto. The executory contracts or unexpired leases set forth on Schedule A shall be assumed or rejected as determined by the Liquidating Supervisor, with approval of the Bankruptcy Court, after the Effective Date.

**10.2.** **Approval of Rejection of Executory Contracts and Unexpired Leases**. Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Section 10.1 of this Plan.

**10.3.** **Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to this Plan**. Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 10.1 of this Plan must be filed with the Bankruptcy Court no later than forty (40) days after the Confirmation Date. Any Claims not filed within such applicable time periods will be forever barred from assertion against the Debtors, the Estates and the Post-Confirmation Estate.

**10.4.** **Retiree Benefits.** In the event that the Debtors (or, if after the Effective Date, the Liquidating Supervisor) determine that the Debtors (a) funded or maintained any retiree benefit plans, funds or programs as defined in Section 1114 of the Bankruptcy Code, for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise); or (b) otherwise have contractual obligations to provide retirement or related benefits to retired employees who did not receive notice of the applicable bar dates in this case, then the Debtors (or, if after the Effective Date, the Liquidating Supervisor) will terminate such retirement benefits, notify all retired employees eligible for such retirement benefits of the same and will establish a deadline for such retired employees to submit proofs of claim.

## SECTION 11.
## EFFECT OF CONFIRMATION

**11.1.** **Release of Assets**. Until the Effective Date, the Bankruptcy Court shall retain jurisdiction of the Debtors, the Estates and their Assets. Thereafter, the jurisdiction of the Bankruptcy Court shall be limited to the subject matters set forth in Section 13 of this Plan, and the Liquidating Supervisor shall perform and wind up the Post-Confirmation Estate as provided in this Plan.

-24-

**11.2.** **Binding Effect**. Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or Interests in, the Debtors and their respective successors and assigns, whether or not the Claim or Interest of such holder is Impaired under this Plan and whether or not such holder has accepted this Plan.

**11.3.** **Term of Injunctions or Stays**. As set forth in Section 7.17 of this Plan, from and after the Effective Date, and as provided for by the Confirmation Order, there shall be in place with regards to the Post-Confirmation Estate a permanent injunction to the same extent and with the same effect as the stay imposed by Section 362 of the Bankruptcy Code and such permanent injunction will remain in effect until the Chapter 11 Cases are closed pursuant to Section 350 of the Bankruptcy Code, except as otherwise expressly provided herein or as may be agreed to in writing by the Liquidating Supervisor.

**11.4.** **Rights of Action**. On and after the Effective Date, the Liquidating Supervisor shall retain and have the exclusive right to enforce any and all Causes of Action (but solely to the extent that such Causes of Action were not transferred to the Purchaser pursuant to the Asset Purchase Agreement), including, without limitation, any and all present or future rights, claims or Causes of Action against any Person and rights of the Debtors that arose before or after the Petition Date. The Liquidating Supervisor may offset any such claim held against a Person against any payment due such Person under this Plan; provided, however, that any claims of the Debtors arising before the Petition Date shall first be offset against Claims against the Debtors arising before the Petition Date.

## SECTION 12.
## MODIFICATIONS TO PLAN

**12.1.** **Pre-Confirmation Modification**. At any time before the Confirmation Date, this Plan may be modified by the Debtors upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Section 1122 and 1123 of the Bankruptcy Code. In the event that there is a modification of this Plan, then the Plan as modified shall become the Plan.

**12.2.** **Pre-Effective Date Modification**. At any time after the Confirmation Date, but before the Effective Date, this Plan may be modified by the Debtors upon approval of the Bankruptcy Court, provided that the Plan, as modified, does not fail to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code. The Plan, as modified under this Section 12.2, becomes the Plan only if the Bankruptcy Court, after notice and hearing, confirms such Plan, as modified, under Section 1129 of the Bankruptcy Code.

**12.3.** **Non-Material Modifications.** At any time after the Confirmation Date, the Debtors or the Liquidating Supervisor, as applicable, may, without the approval of the Bankruptcy Court and provided that it does not materially or adversely affect the interests of creditors, remedy any defect or omission or reconcile any inconsistencies in the Plan or in the Confirmation Order in such manner as may be necessary to carry out the purposes, intent and effect of this Plan.

# SECTION 13.
## RETENTION OF JURISDICTION

**13.1.** **Jurisdiction of the Bankruptcy Court**. The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Cases and this Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

**(a)** to hear and determine any motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases, and the allowance of any Claims resulting there from;

**(b)** to determine any and all pending adversary proceedings, applications, and contested matters, including, without limitation, adversary proceedings arising from or related to the Causes of Action (but solely to the extent that such Causes of Action were not transferred to the Purchaser pursuant to the Asset Purchase Agreement);

**(c)** to hear and determine any objection to Claims and Interests, including, without limitation, compromises or settlements with respect to objections to Claims and Interests;

**(d)** to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

**(e)** to issue such orders in aid of execution of this Plan to the extent authorized by Section 1142 of the Bankruptcy Code;

**(f)** to interpret or consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

**(g)** to hear and determine all applications for compensation and reimbursement of expenses of Professionals under Sections 330, 331, and 503(b) of the Bankruptcy Code;

**(h)** to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan;

**(i)** to hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under Section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods);

**(j)** to hear any other matter consistent with the provisions of the Bankruptcy Code; and

**(k)** to enter a final decree closing the Chapter 11 Cases.

4787903

# SECTION 14.
## MISCELLANEOUS PROVISIONS

**14.1.** **Deletion of Classes and Subclasses**. Any class or subclass of Claims that does not contain as an element thereof an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 as of the date of the commencement of the Confirmation Hearing shall be deemed deleted from this Plan for purposes of voting to accept or reject this Plan and for purposes of determining acceptance or rejection of this Plan by such class or subclass under Section 1129(a)(8) of the Bankruptcy Code.

**14.2.** **Successors and Assigns**. The rights and obligations of any person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of that person.

**14.3.** **Binding Effect**. The Plan will be binding upon and inure to the benefit of the Debtors, their Creditors, holders of Claims or Interests, the Liquidating Supervisor, and each of their respective successors and assigns.

**14.4.** **Effectuating Documents and Further Transactions**. After the Effective Date, the Liquidating Supervisor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases and other agreements or documents and take such actions on behalf of the Post-Confirmation Estate as may be necessary or appropriate to effectuate and further evidence the terms and conditions of this Plan.

**14.5.** **Exemption from Transfer Taxes**. Pursuant to Section 1146(c) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with this Plan, including any deeds, bills of sale or assignments executed in connection with any disposition of assets contemplated by this Plan shall not be subject to any stamp, real estate transfer, mortgage recording or other similar tax.

**14.6.** **Releases** . The releases of Claims, Interests and Causes of Action described in the Plan constitute good faith compromises and settlements of the matters covered thereby and are consensual. Such compromises and settlements are made in exchange for consideration and are in the best interest of holders of Claims and Interests, are fair, equitable, reasonable and are integral elements of the resolution of the Chapter 11 Cases in accordance with this Plan. Each of the release and exculpation provisions set forth in this Plan (a) is within the jurisdiction of the Bankruptcy Court under Sections 1334(a), 1334(b) and 1334(d) of title 28 of the United States Code, (b) is an essential means of implementing this Plan, (c) is an integral element of the transactions incorporated into this Plan, (d) confers material benefit on, and is in the best interests of, the Debtors, their Estates, and their Creditors, (e) is important to the overall objectives of this Plan to finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Cases with respect to the Debtors, and (f) is consistent with Sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy Code.

**14.7.** **Injunction**. **Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise provided in this Plan or a further order of the**

Bankruptcy Court, all persons or entities who have held, hold or may hold Claims or Interests and all other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, representatives and affiliates, are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest against the Debtors, their Estates, the Post-Confirmation Estate, or the Liquidating Supervisor, or any of their respective properties or assets, other than to enforce any right to a distribution pursuant to this Plan, (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, their Estates, the Post-Confirmation Estate, or the Liquidating Supervisor, or any of their respective properties or assets, (iii) creating, perfecting or enforcing any Lien or encumbrance of any kind against the Debtors, their Estates, or the Post-Confirmation Estate or against the property or interests in property of the Debtors, their Estates or the Post-Confirmation Estate or (iv) without further order of the Bankruptcy Court, asserting any right of set-off, subrogation or recoupment of any kind against any obligation due from the Debtors, their Estates or the Post-Confirmation Estate or against the property or interests in property of the Debtors, their Estates or the Post-Confirmation Estate, with respect to any such Claim or Interest.  Such injunction shall extend to any successors or assignees of the Debtors, their Estates, the Post-Confirmation Estate, the Liquidating Supervisor and their respective properties and interest in properties.

14.8.   Exculpation.  Neither the Debtors, the Liquidating Supervisor, nor any of their respective current and former members, shareholders, affiliates, officers, directors, employees, attorneys, actuaries, accountants, financial advisors, investment bankers, professionals, advisors or agents shall have or incur any liability to any holder of a Claim or Interest or any other Person for any act or omission in connection with, or arising out of, the Chapter 11 Cases, the pursuit of confirmation of this Plan, the preparation and distribution of the Disclosure Statement, the Asset Purchase Agreement, the solicitation of votes with respect to this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan except for any such liability based on the willful misconduct or gross negligence of such parties, as determined by a Final Order of the Bankruptcy Court, or based on the failure of the Liquidating Supervisor to make a Distribution to Creditors in accordance with this Plan, and, in all respects, the Debtors, the Liquidating Supervisor, and each of their respective current and former members, shareholders, affiliates, officers, directors, employees, attorneys, actuaries, accountants, financial advisors, investment bankers, professionals, advisors and agents shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under this Plan.

14.9.   Release.  Pursuant to this Plan, as of the Effective Date, (a) the Debtors, their Estates, the Post-Confirmation Estate, the Liquidating Supervisor and their respective successors and assigns and any Person claiming a right in a derivative capacity on their behalf, and (b) each holder of a Claim that actually votes to accept or reject the Plan and, in connection therewith, does not mark its Ballot so as to indicate its refusal to grant the releases described in the Plan, hereby unconditionally and irrevocably release all of the Released Parties (defined below) from any and all direct, indirect or derivative claims,

obligations, suits, judgments, Liens, damages, rights, liabilities, rights of contribution and indemnification, and all other Causes of Action not otherwise transferred to the Purchaser pursuant to the Asset Purchase Agreement (other than the right of the Debtors and the Liquidating Supervisor, as applicable, to enforce this Plan and any and all contracts, instruments, releases, indentures and other agreements or documents delivered thereunder), whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based on or relating to or in any manner arising from, in whole or in part, the Debtors, their Estates, their property, assets, operations or liabilities, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in this Plan, the business or contractual arrangements between any Debtor, any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the negotiation, formulation or preparation of this Plan and the Disclosure Statement, or related agreements, instruments or other documents, which claims, obligations, suits, judgments, Liens, damages, rights, liabilities, rights of contribution and indemnification, and other Causes of Action are based in whole or in part on any act, omission, transaction, event or other occurrence (except for willful misconduct or gross negligence) taking place before the Effective Date. For the purposes of this Plan, "Released Parties" means the Debtors, their Estates, the Post-Confirmation Estate, and the Liquidating Supervisor, together with each of their respective members, officers, directors, employees, advisors, actuaries, attorneys, financial advisors, investment bankers, professionals and agents.

**14.10. <u>Post-Effective Date Fees and Expenses of Professionals and of Winding up the Estates</u>.** After the Effective Date, the Liquidating Supervisor shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable fees and expenses of the professional persons employed by the Liquidating Supervisor in connection with the implementation and consummation of this Plan, the claims reconciliation process and any other matters as to which such professionals may be engaged. The fees and expenses of such professionals shall be paid within fifteen (15) Business Days after submission of a detailed invoice therefor to the Liquidating Supervisor. All such fees and expenses shall be paid from the Post-Confirmation Administrative Reserve. If the Liquidating Supervisor disputes the reasonableness of any such invoice, the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved. After the Effective Date, the costs associated with winding up the affairs of the Estates, including statutory fees, if any, payable to the United States Trustee's Office, shall be paid in the ordinary course as they become due and without the necessity for any approval by the Bankruptcy Court. All such costs shall be paid from the Post-Confirmation Administrative Reserve.

**14.11. <u>Payment of Statutory Fees</u>.** All fees payable pursuant to Section 1930 of Title 28 of the United States Code, as determined by the Bankruptcy Court on the Confirmation Date, shall be paid on the Effective Date. Any statutory fees accruing after the Confirmation Date shall be paid in accordance with Section 14.10 of this Plan.

**14.12. <u>Withdrawal or Revocation</u>.** The Debtors may withdraw or revoke this Plan at any time prior to the Confirmation Date. If the Debtors revoke or withdraw this Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then this Plan shall be deemed

null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any other person in any further proceedings involving the Debtors.

**14.13. Bankruptcy Courts of Competent Jurisdiction**. If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of this Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit or limit the exercise of jurisdiction by any other Bankruptcy Court having competent jurisdiction with respect to such matter.

**14.14. Notices**. Any notices to or requests of the Liquidating Supervisor by parties in interest under or in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

If to the Liquidating Supervisor:

Loughlin Meghji + Company
220 West 42nd Street
9th Floor
New York New York 10036
Attn:   Adam Levy
        James J. Loughlin, Jr.

with a copy to:

Choate, Hall & Stewart LLP
Two International Place
Boston, Massachusetts 02110
Attn:   John F. Ventola, Esq.
        Sean M. Monahan, Esq.

        - and -

Morris, Nichols, Arsht & Tunnell LLP
1201 North Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347
Attn:   Derek C. Abbott, Esq.
        Chad A. Fights, Esq.
        Alissa T. Gazze, Esq.

**14.15. Severability**. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of this Plan is invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable,

consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The confirmation order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**14.16. <u>Governing Law</u>.** Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflicts of law thereof.

**14.17. <u>Headings</u>.** Headings are used in this Plan for convenience and reference only, and shall not constitute a part of this Plan for any other purpose.

**14.18. <u>Exhibits</u>.** All Exhibits and Schedules to this Plan are incorporated into and are a part of this Plan as if set forth in full herein.

*[ REMAINDER OF PAGE LEFT BLANK INTENTIONALLY ]*

4787903

# SECTION 15.
## REQUEST FOR CONFIRMATION

**15.1.** **Request for Confirmation.** The Debtors request confirmation of this Plan in accordance with Section 1129(a) and/or Section 1129(b) of the Bankruptcy Code.

Dated: March 28, 2011

Respectfully submitted,

TPH SELLER, INC.

By: _James J. Loughlin_
Name: James J. Loughlin, Jr.
Title: Vice President and
Chief Restructuring Officer

AHC SELLER LLC

By: _James J. Loughlin_
Name: James J. Loughlin, Jr.
Title: Vice President and
Chief Restructuring Officer

AES SELLER, INC.

By: _James J. Loughlin_
Name: James J. Loughlin, Jr.
Title: Vice President and
Chief Restructuring Officer

TPG SELLER, INC.

By: _James J. Loughlin_
Name: James J. Loughlin, Jr.
Title: Vice President and
Chief Restructuring Officer

PI SELLER, INC.

By: _James J. Loughlin_
Name: James J. Loughlin, Jr.
Title: Vice President and
Chief Restructuring Officer

TAH SELLER, INC.

By: _James J. Loughlin_
Name: James J. Loughlin, Jr.
Title: Vice President and
Chief Restructuring Officer

TPD SELLER, INC.

By: _James J. Loughlin_
Name: James J. Loughlin, Jr.
Title: Vice President and
Chief Restructuring Officer

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (Bar No. 3376)
Chad A. Fights (Bar No. 5006)
Alissa T. Gazze (Bar No. 5338
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

 -and-

CHOATE, HALL & STEWART LLP
John F. Ventola
Sean M. Monahan
Two International Place
Boston, MA 02110
Telephone: (617) 248-5000
Facsimile: (617) 248-4000

*Counsel to Debtors and Debtors in Possession*

Schedule A

Pursuant to Section 10.1 of the Plan, the agreements set forth below shall not be deemed to be rejected as of the Effective Date.  **The fact that an agreement appears on this Schedule A shall not be deemed to be a concession by the Debtors that such agreement is an "executory contract" within the meaning of the Bankruptcy Code.  The Debtors expressly reserve the right to argue that any agreement listed on this Schedule A is not an  "executory contract" within the meaning of the Bankruptcy Code.**

None.